# EXHIBIT D

Residential Real Estate Purchase and Sale Agreement – Addendum Omitted

Authentisign ID: 6FDD6C3A-CC79-4F25-AD04-E77FE616F93D

Form 21
Residential Purchase & Sale Agreement
Rev. 7/19
Page 1 of 5

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## RESIDENTIAL REAL ESTATE PURCHASE AND SALE AGREEMENT
### SPECIFIC TERMS

1. **Date:** December 02, 2019   **MLS No.:** 1523141   **Offer Expiration Date:** 12/2/2019
2. **Buyer:** Thomas M Kranzle, and or assigns   **Status:** Married as separate property
3. **Seller:** V.S INVESTMENT ASSOC LLC
4. **Property:** Legal Description attached as Exhibit A. Tax Parcel No(s).: 159460-0093
   2469 S College Street, Seattle, King, WA 98144
5. **Included Items:** ☑ stove/range; ☑ refrigerator; ☐ washer; ☐ dryer; ☑ dishwasher; ☐ hot tub; ☐ fireplace insert; ☐ wood stove; ☐ satellite dish; ☑ security system; ☐ attached television(s); ☐ attached speaker(s); ☑ microwave; ☐ generator; ☑ other Garbage Disposal
6. **Purchase Price:** $ ~~850,000.00~~ ~~Eight Hundred Fifty Thousand~~ $885,000 Dollars
7. **Earnest Money:** $ 15,000.00   ☐ Check; ☐ Note; ☑ Other Check or Wire   (held by ☐ Selling Firm; ☑ Closing Agent)
8. **Default:** (check only one) ☑ Forfeiture of Earnest Money; ☐ Seller's Election of Remedies
9. **Title Insurance Company:** First American Title and Escrow
10. **Closing Agent:** First American Title and Escrow   Garry Wilson
11. **Closing Date:** 1/10/2020 ; **Possession Date:** ☑ on Closing; ☐ Other
12. **Services of Closing Agent for Payment of Utilities:** ☑ Requested (attach NWMLS Form 22K); ☐ Waived
13. **Charges/Assessments Levied Before but Due After Closing:** ☑ assumed by Buyer; ☐ prepaid in full by Seller at Closing
14. **Seller Citizenship (FIRPTA):** Seller ☐ is; ☑ is not a foreign person for purposes of U.S. income taxation
15. **Agency Disclosure:** Selling Broker represents: ☑ Buyer; ☐ Seller; ☐ both parties; ☐ neither party
    Listing Broker represents: ☑ Seller; ☐ both parties
16. **Addenda:** 22A(Financing)   22D(Optional Clauses)   22K(Utilities)   22T(Title Contingency)
    35(Inspection)

Buyer's Signature   12/02/2019
Seller's Signature   12/02/2019

Buyer's Address: 329 25th Ave E
Seattle, WA 98112
Phone No.: tom@venturevisuals.com

Seller's Address:
Phone No.: (206) 458-8203

Selling Firm: Compass Washington   MLS Office No.: 5773
Selling Broker (Print): Kyle Moss   MLS LAG No.: 100211
Firm Phone: (206) 330-0314   Broker Phone: (206) 619-6136
Selling Firm Document E-mail: contractsseattle@compass.com
Selling Broker's E-mail: kyle.moss@compass.com
Selling Broker DOL License No.: 116307   Selling Firm DOL License No.: 20746

Listing Firm: John L Scott West Seattle   MLS Office No.: 1570
Listing Broker (Print): Susan Sullivan   MLS LAG No.: 64906
Firm Phone: (206) 935-7700   Broker Phone: (206) 399-7609   Firm Fax: (206) 935-7000
Listing Firm Document E-mail: notices.westseattle@johnlscott.com
Listing Broker's E-mail: ssullivan@johnlscott.com
Listing Broker DOL License No.: 60668   Listing Firm DOL License No.: 20018

Authentisign ID: 6FDD6C3A-CC79-4F25-AD04-E77FE616F93D

Form 21  
Residential Purchase & Sale Agreement  
Rev. 7/19  
Page 2 of 5

©Copyright 2019  
Northwest Multiple Listing Service  
ALL RIGHTS RESERVED

**RESIDENTIAL REAL ESTATE PURCHASE AND SALE AGREEMENT**  
**GENERAL TERMS**  
*Continued*

a. **Purchase Price.** Buyer shall pay to Seller the Purchase Price, including the Earnest Money, in cash at Closing, unless otherwise specified in this Agreement. Buyer represents that Buyer has sufficient funds to close this sale in accordance with this Agreement and is not relying on any contingent source of funds, including funds from loans, the sale of other property, gifts, retirement, or future earnings, except to the extent otherwise specified in this Agreement. The parties shall use caution when wiring funds to avoid potential wire fraud. Before wiring funds, the party wiring funds shall take steps to confirm any wire instructions via an independently verified phone number and other appropriate measures.

