# EXHIBIT A

AuthentiSign ID: 7CA797B9-E2A4-4859-8220-1B053FF8681B

**EXCLUSIVE SALE AND LISTING AGREEMENT**

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**V.S. Investment Assoc., LLC** _____ ("Seller") hereby grants to,   **1**
Seller                               Seller

**Windermere Real Estate / North, Inc** _____ ("Firm") from date hereof until midnight of   **2**

**November 30, 2020** _____ ("Listing Term"), the exclusive right to sell the real property ("the Property")   **3**

commonly known as **2463 S College St** _____ , City **Seattle** _____ ,   **4**

County **King** _____ , WA, Zip **98144** _____ ; and legally described on Exhibit A.   **5**

1. **DEFINITIONS.** (a) "MLS" means the Northwest Multiple Listing Service; and (b) "sell" includes a contract to sell; an   **6**
   exchange or contract to exchange; an option to purchase; and/or a lease with option to purchase.   **7**

2. **AGENCY/DUAL AGENCY.** Seller authorizes Firm to appoint _____**Shawn Perry**_____   **8**
   as Seller's Listing Broker. This Agreement creates an agency relationship with Listing Broker and any of Firm's brokers   **9**
   who supervise Listing Broker's performance as Seller's agent ("Supervising Broker"). No other brokers affiliated with   **10**
   Firm are agents of Seller, except to the extent that Firm, in its discretion, appoints other brokers to act on Seller's behalf   **11**
   as and when needed. If the Property is sold to a buyer represented by one of Firm's brokers other than Listing Broker   **12**
   ("Buyer's Broker"), Seller consents to any Supervising Broker, who also supervises Buyer's Broker, acting as a dual   **13**
   agent. If the Property is sold to a buyer who Listing Broker also represents, Seller consents to Listing Broker and   **14**
   Supervising Broker acting as dual agents. If any of Firm's brokers act as a dual agent, Firm shall be entitled to the entire   **15**
   commission payable under this Agreement plus any additional compensation Firm may have negotiated with the buyer.   **16**
   Seller acknowledges receipt of the pamphlet entitled "The Law of Real Estate Agency."   **17**

3. **LIST DATE.** Firm shall submit this listing, including the Property information on the attached pages and photographs of   **18**
   the Property (collectively, "Listing Data"), to be published by MLS by 5:00 p.m. on _____**07/01/2020**_____ ("List Date"),   **19**
   which date shall not be more than 30 days from the effective date of the Agreement. Seller acknowledges that exposure   **20**
   of the Property to the open market through MLS will increase the likelihood that Seller will receive fair market value for   **21**
   the Property. Accordingly, prior to the List Date, Firm and Seller shall not promote or advertise the Property in any   **22**
   manner whatsoever, including, but not limited to yard or other signs, flyers, websites, e-mails, texts, mailers, magazines,   **23**
   newspapers, open houses, previews, showings, or tours.   **24**

4. **COMMISSION.** If during the Listing Term (a) Seller sells the Property and the buyer does not terminate the agreement   **25**
   prior to closing; or (b) after reasonable exposure of the Property to the market, Firm procures a buyer who is ready,   **26**
   willing, and able to purchase the Property on the terms in this Agreement and as set forth in the attached Listing Input   **27**
   Sheets incorporated herein by this reference, Seller will pay Firm a commission of (fill in one and strike the other)   **28**
   ____**6**____% of the sales price, or $ _____ ("Total Commission"). From the Total Commission, Firm   **29**
   will offer a cooperating member of MLS representing a buyer ("Selling Firm") a commission of (fill in one and strike the   **30**
   other) ____**3**____% of the sales price, or $ _____. RCW 18.86.050(1)(e)(ii) provides that buyer's brokers   **31**
   are not required to show property as to which there is no written agreement to pay compensation to the buyer's broker.   **32**

   If Seller shall, within six months after the expiration of the Listing Term, sell the Property to any person to whose attention it   **33**
   was brought through the signs, advertising or other action of Firm, or on information secured directly or indirectly from or   **34**
   through Firm, during the Listing Term, Seller will pay Firm the above commission. Provided, that if Seller pays a commission   **35**
   to a member of MLS or a cooperating MLS in conjunction with a sale, the amount of commission payable to Firm shall be   **36**
   reduced by the amount paid to such other member(s). Provided further, that if Seller cancels this Agreement without legal   **37**
   cause, Seller may be liable for damages incurred by Firm as a result of such cancellation, regardless of whether Seller pays   **38**
   a commission to another MLS member. Selling Firm is an intended third party beneficiary of this Agreement.   **39**

5. **SHORT SALE / NO DISTRESSED HOME CONVEYANCE.** If the proceeds from the sale of the Property are insufficient   **40**
   to cover the Seller's costs at closing, Seller acknowledges that the decision by any beneficiary or mortgagee, or its   **41**
   assignees, to release its interest in the Property, for less than the amount owed, does not automatically relieve Seller of   **42**
   the obligation to pay any debt or costs remaining at closing, including fees such as Firm's commission. Firm will not   **43**
   represent or assist Seller in a transaction that is a "Distressed Home Conveyance" as defined by Chapter 61.34 RCW   **44**
   unless otherwise agreed in writing. A "Distressed Home Conveyance" is a transaction where a buyer purchases   **45**
   property from a "Distressed Homeowner" (defined by Chapter 61.34 RCW), allows the Distressed Homeowner to   **46**
   continue to occupy the property, and promises to convey the property back to the Distressed Homeowner or promises   **47**
   the Distressed Homeowner an interest in, or portion of, the proceeds from a resale of the property.   **48**

6. **KEYBOX.** Firm is authorized to install a keybox on the Property. Such keybox may be opened by a master key held by   **49**
   members of MLS and their brokers. A master key also may be held by affiliated third parties such as inspectors and   **50**
   appraisers who cannot have access to the Property without Firm's prior approval which will not be given without Firm   **51**
   first making reasonable efforts to obtain Seller's approval.   **52**

| _VS_ | 06/30/2020 | _VS_ | 06/30/2020 |
|---|---|---|---|
| Seller's Initials | Date | Seller's Initials | Date |