b. **Earnest Money.** Buyer shall deliver the Earnest Money within 2 days after mutual acceptance to Selling Broker or to Closing Agent. If Buyer delivers the Earnest Money to Selling Broker, Selling Broker will deposit any check to be held by Selling Firm, or deliver any Earnest Money to be held by Closing Agent, within 3 days of receipt or mutual acceptance, whichever occurs later. If the Earnest Money is held by Selling Firm and is over $10,000.00 it shall be deposited into an interest bearing trust account in Selling Firm's name provided that Buyer completes an IRS Form W-9. Interest, if any, after deduction of bank charges and fees, will be paid to Buyer. Buyer shall reimburse Selling Firm for bank charges and fees in excess of the interest earned, if any. If the Earnest Money held by Selling Firm is over $10,000.00 Buyer has the option to require Selling Firm to deposit the Earnest Money into the Housing Trust Fund Account, with the interest paid to the State Treasurer, if both Seller and Buyer so agree in writing. If the Buyer does not complete an IRS Form W-9 before Selling Firm must deposit the Earnest Money or the Earnest Money is $10,000.00 or less, the Earnest Money shall be deposited into the Housing Trust Fund Account. Selling Firm may transfer the Earnest Money to Closing Agent at Closing. If all or part of the Earnest Money is to be refunded to Buyer and any such costs remain unpaid, the Selling Firm or Closing Agent may deduct and pay them therefrom. The parties instruct Closing Agent to provide written verification of receipt of the Earnest Money and notice of dishonor of any check to the parties and Brokers at the addresses and/or fax numbers provided herein.

Upon termination of this Agreement, a party or the Closing Agent may deliver a form authorizing the release of Earnest Money to the other party or the parties. The party(s) shall execute such form and deliver the same to the Closing Agent. If either party fails to execute the release form, a party may make a written demand to the Closing Agent for the Earnest Money. Pursuant to RCW 64.04, Closing Agent shall deliver notice of the demand to the other party within 15 days. If the other party does not object to the demand within 20 days of Closing Agent's notice, Closing Agent shall disburse the Earnest Money to the party making the demand within 10 days of the expiration of the 20 day period. If Closing Agent timely receives an objection or an inconsistent demand from the other party, Closing Agent shall commence an interpleader action within 60 days of such objection or inconsistent demand, unless the parties provide subsequent consistent instructions to Closing Agent to disburse the earnest money or refrain from commencing an interpleader action for a specified period of time. Pursuant to RCW 4.28.080, the parties consent to service of the summons and complaint for an interpleader action by first class mail, postage prepaid at the party's usual mailing address or the address identified in this Agreement. If the Closing Agent complies with the preceding process, each party shall be deemed to have released Closing Agent from any and all claims or liability related to the disbursal of the Earnest Money. If either party fails to authorize the release of the Earnest Money to the other party when required to do so under this Agreement, that party shall be in breach of this Agreement. For the purposes of this section, the term Closing Agent includes a Selling Firm holding the Earnest Money. The parties authorize the party commencing an interpleader action to deduct up to $500.00 for the costs thereof.

c. **Included Items.** Any of the following items, including items identified in Specific Term No. 5 if the corresponding box is checked, located in or on the Property are included in the sale: built-in appliances; wall-to-wall carpeting; curtains, drapes and all other window treatments; window and door screens; awnings; storm doors and windows; installed television antennas; ventilating, air conditioning and heating fixtures; trash compactor; fireplace doors, gas logs and gas log lighters; irrigation fixtures; electric garage door openers; water heaters; installed electrical fixtures; lighting fixtures; shrubs, plants and trees planted in the ground; and other fixtures; and all associated operating remote controls. Unless otherwise agreed, if any of the above items are leased or encumbered, Seller shall acquire clear title before Closing.

d. **Condition of Title.** Unless otherwise specified in this Agreement, title to the Property shall be marketable at Closing. The following shall not cause the title to be unmarketable: rights, reservations, covenants, conditions and restrictions, presently of record and general to the area; easements and encroachments, not materially affecting the value of or unduly interfering with Buyer's reasonable use of the Property; and reserved oil and/or mining rights. Seller shall not convey or reserve any oil and/or mineral rights after mutual acceptance without Buyer's written consent. Monetary encumbrances or liens not assumed by Buyer, shall be paid or discharged by Seller on or before Closing. Title shall be conveyed by a Statutory Warranty Deed. If this Agreement is for conveyance of a buyer's interest in a Real Estate Contract, the Statutory Warranty Deed shall include a buyer's assignment of the contract sufficient to convey after acquired title.