Authentisign ID: 7CA797B9-E2A4-4859-8220-1B053FF8681B

Form 1A
Exclusive Sale
Rev. 10/19
Page 2 of 2

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## EXCLUSIVE SALE AND LISTING AGREEMENT
*Continued*

7. **SELLER'S WARRANTIES AND REPRESENTATIONS.** Seller warrants that Seller has the right to sell the Property on 53
the terms herein and that the Property information on the Listing Input Sheets attached to and incorporated into this 54
Agreement is correct. Further, Seller represents that to the best of Seller's knowledge, there are no structures or 55
boundary indicators that either encroach on adjacent property or on the Property. Seller authorizes Firm to provide the 56
information in this Agreement and the attached pages to prospective buyers and to other cooperating members of MLS 57
who do not represent the Seller and, in some instances, may represent the buyer. If Seller provides Firm with any 58
photographs of the Property, Seller warrants that Seller has the necessary rights in the photographs to allow Firm to use 59
them as contemplated by this Agreement. Seller agrees to indemnify and hold Firm and other members of MLS 60
harmless in the event the foregoing warranties and representations are incorrect. 61

8. **CLOSING.** Seller shall furnish and pay for a buyer's policy of title insurance showing marketable title to the Property. 62
Seller shall pay real estate excise tax and one-half of any escrow fees or such portion of escrow fees and any other 63
fees or charges as provided by law in the case of a FHA or VA financed sale. Rent, taxes, interest, reserves, assumed 64
encumbrances, homeowner fees and insurance are to be prorated between Seller and the buyer as of the date of 65
closing. Seller shall prepare and execute a certification (NWMLS Form 22E or equivalent) under the Foreign Investment 66
in Real Property Tax Act ("FIRPTA") at closing. If Seller is a foreign person or entity, and the sale is not otherwise 67
exempt from FIRPTA, Seller acknowledges that a percentage of the amount realized from the sale will be withheld for 68
payment to the Internal Revenue Service. 69

9. **MULTIPLE LISTING SERVICE.** Seller authorizes Firm and MLS to publish the Listing Data and distribute it to other 70
members of MLS and their affiliates and third parties for public display and other purposes. This authorization shall 71
survive the termination of this Agreement. Firm is authorized to report the sale of the Property (including price and all 72
terms) to MLS and to its members, financial institutions, appraisers, and others related to the sale. Firm may refer this 73
listing to any other cooperating multiple listing service at Firm's discretion. Firm shall cooperate with all other members 74
of MLS, or of a multiple listing service to which this listing is referred, in working toward the sale of the Property. 75
Regardless of whether a cooperating MLS member is the agent of the buyer, Seller, neither or both, such member shall 76
be entitled to receive the selling firm's share of the commission. MLS is an intended third party beneficiary of this 77
agreement and will provide the Listing Data to its members and their affiliates and third parties, without verification and 78
without assuming any responsibility with respect to this agreement. 79

10. **PROPERTY CONDITION AND INSURANCE.** Neither Firm, MLS, nor any members of MLS or of any multiple listing 80
service to which this listing is referred shall be responsible for loss, theft, or damage of any nature or kind whatsoever to the 81
Property, any personal property therein, or any personal injury resulting from the condition of the Property, including entry by 82
the master key to the keybox and/or at open houses, except for damage or injury caused by its gross negligence or willful 83
misconduct. Seller is advised to notify Seller's insurance company that the Property is listed for sale and ascertain that the 84
Seller has adequate insurance coverage. If the Property is to be vacant during all or part of the Listing Term, Seller should 85
request that a "vacancy clause" be added to Seller's insurance policy. Seller acknowledges that intercepting or recording 86
conversations of persons in the Property without first obtaining their consent violates RCW 9.73.030. 87

11. **FIRM'S RIGHT TO MARKET THE PROPERTY.** Seller shall not commit any act which materially impairs 88
Firm's ability to market and sell the Property under the terms of this Agreement. In the event of breach of the foregoing, 89
Seller shall pay Firm a commission in the above amount, or at the above rate applied to the listing price herein, 90
whichever is applicable. Unless otherwise agreed in writing, Firm and other members of MLS shall be entitled to show 91
the Property at all reasonable times. Firm need not submit to Seller any offers to lease, rent, execute an option to 92
purchase, or enter into any agreement other than for immediate sale of the Property. 93

12. **SELLER DISCLOSURE STATEMENT.** Unless Seller is exempt under RCW 64.06, Seller shall provide to Firm 94
as soon as reasonably practicable a completed and signed "Seller Disclosure Statement" (Form 17 (Residential), Form 17C 95
(Unimproved Residential), or Form 17 Commercial). Seller agrees to indemnify, defend and hold Firm harmless from and 96
against any and all claims that the information Seller provides on Form 17, Form 17C, or Form 17 Commercial is inaccurate. 97

13. **DAMAGES IN THE EVENT OF BUYER'S BREACH.** In the event Seller retains earnest money as liquidated 98
damages on a buyer's breach, any costs advanced or committed by Firm on Seller's behalf shall be paid therefrom and 99
the balance divided equally between Seller and Firm. 100

14. **ATTORNEYS' FEES.** In the event either party employs an attorney to enforce any terms of this Agreement and 101
is successful, the other party agrees to pay reasonable attorneys' fees. In the event of trial, the successful party shall be 102
entitled to an award of attorneys' fees and expenses; the amount of the attorneys' fees and expenses shall be fixed by 103
the court. The venue of any suit shall be the county in which the Property is located. 104

Are the undersigned the sole owner(s)? ☑ YES ☐ NO                                                             105

*Valentin Stelmakh*     06/30/2020                  **Windermere Real Estate / North, Inc**    106