e. **Title Insurance.** Seller authorizes Buyer's lender or Closing Agent, at Seller's expense, to apply for the then-current ALTA form of Homeowner's Policy of Title Insurance for One-to-Four Family Residence, from the Title Insurance Company. If Seller previously received a preliminary commitment from a Title Insurance Company that Buyer declines to use, Buyer shall pay any cancellation fees owing to the original Title Insurance Company. Otherwise, the party applying for title insurance shall pay any title cancellation fee, in the event such a fee is assessed. If the Title Insurance

| Buyer's Initials 12/02/2019 | Buyer's Initials Date | Seller's Initials VS 12/02/2019 | Seller's Initials Date |
|---|---|---|---|

Authentisign ID: 6FDD6C3A-CC79-4F25-AD04-E77FE616F93D

Form 21  
Residential Purchase & Sale Agreement  
Rev. 7/19  
Page 3 of 5

©Copyright 2019  
Northwest Multiple Listing Service  
ALL RIGHTS RESERVED

**RESIDENTIAL REAL ESTATE PURCHASE AND SALE AGREEMENT**  
**GENERAL TERMS**  
*Continued*

Company selected by the parties will not issue a Homeowner's Policy for the Property, the parties agree that the Title Insurance Company shall instead issue the then-current ALTA standard form Owner's Policy, together with homeowner's additional protection and inflation protection endorsements, if available. The Title Insurance Company shall send a copy of the preliminary commitment to Seller, Listing Broker, Buyer and Selling Broker. The preliminary commitment, and the title policy to be issued, shall contain no exceptions other than the General Exclusions and Exceptions in the Policy and Special Exceptions consistent with the Condition of Title herein provided. If title cannot be made so insurable prior to the Closing Date, then as Buyer's sole and exclusive remedy, the Earnest Money shall, unless Buyer elects to waive such defects or encumbrances, be refunded to the Buyer, less any unpaid costs described in this Agreement, and this Agreement shall thereupon be terminated. Buyer shall have no right to specific performance or damages as a consequence of Seller's inability to provide insurable title.

f. **Closing and Possession**. This sale shall be closed by the Closing Agent on the Closing Date. If the Closing Date falls on a Saturday, Sunday, legal holiday as defined in RCW 1.16.050, or day when the county recording office is closed, the Closing Agent shall close the transaction on the next day that is not a Saturday, Sunday, legal holiday, or day when the county recording office is closed. "Closing" means the date on which all documents are recorded and the sale proceeds are available to Seller. Seller shall deliver keys and garage door remotes to Buyer on the Closing Date or on the Possession Date, whichever occurs first. Buyer shall be entitled to possession at 9:00 p.m. on the Possession Date. Seller shall maintain the Property in its present condition, normal wear and tear excepted, until the Buyer is provided possession. Seller shall either repair or replace any system or appliance (including, but not limited to plumbing, heat, electrical, and all Included Items) that becomes inoperative or malfunctions prior to Closing with a system or appliance of at least equal quality. Buyer reserves the right to walk through the Property within 5 days of Closing to verify that Seller has maintained the Property and systems/appliances as required by this paragraph. Seller shall not enter into or modify existing leases or rental agreements, service contracts, or other agreements affecting the Property which have terms extending beyond Closing without first obtaining Buyer's consent, which shall not be unreasonably withheld. If possession transfers at a time other than Closing, the parties shall execute NWMLS Form 65A (Rental Agreement/Occupancy Prior to Closing) or NWMLS Form 65B (Rental Agreement/Seller Occupancy After Closing) (or alternative rental agreements) and are advised of the need to contact their respective insurance companies to assure appropriate hazard and liability insurance policies are in place, as applicable.

RCW 19.27.530 requires the seller of any owner-occupied single-family residence to equip the residence with a carbon monoxide alarm(s) in accordance with the state building code before a buyer or any other person may legally occupy the residence following the sale. RCW 43.44.110 requires the seller of a dwelling unit, that does not have at least one smoke detection device, to provide at least one smoke detection device in the unit before the buyer or any other person occupies the unit following a sale. The parties acknowledge that the Brokers are not responsible for ensuring that Seller complies with RCW 19.27.530 or RCW 43.44.110. Buyer and Seller shall hold the Brokers and their Firms harmless from any claim resulting from Seller's failure to install a carbon monoxide alarm(s) or smoke detector(s) in the Property.