Seller's Signature       PM PDT                           Date          Real Estate Firm

*Victoria Stelmakh*     06/30/2020                  *Shawn Perry*          06/30/2020     107

Seller's Signature       PM PDT                           Date          Broker's Signature       PM PDT                  Date

AuthentiSign ID: 7CA797B9-E2A4-4859-8220-1B053FF8681B

Form 1A
Exclusive Sale
Rev. 10/19
Page 1 of 2

**EXCLUSIVE SALE AND LISTING AGREEMENT**

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**V.S. Investment Assoc., LLC** _____ ("Seller") hereby grants to,   1
<small>Seller                                                      Seller</small>

**Windermere Real Estate / North, Inc** _____ ("Firm") from date hereof until midnight of   2

**November 30, 2020** _____ ("Listing Term"), the exclusive right to sell the real property ("the Property")   3

commonly known as **2465 S College St** _____, City **Seattle** _____,   4

County **King** _____, WA, Zip **98144** _____; and legally described on Exhibit A.   5

1. **DEFINITIONS.** (a) "MLS" means the Northwest Multiple Listing Service; and (b) "sell" includes a contract to sell; an   6
   exchange or contract to exchange; an option to purchase; and/or a lease with option to purchase.   7

2. **AGENCY/DUAL AGENCY.** Seller authorizes Firm to appoint _____**Shawn Perry**_____   8
   as Seller's Listing Broker. This Agreement creates an agency relationship with Listing Broker and any of Firm's brokers   9
   who supervise Listing Broker's performance as Seller's agent ("Supervising Broker"). No other brokers affiliated with   10
   Firm are agents of Seller, except to the extent that Firm, in its discretion, appoints other brokers to act on Seller's behalf   11
   as and when needed. If the Property is sold to a buyer represented by one of Firm's brokers other than Listing Broker   12
   ("Buyer's Broker"), Seller consents to any Supervising Broker, who also supervises Buyer's Broker, acting as a dual   13
   agent. If the Property is sold to a buyer who Listing Broker also represents, Seller consents to Listing Broker and   14
   Supervising Broker acting as dual agents. If any of Firm's brokers act as a dual agent, Firm shall be entitled to the entire   15
   commission payable under this Agreement plus any additional compensation Firm may have negotiated with the buyer.   16
   Seller acknowledges receipt of the pamphlet entitled "The Law of Real Estate Agency."   17

3. **LIST DATE.** Firm shall submit this listing, including the Property information on the attached pages and photographs of   18
   the Property (collectively, "Listing Data"), to be published by MLS by 5:00 p.m. on _____**07/01/2020**_____ ("List Date"),   19
   which date shall not be more than 30 days from the effective date of the Agreement. Seller acknowledges that exposure   20
   of the Property to the open market through MLS will increase the likelihood that Seller will receive fair market value for   21
   the Property. Accordingly, prior to the List Date, Firm and Seller shall not promote or advertise the Property in any   22
   manner whatsoever, including, but not limited to yard or other signs, flyers, websites, e-mails, texts, mailers, magazines,   23
   newspapers, open houses, previews, showings, or tours.   24

4. **COMMISSION.** If during the Listing Term (a) Seller sells the Property and the buyer does not terminate the agreement   25
   prior to closing; or (b) after reasonable exposure of the Property to the market, Firm procures a buyer who is ready,   26
   willing, and able to purchase the Property on the terms in this Agreement and as set forth in the attached Listing Input   27
   Sheets incorporated herein by this reference, Seller will pay Firm a commission of (fill in one and strike the other)   28
   ___6___% of the sales price, or $ _____ ("Total Commission"). From the Total Commission, Firm   29
   will offer a cooperating member of MLS representing a buyer ("Selling Firm") a commission of (fill in one and strike the   30
   other) ___3___% of the sales price, or $ _____. RCW 18.86.050(1)(e)(ii) provides that buyer's brokers   31
   are not required to show property as to which there is no written agreement to pay compensation to the buyer's broker.   32

   If Seller shall, within six months after the expiration of the Listing Term, sell the Property to any person to whose attention it   33
   was brought through the signs, advertising or other action of Firm, or on information secured directly or indirectly from or   34
   through Firm, during the Listing Term, Seller will pay Firm the above commission. Provided, that if Seller pays a commission   35
   to a member of MLS or a cooperating MLS in conjunction with a sale, the amount of commission payable to Firm shall be   36
   reduced by the amount paid to such other member(s). Provided further, that if Seller cancels this Agreement without legal   37
   cause, Seller may be liable for damages incurred by Firm as a result of such cancellation, regardless of whether Seller pays   38
   a commission to another MLS member. Selling Firm is an intended third party beneficiary of this Agreement.   39

5. **SHORT SALE / NO DISTRESSED HOME CONVEYANCE.** If the proceeds from the sale of the Property are insufficient   40
   to cover the Seller's costs at closing, Seller acknowledges that the decision by any beneficiary or mortgagee, or its   41
   assignees, to release its interest in the Property, for less than the amount owed, does not automatically relieve Seller of   42
   the obligation to pay any debt or costs remaining at closing, including fees such as Firm's commission. Firm will not   43
   represent or assist Seller in a transaction that is a "Distressed Home Conveyance" as defined by Chapter 61.34 RCW   44
   unless otherwise agreed in writing. A "Distressed Home Conveyance" is a transaction where a buyer purchases   45
   property from a "Distressed Homeowner" (defined by Chapter 61.34 RCW), allows the Distressed Homeowner to   46
   continue to occupy the property, and promises to convey the property back to the Distressed Homeowner or promises   47
   the Distressed Homeowner an interest in, or portion of, the proceeds from a resale of the property.   48