g. **Section 1031 Like-Kind Exchange**. If either Buyer or Seller intends for this transaction to be a part of a Section 1031 like-kind exchange, then the other party shall cooperate in the completion of the like-kind exchange so long as the cooperating party incurs no additional liability in doing so, and so long as any expenses (including attorneys' fees and costs) incurred by the cooperating party that are related only to the exchange are paid or reimbursed to the cooperating party at or prior to Closing. Notwithstanding the Assignment paragraph of this Agreement, any party completing a Section 1031 like-kind exchange may assign this Agreement to its qualified intermediary or any entity set up for the purposes of completing a reverse exchange.

h. **Closing Costs and Prorations and Charges and Assessments**. Seller and Buyer shall each pay one-half of the escrow fee unless otherwise required by applicable FHA or VA regulations. Taxes for the current year, rent, interest, and lienable homeowner's association dues shall be prorated as of Closing. Buyer shall pay Buyer's loan costs, including credit report, appraisal charge and lender's title insurance, unless provided otherwise in this Agreement. If any payments are delinquent on encumbrances which will remain after Closing, Closing Agent is instructed to pay such delinquencies at Closing from money due, or to be paid by, Seller. Buyer shall pay for remaining fuel in the fuel tank if, prior to Closing, Seller obtains a written statement from the supplier as to the quantity and current price and provides such statement to the Closing Agent. Seller shall pay all utility charges, including unbilled charges. Unless waived in Specific Term No. 12, Seller and Buyer request the services of Closing Agent in disbursing funds necessary to satisfy unpaid utility charges in accordance with RCW 60.80 and Seller shall provide the names and addresses of all utilities providing service to the Property and having lien rights (attach NWMLS Form 22K Identification of Utilities or equivalent).

Buyer is advised to verify the existence and amount of any local improvement district, capacity or impact charges or other assessments that may be charged against the Property before or after Closing. Seller will pay such charges that are or become due on or before Closing. Charges levied before Closing, but becoming due after Closing shall be paid as agreed in Specific Term No. 13.

| Buyer's Initials | Date | Buyer's Initials | Date | Seller's Initials | Date | Seller's Initials | Date |
|---|---|---|---|---|---|---|---|
| [X] | 12/02/2019 | | | [VS] | 12/02/2019 | | |

AuthentiSign ID: 6FDD6C3A-CC79-4F25-AD04-E77FE616F93D

Form 21  
Residential Purchase & Sale Agreement  
Rev. 7/19  
Page 4 of 5

©Copyright 2019  
Northwest Multiple Listing Service  
ALL RIGHTS RESERVED

**RESIDENTIAL REAL ESTATE PURCHASE AND SALE AGREEMENT**  
**GENERAL TERMS**  
*Continued*

i. **Sale Information.** Listing Broker and Selling Broker are authorized to report this Agreement (including price and all terms) to the Multiple Listing Service that published it and to its members, financing institutions, appraisers, and anyone else related to this sale. Buyer and Seller expressly authorize all Closing Agents, appraisers, title insurance companies, and others related to this Sale, to furnish the Listing Broker and/or Selling Broker, on request, any and all information and copies of documents concerning this sale.

j. **Seller Citizenship and FIRPTA.** Seller warrants that the identification of Seller's citizenship status for purposes of U.S. income taxation in Specific Term No. 14 is correct. Seller shall execute a certification (NWMLS Form 22E or equivalent) under the Foreign Investment in Real Property Tax Act ("FIRPTA") at Closing and provide the certification to the Closing Agent. If Seller is a foreign person for purposes of U.S. income taxation, and this transaction is not otherwise exempt from FIRPTA, Closing Agent is instructed to withhold and pay the required amount to the Internal Revenue Service.

k. **Notices and Delivery of Documents.** Any notice related to this Agreement (including revocations of offers or counteroffers) must be in writing. Notices to Seller must be signed by at least one Buyer and shall be deemed delivered only when the notice is received by Seller, by Listing Broker, or at the licensed office of Listing Broker. Notices to Buyer must be signed by at least one Seller and shall be deemed delivered only when the notice is received by Buyer, by Selling Broker, or at the licensed office of Selling Broker. Documents related to this Agreement, such as NWMLS Form 17, Information on Lead-Based Paint and Lead-Based Paint Hazards, Public Offering Statement or Resale Certificate, and all other documents shall be delivered pursuant to this paragraph. Buyer and Seller must keep Selling Broker and Listing Broker advised of their whereabouts in order to receive prompt notification of receipt of a notice.