6. **KEYBOX.** Firm is authorized to install a keybox on the Property. Such keybox may be opened by a master key held by   49
   members of MLS and their brokers. A master key also may be held by affiliated third parties such as inspectors and   50
   appraisers who cannot have access to the Property without Firm's prior approval which will not be given without Firm   51
   first making reasonable efforts to obtain Seller's approval.   52

| _VS_ | 06/30/2020 | _VS_ | 06/30/2020 |
|---|---|---|---|
| Seller's Initials | Date | Seller's Initials | Date |

Authentisign ID: 7CA797B9-E2A4-4859-8220-1B053FF8681B

Form 1A
Exclusive Sale
Rev. 10/19
Page 2 of 2

**EXCLUSIVE SALE AND LISTING AGREEMENT**
*Continued*

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**7. SELLER'S WARRANTIES AND REPRESENTATIONS.** Seller warrants that Seller has the right to sell the Property on 53
the terms herein and that the Property information on the Listing Input Sheets attached to and incorporated into this 54
Agreement is correct. Further, Seller represents that to the best of Seller's knowledge, there are no structures or 55
boundary indicators that either encroach on adjacent property or on the Property. Seller authorizes Firm to provide the 56
information in this Agreement and the attached pages to prospective buyers and to other cooperating members of MLS 57
who do not represent the Seller and, in some instances, may represent the buyer. If Seller provides Firm with any 58
photographs of the Property, Seller warrants that Seller has the necessary rights in the photographs to allow Firm to use 59
them as contemplated by this Agreement. Seller agrees to indemnify and hold Firm and other members of MLS 60
harmless in the event the foregoing warranties and representations are incorrect. 61

**8. CLOSING.** Seller shall furnish and pay for a buyer's policy of title insurance showing marketable title to the Property. 62
Seller shall pay real estate excise tax and one-half of any escrow fees or such portion of escrow fees and any other 63
fees or charges as provided by law in the case of a FHA or VA financed sale. Rent, taxes, interest, reserves, assumed 64
encumbrances, homeowner fees and insurance are to be prorated between Seller and the buyer as of the date of 65
closing. Seller shall prepare and execute a certification (NWMLS Form 22E or equivalent) under the Foreign Investment 66
in Real Property Tax Act ("FIRPTA") at closing. If Seller is a foreign person or entity, and the sale is not otherwise 67
exempt from FIRPTA, Seller acknowledges that a percentage of the amount realized from the sale will be withheld for 68
payment to the Internal Revenue Service. 69

**9. MULTIPLE LISTING SERVICE.** Seller authorizes Firm and MLS to publish the Listing Data and distribute it to other 70
members of MLS and their affiliates and third parties for public display and other purposes. This authorization shall 71
survive the termination of this Agreement. Firm is authorized to report the sale of the Property (including price and all 72
terms) to MLS and to its members, financial institutions, appraisers, and others related to the sale. Firm may refer this 73
listing to any other cooperating multiple listing service at Firm's discretion. Firm shall cooperate with all other members 74
of MLS, or of a multiple listing service to which this listing is referred, in working toward the sale of the Property. 75
Regardless of whether a cooperating MLS member is the agent of the buyer, Seller, neither or both, such member shall 76
be entitled to receive the selling firm's share of the commission. MLS is an intended third party beneficiary of this 77
agreement and will provide the Listing Data to its members and their affiliates and third parties, without verification and 78
without assuming any responsibility with respect to this agreement. 79

**10. PROPERTY CONDITION AND INSURANCE.** Neither Firm, MLS, nor any members of MLS or of any multiple listing 80
service to which this listing is referred shall be responsible for loss, theft, or damage of any nature or kind whatsoever to the 81
Property, any personal property therein, or any personal injury resulting from the condition of the Property, including entry by 82
the master key to the keybox and/or at open houses, except for damage or injury caused by its gross negligence or willful 83
misconduct. Seller is advised to notify Seller's insurance company that the Property is listed for sale and ascertain that the 84
Seller has adequate insurance coverage. If the Property is to be vacant during all or part of the Listing Term, Seller should 85
request that a "vacancy clause" be added to Seller's insurance policy. Seller acknowledges that intercepting or recording 86
conversations of persons in the Property without first obtaining their consent violates RCW 9.73.030. 87

**11. FIRM'S RIGHT TO MARKET THE PROPERTY.** Seller shall not commit any act which materially impairs 88
Firm's ability to market and sell the Property under the terms of this Agreement. In the event of breach of the foregoing, 89
Seller shall pay Firm a commission in the above amount, or at the above rate applied to the listing price herein, 90
whichever is applicable. Unless otherwise agreed in writing, Firm and other members of MLS shall be entitled to show 91
the Property at all reasonable times. Firm need not submit to Seller any offers to lease, rent, execute an option to 92
purchase, or enter into any agreement other than for immediate sale of the Property. 93

**12. SELLER DISCLOSURE STATEMENT.** Unless Seller is exempt under RCW 64.06, Seller shall provide to Firm 94
as soon as reasonably practicable a completed and signed "Seller Disclosure Statement" (Form 17 (Residential), Form 17C 95
(Unimproved Residential), or Form 17 Commercial). Seller agrees to indemnify, defend and hold Firm harmless from and 96
against any and all claims that the information Seller provides on Form 17, Form 17C, or Form 17 Commercial is inaccurate. 97

**13. DAMAGES IN THE EVENT OF BUYER'S BREACH.** In the event Seller retains earnest money as liquidated 98
damages on a buyer's breach, any costs advanced or committed by Firm on Seller's behalf shall be paid therefrom and 99
the balance divided equally between Seller and Firm. 100

**14. ATTORNEYS' FEES.** In the event either party employs an attorney to enforce any terms of this Agreement and 101
is successful, the other party agrees to pay reasonable attorneys' fees. In the event of trial, the successful party shall be 102
entitled to an award of attorneys' fees and expenses; the amount of the attorneys' fees and expenses shall be fixed by 103
the court. The venue of any suit shall be the county in which the Property is located. 104