Facsimile transmission of any notice or document shall constitute delivery. E-mail transmission of any notice or document (or a direct link to such notice or document) shall constitute delivery when: (i) the e-mail is sent to both Selling Broker and Selling Firm or both Listing Broker and Listing Firm at the e-mail addresses specified on page one of this Agreement; or (ii) Selling Broker or Listing Broker provide written acknowledgment of receipt of the e-mail (an automatic e-mail reply does not constitute written acknowledgment). At the request of either party, or the Closing Agent, the parties will confirm facsimile or e-mail transmitted signatures by signing an original document.

l. **Computation of Time.** Unless otherwise specified in this Agreement, any period of time measured in days and stated in this Agreement shall start on the day following the event commencing the period and shall expire at 9:00 p.m. of the last calendar day of the specified period of time. Except for the Possession Date, if the last day is a Saturday, Sunday or legal holiday as defined in RCW 1.16.050, the specified period of time shall expire on the next day that is not a Saturday, Sunday or legal holiday. Any specified period of 5 days or less, except for any time period relating to the Possession Date, shall not include Saturdays, Sundays or legal holidays. If the parties agree that an event will occur on a specific calendar date, the event shall occur on that date, except for the Closing Date, which, if it falls on a Saturday, Sunday, legal holiday as defined in RCW 1.16.050, or day when the county recording office is closed, shall occur on the next day that is not a Saturday, Sunday, legal holiday, or day when the county recording office is closed. If the parties agree upon and attach a legal description after this Agreement is signed by the offeree and delivered to the offeror, then for the purposes of computing time, mutual acceptance shall be deemed to be on the date of delivery of an accepted offer or counteroffer to the offeror, rather than on the date the legal description is attached. Time is of the essence of this Agreement.

m. **Integration and Electronic Signatures.** This Agreement constitutes the entire understanding between the parties and supersedes all prior or contemporaneous understandings and representations. No modification of this Agreement shall be effective unless agreed in writing and signed by Buyer and Seller. The parties acknowledge that a signature in electronic form has the same legal effect and validity as a handwritten signature.

n. **Assignment.** Buyer may not assign this Agreement, or Buyer's rights hereunder, without Seller's prior written consent, unless the parties indicate that assignment is permitted by the addition of "and/or assigns" on the line identifying the Buyer on the first page of this Agreement.

o. **Default.** In the event Buyer fails, without legal excuse, to complete the purchase of the Property, then the following provision, as identified in Specific Term No. 8, shall apply:

   i. **Forfeiture of Earnest Money.** That portion of the Earnest Money that does not exceed five percent (5%) of the Purchase Price shall be forfeited to the Seller as the sole and exclusive remedy available to Seller for such failure.

   ii. **Seller's Election of Remedies.** Seller may, at Seller's option, (a) keep the Earnest Money as liquidated damages as the sole and exclusive remedy available to Seller for such failure, (b) bring suit against Buyer for Seller's actual damages, (c) bring suit to specifically enforce this Agreement and recover any incidental damages, or (d) pursue any other rights or remedies available at law or equity.

p. **Professional Advice and Attorneys' Fees.** Buyer and Seller are advised to seek the counsel of an attorney and a certified public accountant to review the terms of this Agreement. Buyer and Seller shall pay their own fees incurred for such review. However, if Buyer or Seller institutes suit against the other concerning this Agreement, or if the party holding the Earnest Money commences an interpleader action, the prevailing party is entitled to reasonable attorneys' fees and expenses.

| Buyer's Initials | Date | Buyer's Initials | Date | Seller's Initials | Date | Seller's Initials | Date |
|---|---|---|---|---|---|---|---|
| /X/ | 12/02/2019 | | | VS | 12/02/2019 | | |

Authentisign ID: 6FDD6C3A-CC79-4F25-AD04-E77FE616F93D

Form 21  
Residential Purchase & Sale Agreement  
Rev. 7/19  
Page 5 of 5

©Copyright 2019  
Northwest Multiple Listing Service  
ALL RIGHTS RESERVED

**RESIDENTIAL REAL ESTATE PURCHASE AND SALE AGREEMENT**  
**GENERAL TERMS**  
*Continued*

q. **Offer.** This offer must be accepted by 9:00 p.m. on the Offer Expiration Date, unless sooner withdrawn. Acceptance shall not be effective until a signed copy is received by the other party, by the other party's broker, or at the licensed office of the other party's broker pursuant to General Term k. If this offer is not so accepted, it shall lapse and any Earnest Money shall be refunded to Buyer.

r. **Counteroffer.** Any change in the terms presented in an offer or counteroffer, other than the insertion of or change to Seller's name and Seller's warranty of citizenship status, shall be considered a counteroffer. If a party makes a counteroffer, then the other party shall have until 9:00 p.m. on the counteroffer expiration date to accept that counteroffer, unless sooner withdrawn. Acceptance shall not be effective until a signed copy is received by the other party, the other party's broker, or at the licensed office of the other party's broker pursuant to General Term k. If the counteroffer is not so accepted, it shall lapse and any Earnest Money shall be refunded to Buyer.