Are the undersigned the sole owner(s)? ☑ YES ☐ NO 105

| *Valentin Stelmakh* | 06/30/2020 | | Windermere Real Estate / North, Inc | 106 |
| Seller's Signature PM PDT | Date | | Real Estate Firm | |
| *Victoria Stelmakh* | 06/30/2020 | | *Shawn Perry* 06/30/2020 | 107 |
| Seller's Signature PM PDT | Date | | Broker's Signature PM PDT | Date |

Authentisign ID: 7CA797B9-E2A4-4859-8220-1B053FF8681B

**EXCLUSIVE SALE AND LISTING AGREEMENT**

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**V.S. Investment Assoc., LLC** _____ ("Seller") hereby grants to,　1
<u>Seller</u>　　　　　　　　　　　　　　　　<u>Seller</u>

**Windermere Real Estate / North, Inc** _____ ("Firm") from date hereof until midnight of　2

**November 30, 2020** _____ ("Listing Term"), the exclusive right to sell the real property ("the Property")　3

commonly known as **2467 S College St** _____, City **Seattle** _____,　4

County **King** _____, WA, Zip **98144** _____; and legally described on Exhibit A.　5

1. **DEFINITIONS.** (a) "MLS" means the Northwest Multiple Listing Service; and (b) "sell" includes a contract to sell; an　6
exchange or contract to exchange; an option to purchase; and/or a lease with option to purchase.　7

2. **AGENCY/DUAL AGENCY.** Seller authorizes Firm to appoint _____**Shawn Perry**_____　8
as Seller's Listing Broker. This Agreement creates an agency relationship with Listing Broker and any of Firm's brokers　9
who supervise Listing Broker's performance as Seller's agent ("Supervising Broker"). No other brokers affiliated with　10
Firm are agents of Seller, except to the extent that Firm, in its discretion, appoints other brokers to act on Seller's behalf　11
as and when needed. If the Property is sold to a buyer represented by one of Firm's brokers other than Listing Broker　12
("Buyer's Broker"), Seller consents to any Supervising Broker, who also supervises Buyer's Broker, acting as a dual　13
agent. If the Property is sold to a buyer who Listing Broker also represents, Seller consents to Listing Broker and　14
Supervising Broker acting as dual agents. If any of Firm's brokers act as a dual agent, Firm shall be entitled to the entire　15
commission payable under this Agreement plus any additional compensation Firm may have negotiated with the buyer.　16
Seller acknowledges receipt of the pamphlet entitled "The Law of Real Estate Agency."　17

3. **LIST DATE.** Firm shall submit this listing, including the Property information on the attached pages and photographs of　18
the Property (collectively, "Listing Data"), to be published by MLS by 5:00 p.m. on ____**07/01/2020**____ ("List Date"),　19
which date shall not be more than 30 days from the effective date of the Agreement. Seller acknowledges that exposure　20
of the Property to the open market through MLS will increase the likelihood that Seller will receive fair market value for　21
the Property. Accordingly, prior to the List Date, Firm and Seller shall not promote or advertise the Property in any　22
manner whatsoever, including, but not limited to yard or other signs, flyers, websites, e-mails, texts, mailers, magazines,　23
newspapers, open houses, previews, showings, or tours.　24

4. **COMMISSION.** If during the Listing Term (a) Seller sells the Property and the buyer does not terminate the agreement　25
prior to closing; or (b) after reasonable exposure of the Property to the market, Firm procures a buyer who is ready,　26
willing, and able to purchase the Property on the terms in this Agreement and as set forth in the attached Listing Input　27
Sheets incorporated herein by this reference, Seller will pay Firm a commission of (fill in one and strike the other)　28
___**6**___% of the sales price, or $ _____ ("Total Commission"). From the Total Commission, Firm　29
will offer a cooperating member of MLS representing a buyer ("Selling Firm") a commission of (fill in one and strike the　30
other) ___**3**___% of the sales price, or $ _____. RCW 18.86.050(1)(e)(ii) provides that buyer's brokers　31
are not required to show property as to which there is no written agreement to pay compensation to the buyer's broker.　32

If Seller shall, within six months after the expiration of the Listing Term, sell the Property to any person to whose attention it　33
was brought through the signs, advertising or other action of Firm, or on information secured directly or indirectly from or　34
through Firm, during the Listing Term, Seller will pay Firm the above commission. Provided, that if Seller pays a commission　35
to a member of MLS or a cooperating MLS in conjunction with a sale, the amount of commission payable to Firm shall be　36
reduced by the amount paid to such other member(s). Provided further, that if Seller cancels this Agreement without legal　37
cause, Seller may be liable for damages incurred by Firm as a result of such cancellation, regardless of whether Seller pays　38
a commission to another MLS member. Selling Firm is an intended third party beneficiary of this Agreement.　39

5. **SHORT SALE / NO DISTRESSED HOME CONVEYANCE.** If the proceeds from the sale of the Property are insufficient　40
to cover the Seller's costs at closing, Seller acknowledges that the decision by any beneficiary or mortgagee, or its　41
assignees, to release its interest in the Property, for less than the amount owed, does not automatically relieve Seller of　42
the obligation to pay any debt or costs remaining at closing, including fees such as Firm's commission. Firm will not　43
represent or assist Seller in a transaction that is a "Distressed Home Conveyance" as defined by Chapter 61.34 RCW　44
unless otherwise agreed in writing. A "Distressed Home Conveyance" is a transaction where a buyer purchases　45
property from a "Distressed Homeowner" (defined by Chapter 61.34 RCW), allows the Distressed Homeowner to　46
continue to occupy the property, and promises to convey the property back to the Distressed Homeowner or promises　47
the Distressed Homeowner an interest in, or portion of, the proceeds from a resale of the property.　48