s. **Offer and Counteroffer Expiration Date.** If no expiration date is specified for an offer/counteroffer, the offer/counteroffer shall expire 2 days after the offer/counteroffer is delivered by the party making the offer/counteroffer, unless sooner withdrawn.

t. **Agency Disclosure.** Selling Firm, Selling Firm's Designated Broker, Selling Broker's Branch Manager (if any) and Selling Broker's Managing Broker (if any) represent the same party that Selling Broker represents. Listing Firm, Listing Firm's Designated Broker, Listing Broker's Branch Manager (if any), and Listing Broker's Managing Broker (if any) represent the same party that the Listing Broker represents. If Selling Broker and Listing Broker are different persons affiliated with the same Firm, then both Buyer and Seller confirm their consent to Designated Broker, Branch Manager (if any), and Managing Broker (if any) representing both parties as dual agents. If Selling Broker and Listing Broker are the same person representing both parties then both Buyer and Seller confirm their consent to that person and his/her Designated Broker, Branch Manager (if any), and Managing Broker (if any) representing both parties as dual agents. All parties acknowledge receipt of the pamphlet entitled "The Law of Real Estate Agency."

u. **Commission.** Seller and Buyer shall pay a commission in accordance with any listing or commission agreement to which they are a party. The Listing Firm's commission shall be apportioned between Listing Firm and Selling Firm as specified in the listing. Seller and Buyer hereby consent to Listing Firm or Selling Firm receiving compensation from more than one party. Seller and Buyer hereby assign to Listing Firm and Selling Firm, as applicable, a portion of their funds in escrow equal to such commission(s) and irrevocably instruct the Closing Agent to disburse the commission(s) directly to the Firm(s). In any action by Listing or Selling Firm to enforce this paragraph, the prevailing party is entitled to court costs and reasonable attorneys' fees. Seller and Buyer agree that the Firms are intended third party beneficiaries under this Agreement.

v. **Cancellation Rights/Lead-Based Paint.** If a residential dwelling was built on the Property prior to 1978, and Buyer receives a Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards (NWMLS Form 22J) after mutual acceptance, Buyer may rescind this Agreement at any time up to 3 days thereafter.

w. **Information Verification Period.** Buyer shall have 10 days after mutual acceptance to verify all information provided from Seller or Listing Firm related to the Property. This contingency shall be deemed satisfied unless Buyer gives notice identifying the materially inaccurate information within 10 days of mutual acceptance. If Buyer gives timely notice under this section, then this Agreement shall terminate and the Earnest Money shall be refunded to Buyer.

x. **Property Condition Disclaimer.** Buyer and Seller agree, that except as provided in this Agreement, all representations and information regarding the Property and the transaction are solely from the Seller or Buyer, and not from any Broker. The parties acknowledge that the Brokers are not responsible for assuring that the parties perform their obligations under this Agreement and that none of the Brokers has agreed to independently investigate or confirm any matter related to this transaction except as stated in this Agreement, or in a separate writing signed by such Broker. In addition, Brokers do not guarantee the value, quality or condition of the Property and some properties may contain building materials, including siding, roofing, ceiling, insulation, electrical, and plumbing, that have been the subject of lawsuits and/or governmental inquiry because of possible defects or health hazards. Some properties may have other defects arising after construction, such as drainage, leakage, pest, rot and mold problems. Brokers do not have the expertise to identify or assess defective products, materials, or conditions. Buyer is urged to use due diligence to inspect the Property to Buyer's satisfaction and to retain inspectors qualified to identify the presence of defective materials and evaluate the condition of the Property as there may be defects that may only be revealed by careful inspection. Buyer is advised to investigate whether there is a sufficient water supply to meet Buyer's needs. Buyer is advised to investigate the cost of insurance for the Property, including, but not limited to homeowner's, flood, earthquake, landslide, and other available coverage. Buyer acknowledges that local ordinances may restrict short term rentals of the Property. Buyer and Seller acknowledge that home protection plans may be available which may provide additional protection and benefit to Buyer and Seller. Brokers may assist the parties with locating and selecting third party service providers, such as inspectors or contractors, but Brokers cannot guarantee or be responsible for the services provided by those third parties. The parties shall exercise their own judgment and due diligence regarding third-party service providers.

| Buyer's Initials | Date | Buyer's Initials | Date | Seller's Initials | Date | Seller's Initials | Date |
|---|---|---|---|---|---|---|---|
| /X/ | 12/02/2019 | | | VS | 12/02/2019 | | |