6. **KEYBOX.** Firm is authorized to install a keybox on the Property. Such keybox may be opened by a master key held by　49
members of MLS and their brokers. A master key also may be held by affiliated third parties such as inspectors and　50
appraisers who cannot have access to the Property without Firm's prior approval which will not be given without Firm　51
first making reasonable efforts to obtain Seller's approval.　52

| *VS* | 06/30/2020 | *VS* | 06/30/2020 |
|---|---|---|---|
| Seller's Initials | Date | Seller's Initials | Date |

Authentisign ID: 7CA797B9-E2A4-4859-8220-1B053FF8681B

**EXCLUSIVE SALE AND LISTING AGREEMENT**
*Continued*

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

7. **SELLER'S WARRANTIES AND REPRESENTATIONS.** Seller warrants that Seller has the right to sell the Property on 53
the terms herein and that the Property information on the Listing Input Sheets attached to and incorporated into this 54
Agreement is correct. Further, Seller represents that to the best of Seller's knowledge, there are no structures or 55
boundary indicators that either encroach on adjacent property or on the Property. Seller authorizes Firm to provide the 56
information in this Agreement and the attached pages to prospective buyers and to other cooperating members of MLS 57
who do not represent the Seller and, in some instances, may represent the buyer. If Seller provides Firm with any 58
photographs of the Property, Seller warrants that Seller has the necessary rights in the photographs to allow Firm to use 59
them as contemplated by this Agreement. Seller agrees to indemnify and hold Firm and other members of MLS 60
harmless in the event the foregoing warranties and representations are incorrect. 61

8. **CLOSING.** Seller shall furnish and pay for a buyer's policy of title insurance showing marketable title to the Property. 62
Seller shall pay real estate excise tax and one-half of any escrow fees or such portion of escrow fees and any other 63
fees or charges as provided by law in the case of a FHA or VA financed sale. Rent, taxes, interest, reserves, assumed 64
encumbrances, homeowner fees and insurance are to be prorated between Seller and the buyer as of the date of 65
closing. Seller shall prepare and execute a certification (NWMLS Form 22E or equivalent) under the Foreign Investment 66
in Real Property Tax Act ("FIRPTA") at closing. If Seller is a foreign person or entity, and the sale is not otherwise 67
exempt from FIRPTA, Seller acknowledges that a percentage of the amount realized from the sale will be withheld for 68
payment to the Internal Revenue Service. 69

9. **MULTIPLE LISTING SERVICE.** Seller authorizes Firm and MLS to publish the Listing Data and distribute it to other 70
members of MLS and their affiliates and third parties for public display and other purposes. This authorization shall 71
survive the termination of this Agreement. Firm is authorized to report the sale of the Property (including price and all 72
terms) to MLS and to its members, financial institutions, appraisers, and others related to the sale. Firm may refer this 73
listing to any other cooperating multiple listing service at Firm's discretion. Firm shall cooperate with all other members 74
of MLS, or of a multiple listing service to which this listing is referred, in working toward the sale of the Property. 75
Regardless of whether a cooperating MLS member is the agent of the buyer, Seller, neither or both, such member shall 76
be entitled to receive the selling firm's share of the commission. MLS is an intended third party beneficiary of this 77
agreement and will provide the Listing Data to its members and their affiliates and third parties, without verification and 78
without assuming any responsibility with respect to this agreement. 79

10. **PROPERTY CONDITION AND INSURANCE.** Neither Firm, MLS, nor any members of MLS or of any multiple listing 80
service to which this listing is referred shall be responsible for loss, theft, or damage of any nature or kind whatsoever to the 81
Property, any personal property therein, or any personal injury resulting from the condition of the Property, including entry by 82
the master key to the keybox and/or at open houses, except for damage or injury caused by its gross negligence or willful 83
misconduct. Seller is advised to notify Seller's insurance company that the Property is listed for sale and ascertain that the 84
Seller has adequate insurance coverage. If the Property is to be vacant during all or part of the Listing Term, Seller should 85
request that a "vacancy clause" be added to Seller's insurance policy. Seller acknowledges that intercepting or recording 86
conversations of persons in the Property without first obtaining their consent violates RCW 9.73.030. 87

11. **FIRM'S RIGHT TO MARKET THE PROPERTY.** Seller shall not commit any act which materially impairs 88
Firm's ability to market and sell the Property under the terms of this Agreement. In the event of breach of the foregoing, 89
Seller shall pay Firm a commission in the above amount, or at the above rate applied to the listing price herein, 90
whichever is applicable. Unless otherwise agreed in writing, Firm and other members of MLS shall be entitled to show 91
the Property at all reasonable times. Firm need not submit to Seller any offers to lease, rent, execute an option to 92
purchase, or enter into any agreement other than for immediate sale of the Property. 93

12. **SELLER DISCLOSURE STATEMENT.** Unless Seller is exempt under RCW 64.06, Seller shall provide to Firm 94
as soon as reasonably practicable a completed and signed "Seller Disclosure Statement" (Form 17 (Residential), Form 17C 95
(Unimproved Residential), or Form 17 Commercial). Seller agrees to indemnify, defend and hold Firm harmless from and 96
against any and all claims that the information Seller provides on Form 17, Form 17C, or Form 17 Commercial is inaccurate. 97

13. **DAMAGES IN THE EVENT OF BUYER'S BREACH.** In the event Seller retains earnest money as liquidated 98
damages on a buyer's breach, any costs advanced or committed by Firm on Seller's behalf shall be paid therefrom and 99
the balance divided equally between Seller and Firm. 100

14. **ATTORNEYS' FEES.** In the event either party employs an attorney to enforce any terms of this Agreement and 101
is successful, the other party agrees to pay reasonable attorneys' fees. In the event of trial, the successful party shall be 102
entitled to an award of attorneys' fees and expenses; the amount of the attorneys' fees and expenses shall be fixed by 103
the court. The venue of any suit shall be the county in which the Property is located. 104