Form 35R
Inspection Response for Form 35
Rev. 7/08
Page 1 of 1

©Copyright 2008
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

# INSPECTION RESPONSE FOR FORM 35

The following is part of the Purchase and Sale Agreement dated **December 02, 2019**  1

between **Thomas M Kranzle** ("Buyer") 2

and **V.S INVESTMENT ASSOC LLC** ("Seller") 3

concerning **2469 S College Street   Seattle   WA   98144** (the "Property"). 4

## I. BUYER'S RESPONSE OR REQUEST FOR REPAIRS OR MODIFICATION

- ☐ Buyer's inspection of the Property is approved and the inspection contingency is satisfied.*
- ☐ Buyer's inspection of the Property is disapproved and the Agreement is terminated. The Earnest Money shall be refunded to Buyer.*
- ☐ Buyer gives notice of an additional inspection. The inspector's recommendation is attached. The time for Buyer's response to the initial and additional inspection is extended as provided in paragraph 1(b) of Form 35.*
- ☑ Buyer requests the following modifications and/or repairs. If Seller agrees to these modifications or repairs, the inspection contingency shall be deemed satisfied.**

**See attached Exhibits A and B - Inspection contingency will only be deemed satisfied when Exhibit A and B as well as this Form 35R are signed in totality by all parties.**

Closing date to be on or before 1/24/2019

Buyer (signed) 12/07/2019

If Buyer requests modifications and/or repairs, this Form 35R and any other addenda or notice pertaining to the modifications and/or repairs and amendment to the Agreement related to or resulting from the request for modifications and/or repairs shall become a part of the Agreement.

## II. SELLER'S RESPONSE TO BUYER'S REQUEST FOR REPAIRS OR MODIFICATION.

Seller acknowledges receipt of Buyer's request for modification or repair, and responds as follows:

- ☐ Seller agrees to all of the modifications or repairs in Buyer's request for modification or repair. The inspection contingency is satisfied, the parties agree to proceed to Closing as provided in the Agreement, and Buyer's reply, below, is not necessary.**
- ☒ Seller offers to correct only the following conditions:**  
  Seller agrees to pay $5,000 towards loan cost provisions. Seller will include 2-10 warranty. Amended Exhibit A and B attached.
- ☐ Seller rejects all proposals by Buyer.*
- ☐ Seller rejects all proposals by Buyer, but proposes the following alternative modifications or repairs:**

Seller (signed) 12/09/2019

## III. BUYER'S REPLY TO SELLER'S RESPONSE.

- ☒ Buyer accepts Seller's response and agrees to proceed to Closing as provided in the Agreement.**
- ☐ Buyer rejects Seller's response. Buyer disapproves of the inspection and this Agreement is terminated. The Earnest Money shall be refunded to Buyer.*
- ☐ Buyer rejects Seller's response, but offers the attached alternative proposal for modification or repair. Buyer acknowledges that the inspection contingency will be waived unless Buyer and Seller reach written agreement or Buyer gives notice disapproving the inspection and terminating the Agreement before the deadline in paragraph 1(c)(ii) of the inspection contingency (NWMLS Form 35).**

Buyer (signed) 12/09/2019

\* This is a notice which requires only one Buyer's or one Seller's initials.
\*\* This is not a notice and requires all Buyer's or Seller's initials.

Authentisign ID: 5593503D-F17F-496F-B428-A24E21903B1D

Form 34  
Addendum/Amendment to P&S  
Rev. 7/10  
Page 1 of 1

©Copyright 2010  
Northwest Multiple Listing Service  
ALL RIGHTS RESERVED

## ADDENDUM / AMENDMENT TO PURCHASE AND SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated **December 02, 2019** ____ 1

between **Thomas M Kranzle** ____ ("Buyer") 2
Buyer                                         Buyer

and **V.S INVESTMENT ASSOC LLC** ____ ("Seller") 3
Seller                                         Seller

concerning **2469  S College Street    Seattle    WA  98144** (the "Property"). 4
Address                        City         State  Zip