Are the undersigned the sole owner(s)? ☑ YES ☐ NO                                              105

| | | |
|---|---|---|
| *Valentin Stelmakh* | 06/30/2020 | **Windermere Real Estate / North, Inc** 106 |
| Seller's Signature 06/30/2020 1:35 PM PDT | Date | Real Estate Firm |
| *Victoria Stelmakh* | 06/30/2020 | *Shawn Perry* 06/30/2020 107 |
| Seller's Signature 06/30/2020 1:33 PM PDT | Date | Broker's Signature 06/30/2020 1:33 PM PDT      Date |

AuthentiSign ID: 7CA797B9-E2A4-4859-8220-1B053FF8681B

**EXCLUSIVE SALE AND LISTING AGREEMENT**

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**V.S. Investment Assoc., LLC** _____ ("Seller") hereby grants to,   1
Seller                               Seller

**Windermere Real Estate / North, Inc** _____ ("Firm") from date hereof until midnight of   2

**November 30, 2020** _____ ("Listing Term"), the exclusive right to sell the real property ("the Property")   3

commonly known as **2469 S College St** _____, City **Seattle** _____,   4

County **King** _____, WA, Zip **98144** _____; and legally described on Exhibit A.   5

1. **DEFINITIONS.** (a) "MLS" means the Northwest Multiple Listing Service; and (b) "sell" includes a contract to sell; an   6
   exchange or contract to exchange; an option to purchase; and/or a lease with option to purchase.   7

2. **AGENCY/DUAL AGENCY.** Seller authorizes Firm to appoint _____ **Shawn Perry** _____   8
   as Seller's Listing Broker. This Agreement creates an agency relationship with Listing Broker and any of Firm's brokers   9
   who supervise Listing Broker's performance as Seller's agent ("Supervising Broker"). No other brokers affiliated with  10
   Firm are agents of Seller, except to the extent that Firm, in its discretion, appoints other brokers to act on Seller's behalf  11
   as and when needed. If the Property is sold to a buyer represented by one of Firm's brokers other than Listing Broker  12
   ("Buyer's Broker"), Seller consents to any Supervising Broker, who also supervises Buyer's Broker, acting as a dual  13
   agent. If the Property is sold to a buyer who Listing Broker also represents, Seller consents to Listing Broker and  14
   Supervising Broker acting as dual agents. If any of Firm's brokers act as a dual agent, Firm shall be entitled to the entire  15
   commission payable under this Agreement plus any additional compensation Firm may have negotiated with the buyer.  16
   Seller acknowledges receipt of the pamphlet entitled "The Law of Real Estate Agency."  17

3. **LIST DATE.** Firm shall submit this listing, including the Property information on the attached pages and photographs of  18
   the Property (collectively, "Listing Data"), to be published by MLS by 5:00 p.m. on _____ **07/01/2020** _____ ("List Date"),  19
   which date shall not be more than 30 days from the effective date of the Agreement. Seller acknowledges that exposure  20
   of the Property to the open market through MLS will increase the likelihood that Seller will receive fair market value for  21
   the Property. Accordingly, prior to the List Date, Firm and Seller shall not promote or advertise the Property in any  22
   manner whatsoever, including, but not limited to yard or other signs, flyers, websites, e-mails, texts, mailers, magazines,  23
   newspapers, open houses, previews, showings, or tours.  24

4. **COMMISSION.** If during the Listing Term (a) Seller sells the Property and the buyer does not terminate the agreement  25
   prior to closing; or (b) after reasonable exposure of the Property to the market, Firm procures a buyer who is ready,  26
   willing, and able to purchase the Property on the terms in this Agreement and as set forth in the attached Listing Input  27
   Sheets incorporated herein by this reference, Seller will pay Firm a commission of (fill in one and strike the other)  28
   ___6___ % of the sales price, or $ _____ ("Total Commission"). From the Total Commission, Firm  29
   will offer a cooperating member of MLS representing a buyer ("Selling Firm") a commission of (fill in one and strike the  30
   other) ___3___ % of the sales price, or $ _____. RCW 18.86.050(1)(e)(ii) provides that buyer's brokers  31
   are not required to show property as to which there is no written agreement to pay compensation to the buyer's broker.  32

   If Seller shall, within six months after the expiration of the Listing Term, sell the Property to any person to whose attention it  33
   was brought through the signs, advertising or other action of Firm, or on information secured directly or indirectly from or  34
   through Firm, during the Listing Term, Seller will pay Firm the above commission. Provided, that if Seller pays a commission  35
   to a member of MLS or a cooperating MLS in conjunction with a sale, the amount of commission payable to Firm shall be  36
   reduced by the amount paid to such other member(s). Provided further, that if Seller cancels this Agreement without legal  37
   cause, Seller may be liable for damages incurred by Firm as a result of such cancellation, regardless of whether Seller pays  38
   a commission to another MLS member. Selling Firm is an intended third party beneficiary of this Agreement.  39

5. **SHORT SALE / NO DISTRESSED HOME CONVEYANCE.** If the proceeds from the sale of the Property are insufficient  40
   to cover the Seller's costs at closing, Seller acknowledges that the decision by any beneficiary or mortgagee, or its  41
   assignees, to release its interest in the Property, for less than the amount owed, does not automatically relieve Seller of  42
   the obligation to pay any debt or costs remaining at closing, including fees such as Firm's commission. Firm will not  43
   represent or assist Seller in a transaction that is a "Distressed Home Conveyance" as defined by Chapter 61.34 RCW  44
   unless otherwise agreed in writing. A "Distressed Home Conveyance" is a transaction where a buyer purchases  45
   property from a "Distressed Homeowner" (defined by Chapter 61.34 RCW), allows the Distressed Homeowner to  46
   continue to occupy the property, and promises to convey the property back to the Distressed Homeowner or promises  47
   the Distressed Homeowner an interest in, or portion of, the proceeds from a resale of the property.  48