IT IS AGREED BETWEEN THE SELLER AND BUYER AS FOLLOWS: 5

Seller agrees to use a licensed and bonded contractor to remedy the following items to Buyers satisfaction within 48 hours of closing: 6
~~Stain and seal all outside wood decks with stain color of Buyers choice~~ 7
~~Repair and paint all interior wall paint with semi gloss or eggshell white of Buyers choice~~ 8
- All items as detailed on these forms, Exhibit A & B, shall be referred to as 'punch list items' and must be completed to Buyers written satisfaction within 48 hours of closing 9
- Complete whole house cleaning must occur within ~~24 hours of closing~~ 48 hours prior to closing 10
- Closing date to be changed to 1/24/2019 11
- Certificate of occupancy must be obtained within 14 days of closing 12
- Repair exposed junction box for fire system noted at rooftop, installation of fire alarm. 13
- Install/repair current inoperable hard wired Door Bell 14
- Fix all doors Interior and Exterior, including closet doors where screws are missing at door hinges or doors/drawers are not hung at the same height or are not currently perfectly functioning and opening/closing with ease. All hardware must appear new and function as intended. 15-16
- Fix/restore to function, all Exterior and Interior Lighting - Install all new LED bulbs of Buyers choosing 17
- Fix/restore all exterior Flashing -Fix/Seal all flashing joints that do not currently have sealant. Change configuration if necessary to prevent pooling. 18
- ~~Fix/restore all gutter Downspouts, currently~~ Multiple downspouts around home terminate near poured concrete/foundation, drains must ~~connect to~~ to a perimeter drain or extend the downspouts to route water 5-6 ft away from home, ~~or utilize rain barrels to prevent erosion~~ of soil beneath the foundation. Seal drain connection with plastic adapter to prevent debris intrusion. 19-21
- Fix/Restore Garage/Carport 7. Adjust self-closing hinges at garage door to interior so door cannot remain open to keep a consistent fire barrier. 22-23
- Install Deadbolt lock in all missing areas of any interior or exterior door. 24
- Paint/fill and caulk all settling cracks. 25
- Close/fill/adjust any gaps between hardware and wood for all stair risers for safety. 26

List continues in Exhibit B... 27-28

Amended line 6 - Seller will stain all decks with wood stain color of Buyers choice prior to May 31, 2020. 29-30
Amended line 7 - Seller will touch up all wall blemishes with matching paint and sheen prior to closing.
Amended line 19 - Seller will correct downspout that currently has duct tape. All others are City of Seattle directed and approved downspouts.

ALL OTHER TERMS AND CONDITIONS of said Agreement remain unchanged. 31

Buyer's Initials  12/07/2019   Date    Buyer's Initials   Date    Seller's Initials  12/09/2019   Date    Seller's Initials   Date

Authentisign ID: 5593503D-F17F-496F-B428-A24E21903B1D

Form 34
Addendum/Amendment to P&S
Rev. 7/10
Page 1 of 1

©Copyright 2010
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## ADDENDUM / AMENDMENT TO PURCHASE AND SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated **December 02, 2019** 1

between **Thomas M Kranzle** ("Buyer") 2

and **V.S INVESTMENT ASSOC LLC** ("Seller") 3

concerning **2469 S College Street Seattle WA 98144** (the "Property"). 4

IT IS AGREED BETWEEN THE SELLER AND BUYER AS FOLLOWS: 5

Seller agrees to the following modifications to the purchase and sale agreement dated 12/2/2019. Seller further agrees to use a licensed and bonded contractor to remedy the following items to Buyers satisfaction within 48 hours of closing:

~~Seller to contribute up to 2% of sales price to Buyers lender allowable prepaids and/or any and all closing costs~~

- Install all screens for all windows that have them and for all sliding glass doors.
- Seal exposed area near refrigerant lines at rooftop deck.
- Gas stub at rooftop deck currently terminates into downspout, change orientation of gas spigot for access and ease of connection.
- Water heater in commercial bathroom not operational at time of inspection, Seller to restore to function.
- Plumbing currently unfinished in some bathrooms, complete plumbing to reasonable standards of operation.
- Perform Grout maintenance for all tubs/showers/and surrounds. Further, Seller shall Seal all grout in all bathrooms.
- Tighten support bolts and apply caulk at base of all toilets within the structure.
- Kitchen Dishwasher currently not attached to cabinetry, install hardware to secure dishwasher for safety. Noise/vibration noted from water supply, fix and test for low pressure, restore to total function.
- Fix/remedy low water pressure at kitchen faucet, recommend evaluation of all water supplies by a licensed plumber.
- At South Bedroom Windows, Seller to paint/caulk minor settling cracks and remove and replace Incorrectly sized window with proper sized standard to the home window.
- Moisture damage is noted at trim below South door to balcony, replacement of trim is necessary.

- Stain and finish/polish must be made to match on closet doors where mismatched in upstairs bedroom
- Rehang master bedroom door on opposite side currently hung to swing outwards instead of inwards.
- Seller, at Buyers request, to provide list of materials/stains/finishes when specifically asked before or after closing.

ALL OTHER TERMS AND CONDITIONS of said Agreement remain unchanged. 31

[X] 12/07/2019 / 12/07/2019
Buyer's Initials / Date

[VS] 12/09/2019
Seller's Initials / Date