6. **KEYBOX.** Firm is authorized to install a keybox on the Property. Such keybox may be opened by a master key held by  49
   members of MLS and their brokers. A master key also may be held by affiliated third parties such as inspectors and  50
   appraisers who cannot have access to the Property without Firm's prior approval which will not be given without Firm  51
   first making reasonable efforts to obtain Seller's approval.  52

| **VS** | 06/30/2020 | **VS** | 06/30/2020 |
|---|---|---|---|
| Seller's Initials | Date | Seller's Initials | Date |

Authentisign ID: 7CA797B9-E2A4-4859-8220-1B053FF8681B

**EXCLUSIVE SALE AND LISTING AGREEMENT**
*Continued*

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

7. **SELLER'S WARRANTIES AND REPRESENTATIONS.** Seller warrants that Seller has the right to sell the Property on the terms herein and that the Property information on the Listing Input Sheets attached to and incorporated into this Agreement is correct. Further, Seller represents that to the best of Seller's knowledge, there are no structures or boundary indicators that either encroach on adjacent property or on the Property. Seller authorizes Firm to provide the information in this Agreement and the attached pages to prospective buyers and to other cooperating members of MLS who do not represent the Seller and, in some instances, may represent the buyer. If Seller provides Firm with any photographs of the Property, Seller warrants that Seller has the necessary rights in the photographs to allow Firm to use them as contemplated by this Agreement. Seller agrees to indemnify and hold Firm and other members of MLS harmless in the event the foregoing warranties and representations are incorrect. 53-61

8. **CLOSING.** Seller shall furnish and pay for a buyer's policy of title insurance showing marketable title to the Property. Seller shall pay real estate excise tax and one-half of any escrow fees or such portion of escrow fees and any other fees or charges as provided by law in the case of a FHA or VA financed sale. Rent, taxes, interest, reserves, assumed encumbrances, homeowner fees and insurance are to be prorated between Seller and the buyer as of the date of closing. Seller shall prepare and execute a certification (NWMLS Form 22E or equivalent) under the Foreign Investment in Real Property Tax Act ("FIRPTA") at closing. If Seller is a foreign person or entity, and the sale is not otherwise exempt from FIRPTA, Seller acknowledges that a percentage of the amount realized from the sale will be withheld for payment to the Internal Revenue Service. 62-69

9. **MULTIPLE LISTING SERVICE.** Seller authorizes Firm and MLS to publish the Listing Data and distribute it to other members of MLS and their affiliates and third parties for public display and other purposes. This authorization shall survive the termination of this Agreement. Firm is authorized to report the sale of the Property (including price and all terms) to MLS and to its members, financial institutions, appraisers, and others related to the sale. Firm may refer this listing to any other cooperating multiple listing service at Firm's discretion. Firm shall cooperate with all other members of MLS, or of a multiple listing service to which this listing is referred, in working toward the sale of the Property. Regardless of whether a cooperating MLS member is the agent of the buyer, Seller, neither or both, such member shall be entitled to receive the selling firm's share of the commission. MLS is an intended third party beneficiary of this agreement and will provide the Listing Data to its members and their affiliates and third parties, without verification and without assuming any responsibility with respect to this agreement. 70-79

10. **PROPERTY CONDITION AND INSURANCE.** Neither Firm, MLS, nor any members of MLS or of any multiple listing service to which this listing is referred shall be responsible for loss, theft, or damage of any nature or kind whatsoever to the Property, any personal property therein, or any personal injury resulting from the condition of the Property, including entry by the master key to the keybox and/or at open houses, except for damage or injury caused by its gross negligence or willful misconduct. Seller is advised to notify Seller's insurance company that the Property is listed for sale and ascertain that the Seller has adequate insurance coverage. If the Property is to be vacant during all or part of the Listing Term, Seller should request that a "vacancy clause" be added to Seller's insurance policy. Seller acknowledges that intercepting or recording conversations of persons in the Property without first obtaining their consent violates RCW 9.73.030. 80-87

11. **FIRM'S RIGHT TO MARKET THE PROPERTY.** Seller shall not commit any act which materially impairs Firm's ability to market and sell the Property under the terms of this Agreement. In the event of breach of the foregoing, Seller shall pay Firm a commission in the above amount, or at the above rate applied to the listing price herein, whichever is applicable. Unless otherwise agreed in writing, Firm and other members of MLS shall be entitled to show the Property at all reasonable times. Firm need not submit to Seller any offers to lease, rent, execute an option to purchase, or enter into any agreement other than for immediate sale of the Property. 88-93

12. **SELLER DISCLOSURE STATEMENT.** Unless Seller is exempt under RCW 64.06, Seller shall provide to Firm as soon as reasonably practicable a completed and signed "Seller Disclosure Statement" (Form 17 (Residential), Form 17C (Unimproved Residential), or Form 17 Commercial). Seller agrees to indemnify, defend and hold Firm harmless from and against any and all claims that the information Seller provides on Form 17, Form 17C, or Form 17 Commercial is inaccurate. 94-97

13. **DAMAGES IN THE EVENT OF BUYER'S BREACH.** In the event Seller retains earnest money as liquidated damages on a buyer's breach, any costs advanced or committed by Firm on Seller's behalf shall be paid therefrom and the balance divided equally between Seller and Firm. 98-100

14. **ATTORNEYS' FEES.** In the event either party employs an attorney to enforce any terms of this Agreement and is successful, the other party agrees to pay reasonable attorneys' fees. In the event of trial, the successful party shall be entitled to an award of attorneys' fees and expenses; the amount of the attorneys' fees and expenses shall be fixed by the court. The venue of any suit shall be the county in which the Property is located. 101-104

Are the undersigned the sole owner(s)? ☑ YES ☐ NO — 105

| | | |
|---|---|---|
| *Valentin Stelmakh* 06/30/2020 | | Windermere Real Estate / North, Inc — 106 |
| Seller's Signature Date | | Real Estate Firm |
| *Victoria Stelmakh* 06/30/2020 | | *Shawn Perry* 06/30/2020 — 107 |
| Seller's Signature Date | | Broker's Signature Date |