Bountiful Law, PLLC
4620 200th Street SW, Ste D
Lynnwood, WA 98036
Telephone: (425) 775-9700
Facsimile: (425) 645-8088

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>V.S. INVESTMENT ASSOC., LLC,<br><br><br><br><br><br><br><br>Debtor(s). | Chapter 11<br><br>NO. **20-11541**<br><br><br>DECLARATION OF VALENTIN STELMAKH IN SUPPORT OF MOTION FOR ORDER APPROVING SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS |

I, Valentin Stelmakh, declare:

  1.  I am a member of V.S. Investment Assoc., LLC, a Washington limited liability company. I am over the age of 18 years and am competent to testify herein. I am authorized to make this declaration, and do so from my own personal knowledge in support for the Motion for Order Approving Sale of Real Property Free and Clear of Liens filed by V.S. Investment Assoc., LLC ("V.S. Investment") in the above-captioned chapter 11 proceedings.

  2.  V.S. Investment owns real property commonly known as 2469 S College Street, Seattle, WA 98144. This property is one of a four-unit real estate development project completed by the Debtor on or around January 2020.

Declaration

3.    All four units of the project are encumbered by the following liens in order of priority:

| Creditor | Recording Date | Approx Amount Due |
|---|---|---|
| BRMK Lending, LLC | 4/21/2016 | $4,236,395.95 |
| Paul Greben | 1/16/2020 | $ 598,500.00 |
| | 1/21/2020 amended | |
| Ecocline Exc. & Utilities LLC | 1/30/2020 | $ 137,205.00 |

The amount listed for BRMK Lending, LLC is based on the creditor's proof of claim filed in this case. V.S. Investment disagrees with this amount and intends to object to the proof of claim.

4.    On December 2, 2019, I received an offer from Thomas M. Kranzle to purchase the subject property for $885,000.00. (*See* ECF No 27-4, Declaration of Stuart Heath, Exhibit D). At that time, I believed the offer was lower than market value. However, I accepted this offer on behalf of V.S. Investment after being pressured by representatives of BRMK Lending, LLC who ensured me it would accept a lesser amount in full satisfaction of its lien.

5.    Shortly after accepting Mr. Kranzle's offer, representatives of BRMK Lending, LLC told me they needed to put V.S. Investments Assoc. LLC into a receivership so it could cancel the real estate contract. A receiver was eventually appointed in King County Superior Court Case No. 20-20-01947-2 SEA.

6.    On May 15, 2020, on behalf of V.S. Investment, the receiver entered into a real estate purchase and sale agreement for the subject property with Ahmet and Stephanie Gurbuz for $885,000. A true and correct copy of said agreement is attached to this declaration as Exhibit B and incorporated herein by reference.

Declaration

Bountiful Law, PLLC
4620 200th St. SW, Ste D
Lynnwood, WA 98036
(425)775-9700; Fax (425)633-2465

7.      V.S. Investment filed this case May 29, 2020 primarily to stop the receiver from selling assets of the company for less than market value.

8.      On June 30, 2020, V.S. Investment engaged the services of Shawn Perry as real estate agent for the bankruptcy estate. This court approved the application to appoint Shawn on July 2, 2020. Shawn listed the property for sale the same day for the amount of $1,025,00.00.

9.      On July 3, 2020, I received a full price offer of $1,025,00.00 from Thomas M. Kranzle, and/or assigns. A true and correct copy of said agreement is attached to this declaration as Exhibit A and incorporated herein by reference. This is $140,000 more than any previous offer received. I believe Mr. Kranzle's offer to be the best offer for the property.

10.      V.S. Investment is seeking authority to sell said property free and clear of liens, and to pay first position Deed of Trust of BRMK Lending, LLC, remaining proceeds after all costs of closing, including real estate commissions, taxes, and other closing costs.

I certify under penalty of perjury according to the laws of the United States of America the foregoing is true and correct to the best of my knowledge.

Dated this 7th day of July, 2020

By: /s/ Valentin Stelmakh
Valentin Stelmakh, Member
V.S. Investment Assoc., LLC

Declaration

Bountiful Law, PLLC
4620 200th St. SW, Ste D
Lynnwood, WA 98036
(425)775-9700; Fax (425)633-2465

# EXHIBIT A

Authentisign ID: AD1AC2C7-CEA5-4515-8921-2579BAA7EAF7

Form 21
Residential Purchase & Sale Agreement
Rev. 7/19
Page 1 of 5

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## RESIDENTIAL REAL ESTATE PURCHASE AND SALE AGREEMENT
## SPECIFIC TERMS

1. **Date:** July 03, 2020    **MLS No.:** 1619478    **Offer Expiration Date:** 7/4/2020

2. **Buyer:** Thomas M Kranzle     and or assigns     Married as separate property
   Buyer      Buyer      Status

3. **Seller:** VS Investment Associates, LLC
   Seller      Seller

4. **Property:** Legal Description attached as Exhibit A. Tax Parcel No(s).: 159460-0093 , , .

   2469   S College Street UNIT D    Seattle    King    WA   98144
   Address      City      County      State   Zip

5. **Included Items:** ☑ stove/range; ☑ refrigerator; ☐ washer; ☐ dryer; ☑ dishwasher; ☐ hot tub; ☐ fireplace insert; ☐ wood stove; ☐ satellite dish; ☐ security system; ☐ attached television(s); ☐ attached speaker(s); ☑ microwave; ☐ generator; ☑ other Garbage Disposal

6. **Purchase Price:** $ 1,025,000.00    One Million Twenty-Five Thousand       Dollars

7. **Earnest Money:** $ 10,000.00   ☐ Check; ☐ Note; ☑ Other Check or Wire   (held by ☐ Selling Firm; ☑ Closing Agent)

8. **Default:** (check only one) ☑ Forfeiture of Earnest Money; ☐ Seller's Election of Remedies

9. **Title Insurance Company:** First American Title and Escrow

10. **Closing Agent:** First American Title and Escrow    Michael Santucci
    Company      Individual (optional)

11. **Closing Date:** 8/31/2020   ; **Possession Date:** ☑ on Closing; ☐ Other

12. **Services of Closing Agent for Payment of Utilities:** ☑ Requested (attach NWMLS Form 22K); ☐ Waived

13. **Charges/Assessments Levied Before but Due After Closing:** ☑ assumed by Buyer; ☐ prepaid in full by Seller at Closing

14. **Seller Citizenship (FIRPTA):** Seller ☐ is; ☑ is not a foreign person for purposes of U.S. income taxation

15. **Agency Disclosure:** Selling Broker represents: ☑ Buyer; ☐ Seller; ☐ both parties; ☐ neither party
    Listing Broker represents: ☑ Seller; ☐ both parties

16. **Addenda:** 22A(Financing)    22D(Optional Clauses)    22K(Utilities)    35(Inspection)

---

| | | |
|---|---|---|
| Authentisign | 07/03/2020 | |
| Buyer's Signature 07/03/2020 4:04 PM PDT | Date | |
| Buyer's Signature | Date | |
| 329   25th Ave E | | |
| Buyer's Address | | |
| Seattle    WA    98112 | | |
| City, State, Zip | | |

| | | |
|---|---|---|
| Seller's Signature | 07/03/2020 | Date |
| Valentin Stelmakh 07/03/2020 4:04 PM PDT | | |
| Seller's Signature | 07/03/2020 | Date |
| Victoria Stelmakh | | |
| Seller's Address 6:01 PM PDT | | |
| City, State, Zip | | |

| | |
|---|---|
| Phone No.    Fax No. | Phone No.    Fax No. |
| tom@venturevisuals.com | |
| Buyer's E-mail Address | Seller's E-mail Address |
| Compass Washington    5773 | Windermere RE North Inc.    7370 |
| Selling Firm    MLS Office No. | Listing Firm    MLS Office No. |
| Kyle Moss    100211 | Shawn Perry    41437 |
| Selling Broker (Print)    MLS LAG No. | Listing Broker (Print)    MLS LAG No. |
| (206) 330-0314    (206) 619-6136 | (425) 776-1119    (425) 772-6172 |
| Firm Phone No.    Broker Phone No.    Firm Fax No. | Firm Phone No.    Broker Phone No.    Firm Fax No. |
| contractsseattle@compass.com | lynnwood@windermere.com |
| Selling Firm Document E-mail Address | Listing Firm Document E-mail Address |
| kyle.moss@compass.com | shawnperry@windermere.com |
| Selling Broker's E-mail Address | Listing Broker's E-mail Address |
| 116307    20746 | 76461    3415 |
| Selling Broker DOL License No.    Selling Firm DOL License No. | Listing Broker DOL License No.    Listing Firm DOL License No. |

AuthentiSign ID: AD1AC2C7-CEA5-4515-8921-2579BAA7EAF7

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## RESIDENTIAL REAL ESTATE PURCHASE AND SALE AGREEMENT
### GENERAL TERMS
*Continued*

**a.** **Purchase Price.** Buyer shall pay to Seller the Purchase Price, including the Earnest Money, in cash at Closing, unless 1
otherwise specified in this Agreement. Buyer represents that Buyer has sufficient funds to close this sale in accordance 2
with this Agreement and is not relying on any contingent source of funds, including funds from loans, the sale of other 3
property, gifts, retirement, or future earnings, except to the extent otherwise specified in this Agreement. The parties 4
shall use caution when wiring funds to avoid potential wire fraud. Before wiring funds, the party wiring funds shall take 5
steps to confirm any wire instructions via an independently verified phone number and other appropriate measures. 6

**b.** **Earnest Money.** Buyer shall deliver the Earnest Money within 2 days after mutual acceptance to Selling Broker or to 7
Closing Agent. If Buyer delivers the Earnest Money to Selling Broker, Selling Broker will deposit any check to be held by 8
Selling Firm, or deliver any Earnest Money to be held by Closing Agent, within 3 days of receipt or mutual acceptance, 9
whichever occurs later. If the Earnest Money is held by Selling Firm and is over $10,000.00 it shall be deposited into an 10
interest bearing trust account in Selling Firm's name provided that Buyer completes an IRS Form W-9. Interest, if any, 11
after deduction of bank charges and fees, will be paid to Buyer. Buyer shall reimburse Selling Firm for bank charges 12
and fees in excess of the interest earned, if any. If the Earnest Money held by Selling Firm is over $10,000.00 Buyer 13
has the option to require Selling Firm to deposit the Earnest Money into the Housing Trust Fund Account, with the 14
interest paid to the State Treasurer, if both Seller and Buyer so agree in writing. If the Buyer does not complete an IRS 15
Form W-9 before Selling Firm must deposit the Earnest Money or the Earnest Money is $10,000.00 or less, the Earnest 16
Money shall be deposited into the Housing Trust Fund Account. Selling Firm may transfer the Earnest Money to Closing 17
Agent at Closing. If all or part of the Earnest Money is to be refunded to Buyer and any such costs remain unpaid, the 18
Selling Firm or Closing Agent may deduct and pay them therefrom. The parties instruct Closing Agent to provide written 19
verification of receipt of the Earnest Money and notice of dishonor of any check to the parties and Brokers at the 20
addresses and/or fax numbers provided herein. 21

Upon termination of this Agreement, a party or the Closing Agent may deliver a form authorizing the release of Earnest 22
Money to the other party or the parties. The party(s) shall execute such form and deliver the same to the Closing Agent. 23
If either party fails to execute the release form, a party may make a written demand to the Closing Agent for the Earnest 24
Money. Pursuant to RCW 64.04, Closing Agent shall deliver notice of the demand to the other party within 15 days. If 25
the other party does not object to the demand within 20 days of Closing Agent's notice, Closing Agent shall disburse the 26
Earnest Money to the party making the demand within 10 days of the expiration of the 20 day period. If Closing Agent 27
timely receives an objection or an inconsistent demand from the other party, Closing Agent shall commence an 28
interpleader action within 60 days of such objection or inconsistent demand, unless the parties provide subsequent 29
consistent instructions to Closing Agent to disburse the earnest money or refrain from commencing an interpleader 30
action for a specified period of time. Pursuant to RCW 4.28.080, the parties consent to service of the summons and 31
complaint for an interpleader action by first class mail, postage prepaid at the party's usual mailing address or the 32
address identified in this Agreement. If the Closing Agent complies with the preceding process, each party shall be 33
deemed to have released Closing Agent from any and all claims or liability related to the disbursal of the Earnest 34
Money. If either party fails to authorize the release of the Earnest Money to the other party when required to do so 35
under this Agreement, that party shall be in breach of this Agreement. For the purposes of this section, the term Closing 36
Agent includes a Selling Firm holding the Earnest Money. The parties authorize the party commencing an interpleader 37
action to deduct up to $500.00 for the costs thereof. 38

**c.** **Included Items.** Any of the following items, including items identified in Specific Term No. 5 if the corresponding box is 39
checked, located in or on the Property are included in the sale: built-in appliances; wall-to-wall carpeting; curtains, 40
drapes and all other window treatments; window and door screens; awnings; storm doors and windows; installed 41
television antennas; ventilating, air conditioning and heating fixtures; trash compactor; fireplace doors, gas logs and gas 42
log lighters; irrigation fixtures; electric garage door openers; water heaters; installed electrical fixtures; lighting fixtures; 43
shrubs, plants and trees planted in the ground; and other fixtures; and all associated operating remote controls. Unless 44
otherwise agreed, if any of the above items are leased or encumbered, Seller shall acquire clear title before Closing. 45

**d.** **Condition of Title.** Unless otherwise specified in this Agreement, title to the Property shall be marketable at Closing. 46
The following shall not cause the title to be unmarketable: rights, reservations, covenants, conditions and restrictions, 47
presently of record and general to the area; easements and encroachments, not materially affecting the value of or 48
unduly interfering with Buyer's reasonable use of the Property; and reserved oil and/or mining rights. Seller shall not 49
convey or reserve any oil and/or mineral rights after mutual acceptance without Buyer's written consent. Monetary 50
encumbrances or liens not assumed by Buyer, shall be paid or discharged by Seller on or before Closing. Title shall be 51
conveyed by a Statutory Warranty Deed. If this Agreement is for conveyance of a buyer's interest in a Real Estate 52
Contract, the Statutory Warranty Deed shall include a buyer's assignment of the contract sufficient to convey after 53
acquired title. 54

**e.** **Title Insurance.** Seller authorizes Buyer's lender or Closing Agent, at Seller's expense, to apply for the then-current 55
ALTA form of Homeowner's Policy of Title Insurance for One-to-Four Family Residence, from the Title Insurance 56
Company. If Seller previously received a preliminary commitment from a Title Insurance Company that Buyer declines 57
to use, Buyer shall pay any cancellation fees owing to the original Title Insurance Company. Otherwise, the party 58
applying for title insurance shall pay any title cancellation fee, in the event such a fee is assessed. If the Title Insurance 59

| Buyer's Initials | Date | Buyer's Initials | Date | Seller's Initials | Date | Seller's Initials | Date |
|---|---|---|---|---|---|---|---|
| | 07/03/2020 | | | *VS* | 07/03/2020 | *VS* | 07/03/2020 |

Authentisign ID: AD1AC2C7-CEA5-4515-8921-2579BAA7EAF7

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## RESIDENTIAL REAL ESTATE PURCHASE AND SALE AGREEMENT
### GENERAL TERMS
*Continued*

Company selected by the parties will not issue a Homeowner's Policy for the Property, the parties agree that the Title 60
Insurance Company shall instead issue the then-current ALTA standard form Owner's Policy, together with 61
homeowner's additional protection and inflation protection endorsements, if available. The Title Insurance Company 62
shall send a copy of the preliminary commitment to Seller, Listing Broker, Buyer and Selling Broker. The preliminary 63
commitment, and the title policy to be issued, shall contain no exceptions other than the General Exclusions and 64
Exceptions in the Policy and Special Exceptions consistent with the Condition of Title herein provided. If title cannot be 65
made so insurable prior to the Closing Date, then as Buyer's sole and exclusive remedy, the Earnest Money shall, 66
unless Buyer elects to waive such defects or encumbrances, be refunded to the Buyer, less any unpaid costs described 67
in this Agreement, and this Agreement shall thereupon be terminated. Buyer shall have no right to specific performance 68
or damages as a consequence of Seller's inability to provide insurable title. 69

**f.** **Closing and Possession.** This sale shall be closed by the Closing Agent on the Closing Date. If the Closing Date falls 70
on a Saturday, Sunday, legal holiday as defined in RCW 1.16.050, or day when the county recording office is closed, 71
the Closing Agent shall close the transaction on the next day that is not a Saturday, Sunday, legal holiday, or day when 72
the county recording office is closed. "Closing" means the date on which all documents are recorded and the sale 73
proceeds are available to Seller. Seller shall deliver keys and garage door remotes to Buyer on the Closing Date or on 74
the Possession Date, whichever occurs first. Buyer shall be entitled to possession at 9:00 p.m. on the Possession Date. 75
Seller shall maintain the Property in its present condition, normal wear and tear excepted, until the Buyer is provided 76
possession. Seller shall either repair or replace any system or appliance (including, but not limited to plumbing, heat, 77
electrical, and all Included Items) that becomes inoperative or malfunctions prior to Closing with a system or appliance 78
of at least equal quality. Buyer reserves the right to walk through the Property within 5 days of Closing to verify that 79
Seller has maintained the Property and systems/appliances as required by this paragraph. Seller shall not enter into or 80
modify existing leases or rental agreements, service contracts, or other agreements affecting the Property which have 81
terms extending beyond Closing without first obtaining Buyer's consent, which shall not be unreasonably withheld. If 82
possession transfers at a time other than Closing, the parties shall execute NWMLS Form 65A (Rental 83
Agreement/Occupancy Prior to Closing) or NWMLS Form 65B (Rental Agreement/Seller Occupancy After Closing) (or 84
alternative rental agreements) and are advised of the need to contact their respective insurance companies to assure 85
appropriate hazard and liability insurance policies are in place, as applicable. 86

RCW 19.27.530 requires the seller of any owner-occupied single-family residence to equip the residence with a carbon 87
monoxide alarm(s) in accordance with the state building code before a buyer or any other person may legally occupy 88
the residence following the sale. RCW 43.44.110 requires the seller of a dwelling unit, that does not have at least one 89
smoke detection device, to provide at least one smoke detection device in the unit before the buyer or any other person 90
occupies the unit following a sale. The parties acknowledge that the Brokers are not responsible for ensuring that Seller 91
complies with RCW 19.27.530 or RCW 43.44.110. Buyer and Seller shall hold the Brokers and their Firms harmless 92
from any claim resulting from Seller's failure to install a carbon monoxide alarm(s) or smoke detector(s) in the Property. 93

**g.** **Section 1031 Like-Kind Exchange.** If either Buyer or Seller intends for this transaction to be a part of a Section 1031 94
like-kind exchange, then the other party shall cooperate in the completion of the like-kind exchange so long as the 95
cooperating party incurs no additional liability in doing so, and so long as any expenses (including attorneys' fees and 96
costs) incurred by the cooperating party that are related only to the exchange are paid or reimbursed to the cooperating 97
party at or prior to Closing. Notwithstanding the Assignment paragraph of this Agreement, any party completing a 98
Section 1031 like-kind exchange may assign this Agreement to its qualified intermediary or any entity set up for the 99
purposes of completing a reverse exchange. 100

**h.** **Closing Costs and Prorations and Charges and Assessments.** Seller and Buyer shall each pay one-half of the 101
escrow fee unless otherwise required by applicable FHA or VA regulations. Taxes for the current year, rent, interest, 102
and lienable homeowner's association dues shall be prorated as of Closing. Buyer shall pay Buyer's loan costs, 103
including credit report, appraisal charge and lender's title insurance, unless provided otherwise in this Agreement. If any 104
payments are delinquent on encumbrances which will remain after Closing, Closing Agent is instructed to pay such 105
delinquencies at Closing from money due, or to be paid by, Seller. Buyer shall pay for remaining fuel in the fuel tank if, 106
prior to Closing, Seller obtains a written statement from the supplier as to the quantity and current price and provides 107
such statement to the Closing Agent. Seller shall pay all utility charges, including unbilled charges. Unless waived in 108
Specific Term No. 12, Seller and Buyer request the services of Closing Agent in disbursing funds necessary to satisfy 109
unpaid utility charges in accordance with RCW 60.80 and Seller shall provide the names and addresses of all utilities 110
providing service to the Property and having lien rights (attach NWMLS Form 22K Identification of Utilities or 111
equivalent). 112

Buyer is advised to verify the existence and amount of any local improvement district, capacity or impact charges or 113
other assessments that may be charged against the Property before or after Closing. Seller will pay such charges that 114
are or become due on or before Closing. Charges levied before Closing, but becoming due after Closing shall be paid 115
as agreed in Specific Term No. 13. 116

| | 07/03/2020 | | 07/03/2020 | | 07/03/2020 |
|---|---|---|---|---|---|
| Buyer's Initials | Date | Seller's Initials | Date | Seller's Initials | Date |

Authentisign ID: AD1AC2C7-CEA5-4515-8921-2579BAA7EAF7

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## RESIDENTIAL REAL ESTATE PURCHASE AND SALE AGREEMENT
### GENERAL TERMS
*Continued*

**i.** **Sale Information.** Listing Broker and Selling Broker are authorized to report this Agreement (including price and all terms) to the Multiple Listing Service that published it and to its members, financing institutions, appraisers, and anyone else related to this sale. Buyer and Seller expressly authorize all Closing Agents, appraisers, title insurance companies, and others related to this Sale, to furnish the Listing Broker and/or Selling Broker, on request, any and all information and copies of documents concerning this sale.

**j.** **Seller Citizenship and FIRPTA.** Seller warrants that the identification of Seller's citizenship status for purposes of U.S. income taxation in Specific Term No. 14 is correct. Seller shall execute a certification (NWMLS Form 22E or equivalent) under the Foreign Investment in Real Property Tax Act ("FIRPTA") at Closing and provide the certification to the Closing Agent. If Seller is a foreign person for purposes of U.S. income taxation, and this transaction is not otherwise exempt from FIRPTA, Closing Agent is instructed to withhold and pay the required amount to the Internal Revenue Service.

**k.** **Notices and Delivery of Documents.** Any notice related to this Agreement (including revocations of offers or counteroffers) must be in writing. Notices to Seller must be signed by at least one Buyer and shall be deemed delivered only when the notice is received by Seller, by Listing Broker, or at the licensed office of Listing Broker. Notices to Buyer must be signed by at least one Seller and shall be deemed delivered only when the notice is received by Buyer, by Selling Broker, or at the licensed office of Selling Broker. Documents related to this Agreement, such as NWMLS Form 17, Information on Lead-Based Paint and Lead-Based Paint Hazards, Public Offering Statement or Resale Certificate, and all other documents shall be delivered pursuant to this paragraph. Buyer and Seller must keep Selling Broker and Listing Broker advised of their whereabouts in order to receive prompt notification of receipt of a notice.

Facsimile transmission of any notice or document shall constitute delivery. E-mail transmission of any notice or document (or a direct link to such notice or document) shall constitute delivery when: (i) the e-mail is sent to both Selling Broker and Selling Firm or both Listing Broker and Listing Firm at the e-mail addresses specified on page one of this Agreement; or (ii) Selling Broker or Listing Broker provide written acknowledgment of receipt of the e-mail (an automatic e-mail reply does not constitute written acknowledgment). At the request of either party, or the Closing Agent, the parties will confirm facsimile or e-mail transmitted signatures by signing an original document.

**l.** **Computation of Time.** Unless otherwise specified in this Agreement, any period of time measured in days and stated in this Agreement shall start on the day following the event commencing the period and shall expire at 9:00 p.m. of the last calendar day of the specified period of time. Except for the Possession Date, if the last day is a Saturday, Sunday or legal holiday as defined in RCW 1.16.050, the specified period of time shall expire on the next day that is not a Saturday, Sunday or legal holiday. Any specified period of 5 days or less, except for any time period relating to the Possession Date, shall not include Saturdays, Sundays or legal holidays. If the parties agree that an event will occur on a specific calendar date, the event shall occur on that date, except for the Closing Date, which, if it falls on a Saturday, Sunday, legal holiday as defined in RCW 1.16.050, or day when the county recording office is closed, shall occur on the next day that is not a Saturday, Sunday, legal holiday, or day when the county recording office is closed. If the parties agree upon and attach a legal description after this Agreement is signed by the offeree and delivered to the offeror, then for the purposes of computing time, mutual acceptance shall be deemed to be on the date of delivery of an accepted offer or counteroffer to the offeror, rather than on the date the legal description is attached. Time is of the essence of this Agreement.

**m.** **Integration and Electronic Signatures.** This Agreement constitutes the entire understanding between the parties and supersedes all prior or contemporaneous understandings and representations. No modification of this Agreement shall be effective unless agreed in writing and signed by Buyer and Seller. The parties acknowledge that a signature in electronic form has the same legal effect and validity as a handwritten signature.

**n.** **Assignment.** Buyer may not assign this Agreement, or Buyer's rights hereunder, without Seller's prior written consent, unless the parties indicate that assignment is permitted by the addition of "and/or assigns" on the line identifying the Buyer on the first page of this Agreement.

**o.** **Default.** In the event Buyer fails, without legal excuse, to complete the purchase of the Property, then the following provision, as identified in Specific Term No. 8, shall apply:

    **i.** **Forfeiture of Earnest Money.** That portion of the Earnest Money that does not exceed five percent (5%) of the Purchase Price shall be forfeited to the Seller as the sole and exclusive remedy available to Seller for such failure.

    **ii.** **Seller's Election of Remedies.** Seller may, at Seller's option, (a) keep the Earnest Money as liquidated damages as the sole and exclusive remedy available to Seller for such failure, (b) bring suit against Buyer for Seller's actual damages, (c) bring suit to specifically enforce this Agreement and recover any incidental damages, or (d) pursue any other rights or remedies available at law or equity.

**p.** **Professional Advice and Attorneys' Fees.** Buyer and Seller are advised to seek the counsel of an attorney and a certified public accountant to review the terms of this Agreement. Buyer and Seller shall pay their own fees incurred for such review. However, if Buyer or Seller institutes suit against the other concerning this Agreement, or if the party holding the Earnest Money commences an interpleader action, the prevailing party is entitled to reasonable attorneys' fees and expenses.

| Buyer's Initials | Date | Buyer's Initials | Date | Seller's Initials | Date | Seller's Initials | Date |
|---|---|---|---|---|---|---|---|
| 07/03/2020 | | | | 𝒱𝒮 07/03/2020 | | 𝒱𝒮 07/03/2020 | |

Authentisign ID: AD1AC2C7-CEA5-4515-8921-2579BAA7EAF7

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**RESIDENTIAL REAL ESTATE PURCHASE AND SALE AGREEMENT**
**GENERAL TERMS**
*Continued*

**q. Offer.** This offer must be accepted by 9:00 p.m. on the Offer Expiration Date, unless sooner withdrawn. Acceptance 173
shall not be effective until a signed copy is received by the other party, by the other party's broker, or at the licensed 174
office of the other party's broker pursuant to General Term k. If this offer is not so accepted, it shall lapse and any 175
Earnest Money shall be refunded to Buyer. 176

**r. Counteroffer.** Any change in the terms presented in an offer or counteroffer, other than the insertion of or change to 177
Seller's name and Seller's warranty of citizenship status, shall be considered a counteroffer. If a party makes a 178
counteroffer, then the other party shall have until 9:00 p.m. on the counteroffer expiration date to accept that 179
counteroffer, unless sooner withdrawn. Acceptance shall not be effective until a signed copy is received by the other 180
party, the other party's broker, or at the licensed office of the other party's broker pursuant to General Term k. If the 181
counteroffer is not so accepted, it shall lapse and any Earnest Money shall be refunded to Buyer. 182

**s. Offer and Counteroffer Expiration Date.** If no expiration date is specified for an offer/counteroffer, the 183
offer/counteroffer shall expire 2 days after the offer/counteroffer is delivered by the party making the offer/counteroffer, 184
unless sooner withdrawn. 185

**t. Agency Disclosure.** Selling Firm, Selling Firm's Designated Broker, Selling Broker's Branch Manager (if any) and the 186
Selling Broker's Managing Broker (if any) represent the same party that Selling Broker represents. Listing Firm, Listing 187
Firm's Designated Broker, Listing Broker's Branch Manager (if any), and Listing Broker's Managing Broker (if any) 188
represent the same party that the Listing Broker represents. If Selling Broker and Listing Broker are different persons 189
affiliated with the same Firm, then both Buyer and Seller confirm their consent to Designated Broker, Branch Manager 190
(if any), and Managing Broker (if any) representing both parties as dual agents. If Selling Broker and Listing Broker are 191
the same person representing both parties then both Buyer and Seller confirm their consent to that person and his/her 192
Designated Broker, Branch Manager (if any), and Managing Broker (if any) representing both parties as dual agents. All 193
parties acknowledge receipt of the pamphlet entitled "The Law of Real Estate Agency." 194

**u. Commission.** Seller and Buyer shall pay a commission in accordance with any listing or commission agreement to 195
which they are a party. The Listing Firm's commission shall be apportioned between Listing Firm and Selling Firm as 196
specified in the listing. Seller and Buyer hereby consent to Listing Firm or Selling Firm receiving compensation from 197
more than one party. Seller and Buyer hereby assign to Listing Firm and Selling Firm, as applicable, a portion of their 198
funds in escrow equal to such commission(s) and irrevocably instruct the Closing Agent to disburse the commission(s) 199
directly to the Firm(s). In any action by Listing or Selling Firm to enforce this paragraph, the prevailing party is entitled to 200
court costs and reasonable attorneys' fees. Seller and Buyer agree that the Firms are intended third party beneficiaries 201
under this Agreement. 202

**v. Cancellation Rights/Lead-Based Paint.** If a residential dwelling was built on the Property prior to 1978, and Buyer 203
receives a Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards (NWMLS Form 22J) after 204
mutual acceptance, Buyer may rescind this Agreement at any time up to 3 days thereafter. 205

**w. Information Verification Period.** Buyer shall have 10 days after mutual acceptance to verify all information provided 206
from Seller or Listing Firm related to the Property. This contingency shall be deemed satisfied unless Buyer gives notice 207
identifying the materially inaccurate information within 10 days of mutual acceptance. If Buyer gives timely notice under 208
this section, then this Agreement shall terminate and the Earnest Money shall be refunded to Buyer. 209

**x. Property Condition Disclaimer.** Buyer and Seller agree, that except as provided in this Agreement, all representations 210
and information regarding the Property and the transaction are solely from the Seller or Buyer, and not from any Broker. 211
The parties acknowledge that the Brokers are not responsible for assuring that the parties perform their obligations 212
under this Agreement and that none of the Brokers has agreed to independently investigate or confirm any matter 213
related to this transaction except as stated in this Agreement, or in a separate writing signed by such Broker. In 214
addition, Brokers do not guarantee the value, quality or condition of the Property and some properties may contain 215
building materials, including siding, roofing, ceiling, insulation, electrical, and plumbing, that have been the subject of 216
lawsuits and/or governmental inquiry because of possible defects or health hazards. Some properties may have other 217
defects arising after construction, such as drainage, leakage, pest, rot and mold problems. Brokers do not have the 218
expertise to identify or assess defective products, materials, or conditions. Buyer is urged to use due diligence to 219
inspect the Property to Buyer's satisfaction and to retain inspectors qualified to identify the presence of defective 220
materials and evaluate the condition of the Property as there may be defects that may only be revealed by careful 221
inspection. Buyer is advised to investigate whether there is a sufficient water supply to meet Buyer's needs. Buyer is 222
advised to investigate the cost of insurance for the Property, including, but not limited to homeowner's, flood, 223
earthquake, landslide, and other available coverage. Buyer acknowledges that local ordinances may restrict short term 224
rentals of the Property. Buyer and Seller acknowledge that home protection plans may be available which may provide 225
additional protection and benefit to Buyer and Seller. Brokers may assist the parties with locating and selecting third 226
party service providers, such as inspectors or contractors, but Brokers cannot guarantee or be responsible for the 227
services provided by those third parties. The parties shall exercise their own judgment and due diligence regarding 228
third-party service providers. 229

| Buyer's Initials | Date | Buyer's Initials | Date | Seller's Initials | Date | Seller's Initials | Date |
|---|---|---|---|---|---|---|---|
| 07/03/2020 | | | | 07/03/2020 | | 07/03/2020 | |

Authentisign ID: AD1AC2C7-CEA5-4515-8921-2579BAA7EAF7

Form 22A
Financing Addendum
Rev. 7/19
Page 1 of 3

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

### FINANCING ADDENDUM TO
### PURCHASE & SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated ___**July 03, 2020**___    1

between   **Thomas M Kranzle** _____ and or assigns _____ ("Buyer")   2
    Buyer        Buyer

and   **VS Investment Associates, LLC** _____ ("Seller")   3
   Seller        Seller

concerning **2469**   **S College Street UNIT D**    **Seattle**     **WA**   **98144**   (the "Property").   4
     Address          City         State   Zip

**1. LOAN APPLICATION/WAIVER OF CONTINGENCY.**   5

   **a. Loan Application.** This Agreement is contingent on Buyer obtaining the following type of loan or loans to   6
     purchase the Property (the "Loan(s)"): ❑ Conventional First; ❑ Conventional Second; ❑ Bridge; ❑ VA; ❑ FHA;   7
     ❑ USDA; ❑ Home Equity Line of Credit; ☑ Other **SBA** _____   8

     (the "Financing Contingency"). Buyer shall pay ❑ $ _____ ; or ☑ __15__ % of the Purchase   9
     Price down, in addition to the Loans. Buyer shall make application for the Loans to pay the balance of the   10
     Purchase Price and pay the application fee, if required, for the subject Property within ____5____ days (5   11
     days if not filled in) after mutual acceptance of this Agreement. For the purposes of this Addendum,   12
     "application" means the submission of Buyer's financial information for the purposes of obtaining an extension   13
     of credit including Buyer's name, income, social security number (if required), the Property address, purchase   14
     price, and the loan amount.   15

   **b. Waiver of Financing Contingency.** If Buyer (i) fails to make application for financing for the Property within   16
     the agreed time; (ii) changes the type of loan at any time without Seller's prior written consent; or (iii) changes   17
     the lender without Seller's prior written consent after the agreed upon time to apply for financing expires, then   18
     the Financing Contingency shall be deemed waived. Buyer's waiver of the Financing Contingency under this   19
     Paragraph 1(b) also constitutes waiver of Paragraph 7 (Appraisal Less Than Sales Price). For purposes of   20
     this Addendum, "lender" means either the party to whom the application was submitted or the party funding   21
     the loan.   22

**2. LOAN INFORMATION.**   23

   **a. Seller's Request for Loan Information.** At any time ___10___ days (10 days if not filled in) after mutual   24
     acceptance, Seller may give, once, a notice requesting information related to the status of Buyer's loan   25
     application ("Request for Loan Information"). NWMLS Form 22AL may be used for this notice.   26

   **b. Buyer's Loan Information Notice.** Within ___3___ days (3 days if not filled in) of receiving Seller's Request   27
     for Loan Information, Buyer shall give notice of the status of Buyer's loan application ("Loan Information   28
     Notice"). Buyer's notice shall be on NWMLS Form 22AP and shall include the date of application, the name   29
     of lender, a list of the information that Buyer has provided to lender, and a warranty that Buyer has provided   30
     all information requested by lender.   31

   **c. Failure to Provide Loan Information Notice.** If Buyer fails to timely give to Seller a completed Loan   32
     Information Notice, Seller may give the Right to Terminate Notice described in Paragraph 3 (Seller's Right to   33
     Terminate) at any time after the date that the Loan Information Notice is due.   34

**3. SELLER'S RIGHT TO TERMINATE.**   35

   **a. Right to Terminate Notice.** At any time ___45___ days (30 days if not filled in) after mutual acceptance,   36
     Seller may give notice that Seller may terminate the Agreement at any time 3 days after delivery of that notice   37
     (the "Right to Terminate Notice"). NWMLS Form 22AR may be used for this notice.   38

   **b. Termination Notice.** If Buyer has not previously waived the Financing Contingency, Seller may give notice of   39
     termination of this Agreement (the "Termination Notice") any time following 3 days after delivery of the Right   40
     to Terminate Notice. If Seller gives the Termination Notice before Buyer has waived the Financing   41
     Contingency, this Agreement is terminated and the Earnest Money shall be refunded to Buyer. NWMLS Form   42
     22AR shall be used for this notice. If not waived, the Financing Contingency shall survive the Closing Date.   43

   **c. Appraisal Less Than Sales Price.** Buyer's waiver of the Financing Contingency under this Paragraph 3 ❑ will;   44
     or ☑ will not (will, if not filled in) constitute waiver of Paragraph 7 (Appraisal Less Than Sales Price).   45

| Buyer's Initials | Date 07/03/2020 | Buyer's Initials | Date | Seller's Initials | Date 07/03/2020 | Seller's Initials | Date 07/03/2020 |
|---|---|---|---|---|---|---|---|

Authentisign ID: AD1AC2C7-CEA5-4515-8921-2579BAA7EAF7

Form 22A
Financing Addendum
Rev. 7/19
Page 2 of 3

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**FINANCING ADDENDUM TO
PURCHASE & SALE AGREEMENT**
*Continued*

4. **LOAN COST PROVISIONS.** Seller shall pay up to ☐ $ _____ ; or ☑ __1__ % of the Purchase 46
Price ($0.00 if not filled in), which shall be applied to Buyer's Loan(s) and settlement costs, including prepaids, loan 47
discount, loan fee, interest buy down, financing, closing or other costs allowed by lender. That amount shall include 48
the following costs that lender is prohibited from collecting from Buyer: (a) up to $300.00 for Buyer's Loan(s) and 49
settlement costs for FHA/USDA/VA loans; and (b) unless agreed otherwise below, Buyer's share of the escrow fee 50
for a VA loan. Seller shall pay the costs for (a) and (b), even if the amount agreed upon in this Paragraph 4 is 51
insufficient to pay for those costs. If checked, ☐ Buyer shall pay Buyer's share of the escrow fee for the VA loan 52
(note that VA regulations prohibit Buyer from paying loan and settlement costs exceeding one percent of the amount 53
of the loan). 54

5. **EARNEST MONEY.** If Buyer has not waived the Financing Contingency, and is unable to obtain financing by 55
Closing after a good faith effort then, on Buyer's notice, this Agreement shall terminate. The Earnest Money shall 56
be refunded to Buyer after lender confirms in writing (a) the date Buyer's loan application for the Property was 57
made, including a copy of the loan estimate that was provided to Buyer; (b) that Buyer possessed sufficient funds 58
to close (e.g. down payment, closing costs, etc.); and (c) the reasons Buyer was unable to obtain financing by 59
Closing. If Seller terminates this Agreement, the Earnest Money shall be refunded without need for such 60
confirmation. 61

6. **INSPECTION.** Seller shall permit inspections required by lender, including but not limited to structural, pest, 62
heating, plumbing, roof, electrical, septic, and well inspections. Seller is not obligated to pay for such inspections 63
unless otherwise agreed. 64

7. **APPRAISAL LESS THAN SALE PRICE.** 65
   a. **Notice of Low Appraisal.** If lender's appraised value of the Property is less than the Purchase Price, Buyer 66
   may, within 3 days after receipt of a copy of lender's appraisal, give notice of low appraisal, which shall 67
   include a copy of lender's appraisal. NWMLS Form 22AN may be used for the notices in this Paragraph 7. 68

   b. **Seller's Response.** Seller shall, within 10 days after Buyer's notice of low appraisal, give notice of: 69
      (i) A reappraisal or reconsideration of value, at Seller's expense, by the same appraiser or another appraiser 70
      acceptable to lender, in an amount not less than the Purchase Price. Buyer shall promptly seek lender's 71
      approval of such reappraisal or reconsideration of value. The parties are advised that lender may elect 72
      not to accept a reappraisal or reconsideration of value; 73
      (ii) Seller's consent to reduce the Purchase Price to an amount not more than the amount specified in the 74
      appraisal or reappraisal by the same appraiser, or an appraisal by another appraiser acceptable to 75
      lender, whichever is higher. (This provision is not applicable if this Agreement is conditioned on FHA, VA, 76
      or USDA financing. FHA, VA, and USDA financing does not permit the Buyer to be obligated to buy if the 77
      Seller reduces the Purchase Price to the appraised value. Buyer, however, has the option to buy at the 78
      reduced price.); 79
      (iii) Seller's proposal to reduce the Purchase Price to an amount more than the amount specified in the 80
      appraisal and for Buyer to pay the necessary additional funds (the amount the reduced Purchase Price 81
      exceeds the appraised value) to close the sale; or 82
      (iv) Seller's rejection of Buyer's notice of low appraisal. 83

      If Seller timely delivers notice of (i) reappraisal or reconsideration of value; or (ii) consent to reduce the 84
      Purchase Price to an amount not more than the amount specified in the appraisal (except for FHA, VA, or 85
      USDA financing), and lender accepts Seller's response, then Buyer shall be bound by Seller's response. 86

   c. **Buyer's Reply.** 87
      (i) Buyer shall have 3 days from either Seller's notice of rejection of low appraisal or, if Seller fails to respond, 88
      the day Seller's response period ends, whichever is earlier, to (a) waive the Financing Contingency; or (b) 89
      terminate the Agreement, in which event the Earnest Money shall be refunded to Buyer. 90
      (ii) If Seller proposes to reduce the Purchase Price to an amount more than the appraised value, Buyer shall 91
      have 3 days to (a) accept and represent that Buyer has sufficient funds to close the sale in accordance with 92
      this provision; or (b) terminate the Agreement, in which event the Earnest Money shall be refunded to Buyer. 93

| Buyer's Initials | Date | Buyer's Initials | Date | Seller's Initials | Date | Seller's Initials | Date |
|---|---|---|---|---|---|---|---|
| 07/03/2020 | | | | 07/03/2020 | | 07/03/2020 | |

Authentisign ID: AD1AC2C7-CEA5-4515-8921-2575BAA7EAF7

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

### FINANCING ADDENDUM TO
### PURCHASE & SALE AGREEMENT
*Continued*

**(iii)** If Seller consents to reduce the Purchase Price to an amount not more than the appraised value for FHA, 94
VA, or USDA financing, Buyer shall have 3 days to (a) give notice that Buyer will buy at the reduced price; 95
or (b) terminate the Agreement, in which event the Earnest Money shall be refunded to Buyer. 96

Buyer's inaction during this reply period shall result in termination of the Agreement and return of the Earnest 97
Money to Buyer. The Closing Date shall be extended as necessary to accommodate the foregoing times for 98
notices. 99

8. **FHA/VA/USDA - Appraisal Certificate.** If this Agreement is contingent on Buyer obtaining FHA, VA, or USDA 100
financing, notwithstanding any other provisions of this Agreement, Buyer is not obligated to complete the 101
purchase of the Property unless Buyer has been given in accordance with HUD/FHA, VA, or USDA requirements 102
a written statement by FHA, VA, USDA or a Direct Endorsement lender, setting forth the appraised value of the 103
Property (excluding closing costs). Seller and Buyer shall execute a document setting forth the prior provision, or 104
similar provision, known as the FHA, VA, or USDA amendatory clause, as required by lender. Buyer shall pay 105
the costs of any appraisal. If the appraised value of the Property is less than the Purchase Price, Paragraph 7 106
above shall apply. 107

**Purpose of Appraisal.** The appraised valuation is arrived at only to determine the maximum mortgage FHA, VA, 108
or USDA will insure. FHA, VA, or USDA do not warrant the value or the condition of the Property. Buyer agrees 109
to satisfy himself/herself that the price and condition of the Property are acceptable. 110

9. **EXTENSION OF CLOSING.** If, through no fault of Buyer, lender is required by 12 CFR 1026 to give corrected 111
disclosures to Buyer due to (a) a change in the Annual Percentage Rate ("APR") of Buyer's Loan(s) by .125% or 112
more for a fixed rate loan or .250% or more for an adjustable rate loan; (b) a change in the loan product; or (c) the 113
addition of a prepayment penalty, then upon notice from Buyer, the Closing Date shall be extended for up to 4 days 114
to accommodate the requirements of Regulation Z of the Truth in Lending Act. This paragraph shall survive Buyer's 115
waiver of this Financing Contingency. 116

| Buyer's Initials | Date | Buyer's Initials | Date | Seller's Initials | Date | Seller's Initials | Date |
|---|---|---|---|---|---|---|---|
| 07/03/2020 | | | | 07/03/2020 | | 07/03/2020 | |

Authentisign ID: AD1AC2C7-CEA5-4515-8921-2578BAA7EAF7

Form 22D
Optional Clauses Addendum
Rev. 7/19
Page 1 of 2

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## OPTIONAL CLAUSES ADDENDUM TO
## PURCHASE & SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated __July 03, 2020__     1

between    **Thomas M Kranzle**      and or assigns      ("Buyer")   2
     Buyer            Buyer

and    **VS Investment Associates, LLC**      ("Seller")   3
   Seller            Seller

concerning **2469   S College Street UNIT D**    **Seattle**    **WA**   **98144**   (the "Property").   4
     Address         City        State    Zip

**CHECK IF INCLUDED:**   5

1. ☑   **Square Footage/Lot Size/Encroachments.** The Listing Broker and Selling Broker make no representations   6
concerning: (a) the lot size or the accuracy of any information provided by the Seller; (b) the square footage of   7
any improvements on the Property; (c) whether there are any encroachments (fences, rockeries, buildings) on   8
the Property, or by the Property on adjacent properties. Buyer is advised to verify lot size, square footage and   9
encroachments to Buyer's own satisfaction.   10

2.   **Title Insurance.** The Title Insurance clause in the Agreement provides Seller is to provide the then-current ALTA   11
form of Homeowner's Policy of Title Insurance. The parties have the option to provide less coverage by selecting   12
a Standard Owner's Policy or more coverage by selecting an Extended Coverage Policy:   13

     ❑    **Standard Owner's Coverage.** Seller authorizes Buyer's lender or Closing Agent, at Seller's expense, to   14
apply for the then-current ALTA form of Owner's Policy of Title Insurance, together with homeowner's   15
additional protection and inflation protection endorsements, if available at no additional cost, rather than   16
the Homeowner's Policy of Title Insurance.   17

     ❑    **Extended Coverage.** Seller authorizes Buyer's lender or Closing Agent, at Seller's expense to apply for   18
an ALTA or comparable Extended Coverage Policy of Title Insurance, rather than the Homeowner's   19
Policy of Title Insurance. Buyer shall pay the increased costs associated with the Extended Coverage   20
Policy, including the excess premium over that charged for Homeowner's Policy of Title Insurance and   21
the cost of any survey required by the title insurer.   22

3. ☑   **Seller Cleaning.** Seller shall clean the interiors of any structures and remove all trash, debris and rubbish   23
from the Property prior to Buyer taking possession.   24

4. ☑   **Personal Property.** Unless otherwise agreed, Seller shall remove all personal property from the Property   25
not later than the Possession Date. Any personal property remaining on the Property thereafter shall become   26
the property of Buyer, and may be retained or disposed of as Buyer determines.   27

5. ☑   **Utilities.** To the best of Seller's knowledge, Seller represents that the Property is connected to a:   28
☑ public water main; ☑ public sewer main; ❑ septic tank; ❑ well (specify type) _____ ;   29
❑ irrigation water (specify provider) _____ ; ☑ natural gas; ☑ telephone;   30
❑ cable; ☑ electricity; ❑ other _____ .   31

6. ☑   **Insulation - New Construction.** If this is new construction, Federal Trade Commission Regulations require   32
the following to be filled in. If insulation has not yet been selected, FTC regulations require Seller to furnish   33
Buyer the information below in writing as soon as available:   34

     WALL INSULATION: TYPE: __Batt__    THICKNESS: __6"__    R-VALUE: __19__   35

     CEILING INSULATION: TYPE: __Batt__    THICKNESS: __10"__    R-VALUE: __38__   36

     OTHER INSULATION DATA: __R -28 Insulation in the 1st floor of Residential unit__   37

7. ❑   **Leased Property Review Period and Assumption.** Buyer acknowledges that Seller leases the following   38
items of personal property that are included with the sale: ❑ propane tank; ❑ security system; ❑ satellite   39
dish and operating equipment; ❑ other _____ .   40

| 07/03/2020 | | 07/03/2020 | | 07/03/2020 |
|---|---|---|---|---|
| Buyer's Initials   Date | Buyer's Initials   Date | Seller's Initials   Date | Seller's Initials   Date | |

AuthentiSign ID: AD1AC2C7-CEA5-4515-8921-2579BAA7EAF7

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## OPTIONAL CLAUSES ADDENDUM TO
## PURCHASE & SALE AGREEMENT
*Continued*

Seller shall provide Buyer a copy of the lease for the selected items within _____ days (5 days if not filled 41
in) of mutual acceptance. If Buyer, in Buyer's sole discretion, does not give notice of disapproval within 42
_____ days (5 days if not filled in) of receipt of the lease(s) or the date that the lease(s) are due, whichever 43
is earlier, then this lease review period shall conclusively be deemed satisfied (waived) and at Closing, Buyer 44
shall assume the lease(s) for the selected item(s) and hold Seller harmless from and against any further 45
obligation, liability, or claim arising from the lease(s), if the lease(s) can be assumed. If Buyer gives timely 46
notice of disapproval, then this Agreement shall terminate and the Earnest Money shall be refunded to Buyer. 47

8. ☐ **Homeowners' Association Review Period.** If the Property is subject to a homeowners' association or any 48
other association, then Seller shall, at Seller's expense, provide Buyer a copy of the following documents (if 49
available from the Association) within _____ days (10 days if not filled in) of mutual acceptance: 50

    a. Association rules and regulations, including, but not limited to architectural guidelines; 51
    b. Association bylaws and covenants, conditions, and restrictions (CC&Rs); 52
    c. Association meeting minutes from the prior two (2) years; 53
    d. Association Board of Directors meeting minutes from the prior six (6) months; and 54
    e. Association financial statements from the prior two (2) years and current operating budget. 55

If Buyer, in Buyer's sole discretion, does not give notice of disapproval within _____ days (5 days if not 56
filled in) of receipt of the above documents or the date that the above documents are due, whichever is 57
earlier, then this homeowners' association review period shall conclusively be deemed satisfied (waived). If 58
Buyer gives timely notice of disapproval, then this Agreement shall terminate and the Earnest Money shall be 59
refunded to Buyer. 60

9. ☐ **Homeowners' Association Transfer Fee.** If there is a transfer fee imposed by the homeowners' association 61
or any other association (e.g. a "move-in" or "move-out" fee), the fee shall be paid by the party as provided for 62
in the association documents. If the association documents do not provide which party pays the fee, the fee 63
shall be paid by ☐ Buyer; ☐ Seller (Seller if not filled in). 64

10. ☐ **Excluded Item(s).** The following item(s), that would otherwise be included in the sale of the Property, is 65
excluded from the sale ("Excluded Item(s)"). Seller shall repair any damage to the Property caused by the 66
removal of the Excluded Item(s). Excluded Item(s): 67

    _____ 68
    _____ 69

11. ☑ **Home Warranty.** Buyer and Seller acknowledge that home warranty plans are available which may provide 70
additional protection and benefits to Buyer and Seller. Buyer shall order a one-year home warranty as follows: 71

    a. Home warranty provider: **FNHW** _____ 72
    b. Seller shall pay up to $_____ ($0.00 if not filled in) of the cost for the home warranty, together 73
       with any included options, and Buyer shall pay any balance. 74
    c. Options to be included: _____ 75
    _____ (none, if not filled in). 76
    d. Other: **Buyers agent to provide one year systems warranty from FNHW** _____. 77

12. ☒ **Other.** 78

  79

The sale of this property is subject to the approval by the Bankruptcy Court. 80
  81
  82
  83
  84
  85

[✗] 07/03/2020    [𝓋𝓈] 07/03/2020    [𝓋𝓈] 07/03/2020

[✗] 07/03/2020    _____    [𝓋𝓈] 07/03/2020    [𝓋𝓈] 07/03/2020

Buyer's Initials    Date    Buyer's Initials    Date    Seller's Initials    Date    Seller's Initials    Date

AuthentiSign ID: AD1AC2C7-CEA5-4515-8921-2579BAA7EAF7

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## IDENTIFICATION OF UTILITIES
## ADDENDUM TO PURCHASE AND SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated __July 03, 2020__  1

between __Thomas M Kranzle__ and or assigns ("Buyer")  2
    Buyer        Buyer

and __VS Investment Associates, LLC__ ("Seller")  3
    Seller        Seller

concerning __2469   S College Street UNIT D__   __Seattle__   __WA__  __98144__ (the "Property").  4
    Address          City      State    Zip

Pursuant to RCW 60.80, Buyer and Seller request the Closing Agent to administer the disbursement of closing funds  5
necessary to satisfy unpaid utility charges, if any, affecting the Property. The names and addresses of all utilities  6
providing service to the Property and having lien rights are as follows:  7

**WATER DISTRICT:**  8
    Name                   e-mail or website (optional)
                                                      9
    Address
                                                       10
    City, State, Zip                   Fax. No. (optional)

**SEWER DISTRICT:**  11
    Name                   e-mail or website (optional)
                                                      12
    Address
                                                       13
    City, State, Zip                   Fax. No. (optional)

**IRRIGATION DISTRICT:**  14
    Name                   e-mail or website (optional)
                                                      15
    Address
                                                       16
    City, State, Zip                   Fax. No. (optional)

**GARBAGE:**  17
    Name                   e-mail or website (optional)
                                                      18
    Address
                                                       19
    City, State, Zip                   Fax. No. (optional)

**ELECTRICITY:**  20
    Name                   e-mail or website (optional)
                                                      21
    Address
                                                       22
    City, State, Zip                   Fax. No. (optional)

**GAS:**  23
    Name                   e-mail or website (optional)
                                                      24
    Address
                                                       25
    City, State, Zip                   Fax. No. (optional)

**SPECIAL DISTRICT(S):**  26
(local improvement districts or
utility local improvement districts)
    Name                   e-mail or website (optional)
                                                      27
    Address
                                                       28
    City, State, Zip                   Fax. No. (optional)

If the above information has not been filled in at the time of mutual acceptance of this Agreement, then (1)  29
within _____ days (5 if not filled in) of mutual acceptance of this Agreement, Seller shall provide the Listing  30
Broker or Selling Broker with the names and addresses of all utility providers having lien rights affecting the Property  31
and (2) Buyer and Seller authorize Listing Broker or Selling Broker to insert into this Addendum the names and  32
addresses of the utility providers identified by Seller.  33

Nothing in this Addendum shall be construed to diminish or alter the Seller's obligation to pay all utility charges  34
(including unbilled charges). Buyer understands that the Listing Broker and Selling Broker are not responsible for, or  35
to insure payment of, Seller's utility charges.  36

| 07/03/2020 | | 𝑣𝑆 07/03/2020 | 𝑣𝑆 07/03/2020 |
|---|---|---|---|
| Buyer's Initials    Date | Buyer's Initials    Date | Seller's Initials    Date | Seller's Initials    Date |

Authentisign ID: AD1AC2C7-CEA5-4515-8921-2579BAA7EAF7

Form 35
Inspection Addendum
Rev. 7/19
Page 1 of 2

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## INSPECTION ADDENDUM TO PURCHASE AND SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated __July 03, 2020__    1

between   **Thomas M Kranzle**     <u>and or assigns</u>     ("Buyer")   2
<span style="margin-left:3em">Buyer</span>      Buyer

and   **VS Investment Associates, LLC**     ("Seller")   3
<span style="margin-left:3em">Seller</span>      Seller

concerning **2469   S College Street UNIT D**    **Seattle**    **WA**   **98144**   (the "Property").   4
<span style="margin-left:3em">Address</span>      City     State    Zip

1. ☐   **a. INSPECTION CONTINGENCY.** This Agreement is conditioned on Buyer's subjective satisfaction with 5
inspections of the Property and the improvements on the Property. Buyer's inspections may include, at 6
Buyer's option and without limitation, the structural, mechanical and general condition of the 7
improvements to the Property, compliance with building and zoning codes, an inspection of the Property 8
for hazardous materials, a pest inspection, and a soils/stability inspection. The inspection must be 9
performed by Buyer or a person licensed (or exempt from licensing) under Chapter 18.280 RCW. 10

    **Sewer Inspection.** Buyer's inspection of the Property ☑ may; ☐ may not (may, if not checked) include 11
an inspection of the sewer system, which may include a sewer line video inspection and assessment and 12
may require the inspector to remove toilets or other fixtures to access the sewer line. 13

    **Buyer's Obligations.** All inspections are to be (a) ordered by Buyer, (b) performed by inspectors of 14
Buyer's choice, and (c) completed at Buyer's expense. Buyer shall not alter the Property or any 15
improvements on the Property without first obtaining Seller's permission. Buyer is solely responsible for 16
interviewing and selecting all inspectors. Buyer shall restore the Property and all improvements on the 17
Property to the same condition they were in prior to the inspection. Buyer shall be responsible for all 18
damages resulting from any inspection of the Property performed on Buyer's behalf. 19

    **BUYER'S NOTICE.** This inspection contingency SHALL CONCLUSIVELY BE DEEMED WAIVED unless 20
within _____ days (10 days if not filled in) after mutual acceptance of this Agreement (the "Initial 21
Inspection Period"), Buyer gives notice (1) approving the inspection and waiving this contingency; (2) 22
disapproving the inspection and terminating the Agreement; (3) that Buyer will conduct additional 23
inspections; or (4) proposing repairs to the property or modifications to the Agreement. If Buyer disapproves 24
the inspection and terminates the Agreement, the Earnest Money shall be refunded to Buyer. If Buyer 25
proposes repairs to the property or modifications to the Agreement, including adjustments to the purchase 26
price or credits for repairs to be performed after Closing, the parties shall negotiate as set forth in paragraph 27
1.c, below. The parties may use NWMLS Form 35R to give notices required by this Addendum. 28

    **ATTENTION BUYER:** If Buyer fails to give timely notice, then this inspection contingency shall be 29
deemed waived and Seller shall not be obligated to make any repairs or modifications. Buyer shall not 30
provide the inspection report, or portions of the report, to Seller, unless Seller requests otherwise or as 31
required by paragraph 1.b. 32

   **b. Additional Inspections.** If an inspector so recommends, Buyer may obtain further evaluation of any item 33
by a specialist at Buyer's option and expense if, on or before the end of the Initial Inspection Period, 34
Buyer provides Seller a copy of the inspector's recommendation and notice that Buyer will seek additional 35
inspections. If Buyer gives timely notice of additional inspections, Buyer shall have _____ (5 days if 36
not filled in) after giving the notice to obtain the additional inspection(s) by a specialist. 37

   **c. Buyer's Requests for Repairs or Modifications.** If Buyer requests repairs or modifications under 38
paragraph 1.a. or 1.b., the parties shall negotiate as set forth in this paragraph. Buyer's initial request and 39
Seller's response made in accordance with the following procedures are irrevocable for the time period 40
provided. 41

    **(i) Seller's Response to Request for Repairs or Modifications.** Seller shall have _____ days (3 42
days if not filled in) after receipt of Buyer's request for repairs or modifications to give notice that Seller 43
(a) agrees to the repairs or modifications proposed by Buyer; (b) agrees to some of the repairs or 44
modifications proposed by Buyer; (c) rejects all repairs or modifications; or (d) 45
offers different or additional repairs or modifications. If Seller agrees to the terms of Buyer's request for 46
repairs or modifications, this contingency shall be satisfied and Buyer's Reply shall not be necessary. If 47

| Buyer's Initials | Date | Buyer's Initials | Date | Seller's Initials | Date | Seller's Initials | Date |
|---|---|---|---|---|---|---|---|
| 07/03/2020 | | | | 07/03/2020 | | 07/03/2020 | |

AuthentiSign ID: AD1AC2C7-CEA5-4515-8921-2579BAA7EAF7

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

### INSPECTION ADDENDUM TO PURCHASE AND SALE AGREEMENT
*Continued*

Seller does not agree to all of Buyer's repairs or modifications, Buyer shall have an opportunity to 48
reply, as follows: 49

**(ii) Buyer's Reply.** If Seller does not agree to all of the repairs or modifications proposed by Buyer, Buyer 50
shall have _____ days (3 days if not filled in) from either the day Buyer receives Seller's response 51
or, if Seller fails to timely respond, the day Seller's response period ends, whichever is earlier, to (a) 52
accept the Seller's response at which time this contingency shall be satisfied; (b) agree with the Seller 53
on other remedies; or (c) disapprove the inspection and terminate the Agreement, in which event, the 54
Earnest Money shall be refunded to Buyer. 55

**ATTENTION BUYER:** These time periods for negotiating repairs or modifications shall not repeat. The 56
parties must either reach a written agreement or Buyer must terminate this Agreement by the Buyer's 57
Reply deadline set forth in paragraph 1.c.ii. Buyer's inaction during Buyer's reply period shall result in 58
waiver of this inspection condition, in which case Seller shall not be obligated to make any repairs or 59
modifications whatsoever AND THIS CONTINGENCY SHALL BE DEEMED WAIVED. 60

**d. Repairs.** If Seller agrees to make the repairs proposed by Buyer, then repairs shall be accomplished at 61
Seller's expense in a commercially reasonable manner and in accordance with all applicable laws no 62
fewer than _____ days (3 days if not filled in) prior to the Closing Date. In the case of hazardous 63
materials, "repair" means removal or treatment (including but not limited to removal or, at Seller's option, 64
decommissioning of any oil storage tanks) of the hazardous material at Seller's expense as 65
recommended by and under the direction of a professional selected by Seller. Seller's repairs are subject 66
to re-inspection and approval, prior to Closing, by the inspector who recommended the repair, if Buyer 67
elects to order and pay for such re-inspection. If Buyer agrees to pay for any repairs prior to Closing, the 68
parties are advised to seek the counsel of an attorney to review the terms of that agreement. 69

**e. Oil Storage Tanks.** Any inspection regarding oil storage tanks or contamination from such tanks shall be 70
limited solely to determining the presence or non-presence of oil storage tanks on the Property, unless 71
otherwise agreed in writing by Buyer and Seller. 72

**f. On-site Sewage Disposal Systems Advisory:** Buyer is advised that on-site sewage disposal systems, 73
including "septic systems," are subject to strict governmental regulation and occasional malfunction and 74
even failure. Buyer is advised to consider conducting an inspection of an on-site sewage system in 75
addition to the inspection of the Property provided by this Form 35 by including an appropriate on-site 76
sewage disposal inspection contingency such as NWMLS Form 22S (Septic Addendum). 77

**2. ❑ NEIGHBORHOOD REVIEW CONTINGENCY:** Buyer's inspection includes Buyer's subjective satisfaction that 78
the conditions of the neighborhood in which the Property is located are consistent with the Buyer's intended 79
use of the Property (the "Neighborhood Review"). The Neighborhood Review may include Buyer's investigation 80
of the schools, proximity to bus lines, availability of shopping, traffic patterns, noise, parking and investigation of 81
other neighborhood, environmental and safety conditions the Buyer may determine to be relevant in deciding to 82
purchase the Property. If Buyer does not give notice of disapproval of the Neighborhood Review within 83
_____ (3 days if not filled in) of mutual acceptance of the Agreement, then this Neighborhood Review 84
condition shall conclusively be deemed satisfied (waived). If Buyer gives a timely notice of disapproval, then 85
this Agreement shall terminate and the Earnest Money shall be refunded to Buyer. 86

**3. ❑ PREINSPECTION CONDUCTED.** Buyer, prior to mutual acceptance of this Agreement, conducted a 87
building, hazardous substances, building and zoning code, pest or soils/stability inspection of the Property, 88
and closing of this Agreement is not conditioned on the results of such inspections. Buyer elects to buy the 89
Property in its present condition and acknowledges that the decision to purchase the property was based on 90
Buyer's prior inspection and that Buyer has not relied on representations by Seller, Listing Broker or Selling 91
Broker. 92

**4. ☑ WAIVER OF INSPECTION.** Buyer has been advised to obtain a building, hazardous substances, building 93
and zoning code, pest or soils/stability inspection, and to condition the closing of this Agreement on the 94
results of such inspections, but Buyer elects to waive the right and buy the Property in its present condition. 95
Buyer acknowledges that the decision to waive Buyer's inspection options was based on Buyer's personal 96
inspection and Buyer has not relied on representations by Seller, Listing Broker or Selling Broker. 97

| | 07/03/2020 | | | | 07/03/2020 | | | 07/03/2020 |
|---|---|---|---|---|---|---|---|---|
| Buyer's Initials | Date | Buyer's Initials | Date | Seller's Initials | Date | Seller's Initials | Date |

Authentisign ID: AD1AC2C7-CEA5-4515-8921-2578BAA7EAF7

## EXHIBIT A

**LEGAL DESCRIPTION:** Real property in the County of King, State of Washington, described as follows:

PARCEL A:

PARCEL D OF CITY OF SEATTLE SHORT SUBDIVISION NO. 3026706-LU, RECORDED JUNE 27, 2019 UNDER RECORDING NUMBER 20190627900001, RECORDS OF KING COUNTY, WASHINGTON.

PARCEL B:

A NON EXCLUSIVE EASEMENT FOR INGRESS, EGRESS AND PEDESTRIAN ACCESS AS DELINEATED ON CITY OF SEATTLE SHORT SUBDIVISION NO. 3026706-LU, RECORDED JUNE 27, 2019 UNDER RECORDING NUMBER 20190627900001, RECORDS OF KING COUNTY, WASHINGTON.

Tax Parcel ID No. 159460009008



07/03/2020

07/03/2020

07/03/2020

# EXHIBIT B

Authentisign ID: 0C44A9D5-BAAF-4AC3-95E7-760BE675AC1F

Form 21
Residential Purchase & Sale Agreement
Rev. 7/19
Page 1 of 5

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## RESIDENTIAL REAL ESTATE PURCHASE AND SALE AGREEMENT
## SPECIFIC TERMS

1. **Date:** May 15, 2020    **MLS No.:** _____    **Offer Expiration Date:** 5/18/2020

2. **Buyer:** Ahmet Tayfun Gurbuz    Stephanie Lehwald Gurbuz    A married couple
   <br>Buyer    Buyer    Status

3. **Seller:** VS Investment Assoc, by and through Elliott Bay Asset Solutions, LLC, as Court Appointed Receiver
   <br>Seller    Seller

4. **Property:** Legal Description attached as Exhibit A. Tax Parcel No(s).: 159460-009008 , _____ , _____ ,
   
   | 2469 | S College St | Seattle | King | WA | 98144 |
   |---|---|---|---|---|---|
   | Address | | City | County | State | Zip |

5. **Included Items:** ☑ stove/range; ☑ refrigerator; ☐ washer; ☐ dryer; ☐ dishwasher; ☐ hot tub; ☐ fireplace insert;
   ☐ wood stove; ☐ satellite dish; ☐ security system; ☐ attached television(s); ☐ attached speaker(s); ☑ microwave;
   ☐ generator; ☐ other _____

6. **Purchase Price:** $ 885,000.00    Eight Hundred Eighty-Five Thousand    Dollars

7. **Earnest Money:** $ 20,000.00    ☐ Check; ☐ Note; ☑ Other Check or Wire   (held by ☐ Selling Firm; ☑ Closing Agent)

8. **Default:** (check only one) ☑ Forfeiture of Earnest Money; ☐ Seller's Election of Remedies

9. **Title Insurance Company:** WFG Title

10. **Closing Agent:** WFG Title      Carol Robson
    <br>Company      Individual (optional)

11. **Closing Date:** See Receiver's Addendum   **Possession Date:** ☑ on Closing; ☐ Other _____

12. **Services of Closing Agent for Payment of Utilities:** ☑ Requested (attach NWMLS Form 22K); ☐ Waived

13. **Charges/Assessments Levied Before but Due After Closing:** ☑ assumed by Buyer; ☐ prepaid in full by Seller at Closing

14. **Seller Citizenship (FIRPTA):** Seller ☐ is; ☑ is not a foreign person for purposes of U.S. income taxation

15. **Agency Disclosure:** Selling Broker represents: ☑ Buyer; ☐ Seller; ☐ both parties; ☐ neither party
    <br>Listing Broker represents: ☑ Seller; ☐ both parties

16. **Addenda:** 35(Inspection)    22D(Optional Clauses)    22K(Utilities)    22A(Financing)
    <br>22E    Form 34    CBA Addendum    Receiver's Addendum

---

| | | |
|---|---|---|
| *Ahmet T. Gurbuz*   05/21/2020 | | Stuart Heath, Member |
| Buyer's Signature    Date | | VS Investment Assoc, by and through Elliott Bay Asset Solutions, LLC |
| 05/21/2020 8:32:54 PM PDT | | 05/19/2020 |
| *Stephanie L Gurbuz*   05/21/2020 | | Seller's Signature   5/19/2020 8:24:14 PM PDT    Date |
| Buyer's Signature   05/21/2020 8:32:52 PM PDT    Date | | Seller's Signature    Date |
| | | |
| Buyer's Address | | Seller's Address |
| | | |
| City, State, Zip | | City, State, Zip |
| | | |
| Phone No.    Fax No. | | Phone No.    Fax No. |
| atgurbuz@yahoo.com | | |
| Buyer's E-mail Address | | Seller's E-mail Address |
| Chaffee Real Estate Group   6226 | | John L Scott West Seattle   1570 |
| Selling Firm    MLS Office No. | | Listing Firm    MLS Office No. |
| Mike Chaffee   36120 | | Susan Sullivan   64906 |
| Selling Broker (Print)    MLS LAG No. | | Listing Broker (Print)    MLS LAG No. |
| 425.505.2169    425.736.7335 | | (206) 935-7700   (206) 399-7609   (206) 935-7000 |
| Firm Phone No.   Broker Phone No.   Firm Fax No. | | Firm Phone No.   Broker Phone No.   Firm Fax No. |
| documents@chaffeere.com | | notices.westseattle@johnlscott.com |
| Selling Firm Document E-mail Address | | Listing Firm Document E-mail Address |
| mike@chaffeere.com | | ssullivan@johnlscott.com |
| Selling Broker's E-mail Address | | Listing Broker's E-mail Address |
| 27261    21170 | | 60668    20018 |
| Selling Broker DOL License No.   Selling Firm DOL License No. | | Listing Broker DOL License No.   Listing Firm DOL License No. |

Authentisign ID: 0C44A9D5-BAAF-4AC3-95E7-760BE675AC1F

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## RESIDENTIAL REAL ESTATE PURCHASE AND SALE AGREEMENT
### GENERAL TERMS
*Continued*

**a. Purchase Price.** Buyer shall pay to Seller the Purchase Price, including the Earnest Money, in cash at Closing, unless 1 otherwise specified in this Agreement. Buyer represents that Buyer has sufficient funds to close this sale in accordance 2 with this Agreement and is not relying on any contingent source of funds, including funds from loans, the sale of other 3 property, gifts, retirement, or future earnings, except to the extent otherwise specified in this Agreement. The parties 4 shall use caution when wiring funds to avoid potential wire fraud. Before wiring funds, the party wiring funds shall take 5 steps to confirm any wire instructions via an independently verified phone number and other appropriate measures. 6

**b. Earnest Money.** Buyer shall deliver the Earnest Money within 2 days after mutual acceptance to Selling Broker or to 7 Closing Agent. If Buyer delivers the Earnest Money to Selling Broker, Selling Broker will deposit any check to be held by 8 Selling Firm, or deliver any Earnest Money to be held by Closing Agent, within 3 days of receipt or mutual acceptance, 9 whichever occurs later. If the Earnest Money is held by Selling Firm and is over $10,000.00 it shall be deposited into an 10 interest bearing trust account in Selling Firm's name provided that Buyer completes an IRS Form W-9. Interest, if any, 11 after deduction of bank charges and fees, will be paid to Buyer. Buyer shall reimburse Selling Firm for bank charges 12 and fees in excess of the interest earned, if any. If the Earnest Money held by Selling Firm is over $10,000.00 Buyer 13 has the option to require Selling Firm to deposit the Earnest Money into the Housing Trust Fund Account, with the 14 interest paid to the State Treasurer, if both Seller and Buyer so agree in writing. If the Buyer does not complete an IRS 15 Form W-9 before Selling Firm must deposit the Earnest Money or the Earnest Money is $10,000.00 or less, the Earnest 16 Money shall be deposited into the Housing Trust Fund Account. Selling Firm may transfer the Earnest Money to Closing 17 Agent at Closing. If all or part of the Earnest Money is to be refunded to Buyer and any such costs remain unpaid, the 18 Selling Firm or Closing Agent may deduct and pay them therefrom. The parties instruct Closing Agent to provide written 19 verification of receipt of the Earnest Money and notice of dishonor of any check to the parties and Brokers at the 20 addresses and/or fax numbers provided herein. 21

Upon termination of this Agreement, a party or the Closing Agent may deliver a form authorizing the release of Earnest 22 Money to the other party or the parties. The party(s) shall execute such form and deliver the same to the Closing Agent. 23 If either party fails to execute the release form, a party may make a written demand to the Closing Agent for the Earnest 24 Money. Pursuant to RCW 64.04, Closing Agent shall deliver notice of the demand to the other party within 15 days. If 25 the other party does not object to the demand within 20 days of Closing Agent's notice, Closing Agent shall disburse the 26 Earnest Money to the party making the demand within 10 days of the expiration of the 20 day period. If Closing Agent 27 timely receives an objection or an inconsistent demand from the other party, Closing Agent shall commence an 28 interpleader action within 60 days of such objection or inconsistent demand, unless the parties provide subsequent 29 consistent instructions to Closing Agent to disburse the earnest money or refrain from commencing an interpleader 30 action for a specified period of time. Pursuant to RCW 4.28.080, the parties consent to service of the summons and 31 complaint for an interpleader action by first class mail, postage prepaid at the party's usual mailing address or the 32 address identified in this Agreement. If the Closing Agent complies with the preceding process, each party shall be 33 deemed to have released Closing Agent from any and all claims or liability related to the disbursal of the Earnest 34 Money. If either party fails to authorize the release of the Earnest Money to the other party when required to do so 35 under this Agreement, that party shall be in breach of this Agreement. For the purposes of this section, the term Closing 36 Agent includes a Selling Firm holding the Earnest Money. The parties authorize the party commencing an interpleader 37 action to deduct up to $500.00 for the costs thereof. 38

**c. Included Items.** Any of the following items, including items identified in Specific Term No. 5 if the corresponding box is 39 checked, located in or on the Property are included in the sale: built-in appliances; wall-to-wall carpeting; curtains, 40 drapes and all other window treatments; window and door screens; awnings; storm doors and windows; installed 41 television antennas; ventilating, air conditioning and heating fixtures; trash compactor; fireplace doors, gas logs and gas 42 log lighters; irrigation fixtures; electric garage door openers; water heaters; installed electrical fixtures; lighting fixtures; 43 shrubs, plants and trees planted in the ground; and other fixtures; and all associated operating remote controls. Unless 44 otherwise agreed, if any of the above items are leased or encumbered, Seller shall acquire clear title before Closing. 45

**d. Condition of Title.** Unless otherwise specified in this Agreement, title to the Property shall be marketable at Closing. 46 The following shall not cause the title to be unmarketable: rights, reservations, covenants, conditions and restrictions, 47 presently of record and general to the area; easements and encroachments, not materially affecting the value of or 48 unduly interfering with Buyer's reasonable use of the Property; and reserved oil and/or mining rights. Seller shall not 49 convey or reserve any oil and/or mineral rights after mutual acceptance without Buyer's written consent. Monetary 50 encumbrances or liens not assumed by Buyer, shall be paid or discharged by Seller on or before Closing. Title shall be 51 conveyed by a Statutory Warranty Deed. If this Agreement is for conveyance of a buyer's interest in a Real Estate 52 Contract, the Statutory Warranty Deed shall include a buyer's assignment of the contract sufficient to convey after 53 acquired title. 54

**e. Title Insurance.** Seller authorizes Buyer's lender or Closing Agent, at Seller's expense, to apply for the then-current 55 ALTA form of Homeowner's Policy of Title Insurance for One-to-Four Family Residence, from the Title Insurance 56 Company. If Seller previously received a preliminary commitment from a Title Insurance Company that Buyer declines 57 to use, Buyer shall pay any cancellation fees owing to the original Title Insurance Company. Otherwise, the party 58 applying for title insurance shall pay any title cancellation fee, if the event such a fee is assessed. If the Title Insurance 59

| *ajg* 05/21/2020 | *SL* 05/21/2020 | *EBAS* 05/19/2020 | |
|---|---|---|---|
| Buyer's Initials          Date | Buyer's Initials          Date | Seller's Initials          Date | Seller's Initials          Date |

Authentisign ID: 0C44A9D5-BAAF-4AC3-95E7-760BE675AC1F

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## RESIDENTIAL REAL ESTATE PURCHASE AND SALE AGREEMENT
### GENERAL TERMS
*Continued*

Company selected by the parties will not issue a Homeowner's Policy for the Property, the parties agree that the Title 60
Insurance Company shall instead issue the then-current ALTA standard form Owner's Policy, together with 61
homeowner's additional protection and inflation protection endorsements, if available. The Title Insurance Company 62
shall send a copy of the preliminary commitment to Seller, Listing Broker, Buyer and Selling Broker. The preliminary 63
commitment, and the title policy to be issued, shall contain no exceptions other than the General Exclusions and 64
Exceptions in the Policy and Special Exceptions consistent with the Condition of Title herein provided. If title cannot be 65
made so insurable prior to the Closing Date, then as Buyer's sole and exclusive remedy, the Earnest Money shall, 66
unless Buyer elects to waive such defects or encumbrances, be refunded to the Buyer, less any unpaid costs described 67
in this Agreement, and this Agreement shall thereupon be terminated. Buyer shall have no right to specific performance 68
or damages as a consequence of Seller's inability to provide insurable title. 69

f. **Closing and Possession.** This sale shall be closed by the Closing Agent on the Closing Date. If the Closing Date falls 70
on a Saturday, Sunday, legal holiday as defined in RCW 1.16.050, or day when the county recording office is closed, 71
the Closing Agent shall close the transaction on the next day that is not a Saturday, Sunday, legal holiday, or day when 72
the county recording office is closed. "Closing" means the date on which all documents are recorded and the sale 73
proceeds are available to Seller. Seller shall deliver keys and garage door remotes to Buyer on the Closing Date or on 74
the Possession Date, whichever occurs first. Buyer shall be entitled to possession at 9:00 p.m. on the Possession Date. 75
Seller shall maintain the Property in its present condition, normal wear and tear excepted, until the Buyer is provided 76
possession. Seller shall either repair or replace any system or appliance (including, but not limited to plumbing, heat, 77
electrical, and all Included Items) that becomes inoperative or malfunctions prior to Closing with a system or appliance 78
of at least equal quality. Buyer reserves the right to walk through the Property within 5 days of Closing to verify that 79
Seller has maintained the Property and systems/appliances as required by this paragraph. Seller shall not enter into or 80
modify existing leases or rental agreements, service contracts, or other agreements affecting the Property which have 81
terms extending beyond Closing without first obtaining Buyer's consent, which shall not be unreasonably withheld. If 82
possession transfers at a time other than Closing, the parties shall execute NWMLS Form 65A (Rental 83
Agreement/Occupancy Prior to Closing) or NWMLS Form 65B (Rental Agreement/Seller Occupancy After Closing) (or 84
alternative rental agreements) and are advised of the need to contact their respective insurance companies to assure 85
appropriate hazard and liability insurance policies are in place, as applicable. 86

RCW 19.27.530 requires the seller of any owner-occupied single-family residence to equip the residence with a carbon 87
monoxide alarm(s) in accordance with the state building code before a buyer or any other person may legally occupy 88
the residence following the sale. RCW 43.44.110 requires the seller of a dwelling unit, that does not have at least one 89
smoke detection device, to provide at least one smoke detection device in the unit before the buyer or any other person 90
occupies the unit following a sale. The parties acknowledge that the Brokers are not responsible for ensuring that Seller 91
complies with RCW 19.27.530 or RCW 43.44.110. Buyer and Seller shall hold the Brokers and their Firms harmless 92
from any claim resulting from Seller's failure to install a carbon monoxide alarm(s) or smoke detector(s) in the Property. 93

g. **Section 1031 Like-Kind Exchange.** If either Buyer or Seller intends for this transaction to be a part of a Section 1031 94
like-kind exchange, then the other party shall cooperate in the completion of the like-kind exchange so long as the 95
cooperating party incurs no additional liability in doing so, and so long as any expenses (including attorneys' fees and 96
costs) incurred by the cooperating party that are related only to the exchange are paid or reimbursed to the cooperating 97
party at or prior to Closing. Notwithstanding the Assignment paragraph of this Agreement, any party completing a 98
Section 1031 like-kind exchange may assign this Agreement to its qualified intermediary or any entity set up for the 99
purposes of completing a reverse exchange. 100

h. **Closing Costs and Prorations and Charges and Assessments.** Seller and Buyer shall each pay one-half of the 101
escrow fee unless otherwise required by applicable FHA or VA regulations. Taxes for the current year, rent, interest, 102
and lienable homeowner's association dues shall be prorated as of Closing. Buyer shall pay Buyer's loan costs, 103
including credit report, appraisal charge and lender's title insurance, unless provided otherwise in this Agreement. If any 104
payments are delinquent on encumbrances which will remain after Closing, Closing Agent is instructed to pay such 105
delinquencies at Closing from money due, or to be paid by, Seller. Buyer shall pay for remaining fuel in the fuel tank if, 106
prior to Closing, Seller obtains a written statement from the supplier as to the quantity and current price and provides 107
such statement to the Closing Agent. Seller shall pay all utility charges, including unbilled charges. Unless waived in 108
Specific Term No. 12, Seller and Buyer request the services of Closing Agent in disbursing funds necessary to satisfy 109
unpaid utility charges in accordance with RCW 60.80 and Seller shall provide the names and addresses of all utilities 110
providing service to the Property and having lien rights (attach NWMLS Form 22K Identification of Utilities or 111
equivalent). 112

Buyer is advised to verify the existence and amount of any local improvement district, capacity or impact charges or 113
other assessments that may be charged against the Property before or after Closing. Seller will pay such charges that 114
are or become due on or before Closing. Charges levied before Closing, but becoming due after Closing shall be paid 115
as agreed in Specific Term No. 13. 116

| *asg* 05/21/2020 | *SL* 05/21/2020 | *εmas* 05/19/2020 | |
|---|---|---|---|
| Buyer's Initials   Date | Buyer's Initials   Date | Seller's Initials   Date | Seller's Initials   Date |

Authentisign ID: 0C44A9D5-BAAF-4AC3-95E7-760BEG75AC1F

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## RESIDENTIAL REAL ESTATE PURCHASE AND SALE AGREEMENT
### GENERAL TERMS
*Continued*

**i.** **Sale Information.** Listing Broker and Selling Broker are authorized to report this Agreement (including price and all terms) to the Multiple Listing Service that published it and to its members, financing institutions, appraisers, and anyone else related to this sale. Buyer and Seller expressly authorize all Closing Agents, appraisers, title insurance companies, and others related to this Sale, to furnish the Listing Broker and/or Selling Broker, on request, any and all information and copies of documents concerning this sale. 117 118 119 120 121

**j.** **Seller Citizenship and FIRPTA.** Seller warrants that the identification of Seller's citizenship status for purposes of U.S. income taxation in Specific Term No. 14 is correct. Seller shall execute a certification (NWMLS Form 22E or equivalent) under the Foreign Investment in Real Property Tax Act ("FIRPTA") at Closing and provide the certification to the Closing Agent. If Seller is a foreign person for purposes of U.S. income taxation, and this transaction is not otherwise exempt from FIRPTA, Closing Agent is instructed to withhold and pay the required amount to the Internal Revenue Service. 122 123 124 125 126

**k.** **Notices and Delivery of Documents.** Any notice related to this Agreement (including revocations of offers or counteroffers) must be in writing. Notices to Seller must be signed by at least one Buyer and shall be deemed delivered only when the notice is received by Seller, by Listing Broker, or at the licensed office of Listing Broker. Notices to Buyer must be signed by at least one Seller and shall be deemed delivered only when the notice is received by Buyer, by Selling Broker, or at the licensed office of Selling Broker. Documents related to this Agreement, such as NWMLS Form 17, Information on Lead-Based Paint and Lead-Based Paint Hazards, Public Offering Statement or Resale Certificate, and all other documents shall be delivered pursuant to this paragraph. Buyer and Seller must keep Selling Broker and Listing Broker advised of their whereabouts in order to receive prompt notification of receipt of a notice. 127 128 129 130 131 132 133 134

Facsimile transmission of any notice or document shall constitute delivery. E-mail transmission of any notice or document (or a direct link to such notice or document) shall constitute delivery when: (i) the e-mail is sent to both Selling Broker and Selling Firm or both Listing Broker and Listing Firm at the e-mail addresses specified on page one of this Agreement; or (ii) Selling Broker or Listing Broker provide written acknowledgment of receipt of the e-mail (an automatic e-mail reply does not constitute written acknowledgment). At the request of either party, or the Closing Agent, the parties will confirm facsimile or e-mail transmitted signatures by signing an original document. 135 136 137 138 139 140

**l.** **Computation of Time.** Unless otherwise specified in this Agreement, any period of time measured in days and stated in this Agreement shall start on the day following the event commencing the period and shall expire at 9:00 p.m. of the last calendar day of the specified period of time. Except for the Possession Date, if the last day is a Saturday, Sunday or legal holiday as defined in RCW 1.16.050, the specified period of time shall expire on the next day that is not a Saturday, Sunday or legal holiday. Any specified period of 5 days or less, except for any time period relating to the Possession Date, shall not include Saturdays, Sundays or legal holidays. If the parties agree that an event will occur on a specific calendar date, the event shall occur on that date, except for the Closing Date, which, if it falls on a Saturday, Sunday, legal holiday as defined in RCW 1.16.050, or day when the county recording office is closed, shall occur on the next day that is not a Saturday, Sunday, legal holiday, or day when the county recording office is closed. If the parties agree upon and attach a legal description after this Agreement is signed by the offeree and delivered to the offeror, then for the purposes of computing time, mutual acceptance shall be deemed to be on the date of delivery of an accepted offer or counteroffer to the offeror, rather than on the date the legal description is attached. Time is of the essence of this Agreement. 141 142 143 144 145 146 147 148 149 150 151 152

**m.** **Integration and Electronic Signatures.** This Agreement constitutes the entire understanding between the parties and supersedes all prior or contemporaneous understandings and representations. No modification of this Agreement shall be effective unless agreed in writing and signed by Buyer and Seller. The parties acknowledge that a signature in electronic form has the same legal effect and validity as a handwritten signature. 153 154 155 156

**n.** **Assignment.** Buyer may not assign this Agreement, or Buyer's rights hereunder, without Seller's prior written consent, unless the parties indicate that assignment is permitted by the addition of "and/or assigns" on the line identifying the Buyer on the first page of this Agreement. 157 158 159

**o.** **Default.** In the event Buyer fails, without legal excuse, to complete the purchase of the Property, then the following provision, as identified in Specific Term No. 8, shall apply: 160 161

    **i.** **Forfeiture of Earnest Money.** That portion of the Earnest Money that does not exceed five percent (5%) of the Purchase Price shall be forfeited to the Seller as the sole and exclusive remedy available to Seller for such failure. 162 163

    **ii.** **Seller's Election of Remedies.** Seller may, at Seller's option, (a) keep the Earnest Money as liquidated damages as the sole and exclusive remedy available to Seller for such failure, (b) bring suit against Buyer for Seller's actual damages, (c) bring suit to specifically enforce this Agreement and recover any incidental damages, or (d) pursue any other rights or remedies available at law or equity. 164 165 166 167

**p.** **Professional Advice and Attorneys' Fees.** Buyer and Seller are advised to seek the counsel of an attorney and a certified public accountant to review the terms of this Agreement. Buyer and Seller shall pay their own fees incurred for such review. However, if Buyer or Seller institutes suit against the other concerning this Agreement, or if the party holding the Earnest Money commences an interpleader action, the prevailing party is entitled to reasonable attorneys' fees and expenses. 168 169 170 171 172

| *asg* 05/21/2020 | *SL* 05/21/2020 | *εBas* 05/19/2020 | |
|---|---|---|---|
| Buyer's Initials    Date | Buyer's Initials    Date | Seller's Initials    Date | Seller's Initials    Date |

Authentisign ID: 0C44A9D5-BAAF-4AC3-95E7-760BE675AC1F

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## RESIDENTIAL REAL ESTATE PURCHASE AND SALE AGREEMENT
### GENERAL TERMS
*Continued*

**q. Offer.** This offer must be accepted by 9:00 p.m. on the Offer Expiration Date, unless sooner withdrawn. Acceptance 173
shall not be effective until a signed copy is received by the other party, by the other party's broker, or at the licensed 174
office of the other party's broker pursuant to General Term k. If this offer is not so accepted, it shall lapse and any 175
Earnest Money shall be refunded to Buyer. 176

**r. Counteroffer.** Any change in the terms presented in an offer or counteroffer, other than the insertion of or change to 177
Seller's name and Seller's warranty of citizenship status, shall be considered a counteroffer. If a party makes a 178
counteroffer, then the other party shall have until 9:00 p.m. on the counteroffer expiration date to accept that 179
counteroffer, unless sooner withdrawn. Acceptance shall not be effective until a signed copy is received by the other 180
party, the other party's broker, or at the licensed office of the other party's broker pursuant to General Term k. If the 181
counteroffer is not so accepted, it shall lapse and any Earnest Money shall be refunded to Buyer. 182

**s. Offer and Counteroffer Expiration Date.** If no expiration date is specified for an offer/counteroffer, the 183
offer/counteroffer shall expire 2 days after the offer/counteroffer is delivered by the party making the offer/counteroffer, 184
unless sooner withdrawn. 185

**t. Agency Disclosure.** Selling Firm, Selling Firm's Designated Broker, Selling Broker's Branch Manager (if any) and 186
Selling Broker's Managing Broker (if any) represent the same party that Selling Firm represents. Listing Firm, Listing 187
Firm's Designated Broker, Listing Broker's Branch Manager (if any), and Listing Broker's Managing Broker (if any) 188
represent the same party that the Listing Broker represents. If Selling Broker and Listing Broker are different persons 189
affiliated with the same Firm, then both Buyer and Seller confirm their consent to Designated Broker, Branch Manager 190
(if any), and Managing Broker (if any) representing both parties as dual agents. If Selling Broker and Listing Broker are 191
the same person representing both parties then both Buyer and Seller confirm their consent to that person and his/her 192
Designated Broker, Branch Manager (if any), and Managing Broker (if any) representing both parties as dual agents. All 193
parties acknowledge receipt of the pamphlet entitled "The Law of Real Estate Agency." 194

**u. Commission.** Seller and Buyer shall pay a commission in accordance with any listing or commission agreement to 195
which they are a party. The Listing Firm's commission shall be apportioned between Listing Firm and Selling Firm as 196
specified in the listing. Seller and Buyer hereby consent to Listing Firm or Selling Firm receiving compensation from 197
more than one party. Seller and Buyer hereby assign to Listing Firm and Selling Firm, as applicable, a portion of their 198
funds in escrow equal to such commission(s) and irrevocably instruct the Closing Agent to disburse the commission(s) 199
directly to the Firm(s). In any action by Listing or Selling Firm to enforce this paragraph, the prevailing party is entitled to 200
court costs and reasonable attorneys' fees. Seller and Buyer agree that the Firms are intended third party beneficiaries 201
under this Agreement. 202
*05/21/2020*

**v. Cancellation Rights/Lead-Based Paint.** If a residential dwelling was built on the Property prior to 1978, and Buyer 203
receives a Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards (NWMLS Form 22J) after 204
mutual acceptance, Buyer may rescind this Agreement at any time up to 3 days thereafter. [*SL*] *05/19/2020* 205
*aJG*

**w. Information Verification Period.** Buyer shall have 0 days after mutual acceptance to verify all information provided 206
from Seller or Listing Firm related to the Property. This contingency shall be deemed satisfied unless Buyer gives notice 207
identifying the materially inaccurate information within 0 days of mutual acceptance. If Buyer gives timely notice under 208
this section, then this Agreement shall terminate and the Earnest Money shall be refunded to Buyer. [*SL*] *05/21/2020* 209
*05/21/2020* *EBAS* *05/19/2020*

**x. Property Condition Disclaimer.** Buyer and Seller agree, that except as provided in this Agreement, all representations 210
and information regarding the Property and the transaction are solely from the Seller or Buyer, and not from any Broker. 211
The parties acknowledge that the Brokers are not responsible for assuring that the parties perform their obligations 212
under this Agreement and that none of the Brokers has agreed to independently investigate or confirm any matter 213
related to this transaction except as stated in this Agreement, or in a separate writing signed by such Broker. In 214
addition, Brokers do not guarantee the value, quality or condition of the Property and some properties may contain 215
building materials, including siding, roofing, ceiling, insulation, electrical, and plumbing, that have been the subject of 216
lawsuits and/or governmental inquiry because of possible defects or health hazards. Some properties may have other 217
defects arising after construction, such as drainage, leakage, pest, rot and mold problems. Brokers do not have the 218
expertise to identify or assess defective products, materials, or conditions. Buyer is urged to use due diligence to 219
inspect the Property to Buyer's satisfaction and to retain inspectors qualified to identify the presence of defective 220
materials and evaluate the condition of the Property as there may be defects that may only be revealed by careful 221
inspection. Buyer is advised to investigate whether there is a sufficient water supply to meet Buyer's needs. Buyer is 222
advised to investigate the cost of insurance for the Property, including, but not limited to homeowner's, flood, 223
earthquake, landslide, and other available coverage. Buyer acknowledges that local ordinances may restrict short term 224
rentals of the Property. Buyer and Seller acknowledge that home protection plans may be available which may provide 225
additional protection and benefit to Buyer and Seller. Brokers may assist the parties with locating and selecting third 226
party service providers, such as inspectors or contractors, but Brokers cannot guarantee or be responsible for the 227
services provided by those third parties. The parties shall exercise their own judgment and due diligence regarding 228
third-party service providers. 229

[*aJG*] 05/21/2020    [*SL*] 05/21/2020    [*EBAS*] 05/19/2020    _____

| Buyer's Initials | Date | Buyer's Initials | Date | Seller's Initials | Date | Seller's Initials | Date |

Authentisign ID: 0C44A9D5-BAAF-4AC3-95E7-760BEG75AC1F

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**INSPECTION ADDENDUM TO PURCHASE AND SALE AGREEMENT**

The following is part of the Purchase and Sale Agreement dated __May 15, 2020__ 1

between __Ahmet Tayfun Gurbuz__ __Stephanie Lehwald Gurbuz__ ("Buyer") 2
<span style="font-size:small">Buyer</span>      <span style="font-size:small">Buyer</span>

VS Investment Assoc, by and through Elliott Bay Asset Solutions, LLC, as Court Appointed Receiver
and _____ ("Seller") 3
<span style="font-size:small">Seller</span>      <span style="font-size:small">Seller</span>

concerning 2469 __S College St__ __Seattle__ __WA__ __98144__ (the "Property"). 4
<span style="font-size:small">Address</span>    <span style="font-size:small">City</span>    <span style="font-size:small">State</span>    <span style="font-size:small">Zip</span>

1. ☐ **a. INSPECTION CONTINGENCY.** This Agreement is conditioned on Buyer's subjective satisfaction with 5
inspections of the Property and the improvements on the Property. Buyer's inspections may include, at 6
Buyer's option and without limitation, the structural, mechanical and general condition of the 7
improvements to the Property, compliance with building and zoning codes, an inspection of the Property 8
for hazardous materials, a pest inspection, and a soils/stability inspection. The inspection must be 9
performed by Buyer or a person licensed (or exempt from licensing) under Chapter 18.280 RCW. 10

**Sewer Inspection.** Buyer's inspection of the Property ☐ may; ☐ may not (may, if not checked) include 11
an inspection of the sewer system, which may include a sewer line video inspection and assessment and 12
may require the inspector to remove toilets or other fixtures to access the sewer line. 13

**Buyer's Obligations.** All inspections are to be (a) ordered by Buyer, (b) performed by inspectors of 14
Buyer's choice, and (c) completed at Buyer's expense. Buyer shall not alter the Property or any 15
improvements on the Property without first obtaining Seller's permission. Buyer is solely responsible for 16
interviewing and selecting all inspectors. Buyer shall restore the Property and all improvements on the 17
Property to the same condition they were in prior to the inspection. Buyer shall be responsible for all 18
damages resulting from any inspection of the Property performed on Buyer's behalf. 19

**BUYER'S NOTICE.** This inspection contingency SHALL CONCLUSIVELY BE DEEMED WAIVED unless 20
within _____ days (10 days if not filled in) after mutual acceptance of this Agreement (the "Initial 21
Inspection Period"), Buyer gives notice (1) approving the inspection and waiving this contingency; (2) 22
disapproving the inspection and terminating the Agreement; (3) that Buyer will conduct additional 23
inspections; or (4) proposing repairs to the property or modifications to the Agreement. If Buyer disapproves 24
the inspection and terminates the Agreement, the Earnest Money shall be refunded to Buyer. If Buyer 25
proposes repairs to the property or modifications to the Agreement, including adjustments to the purchase 26
price or credits for repairs to be performed after Closing, the parties shall negotiate as set forth in paragraph 27
1.c, below. The parties may use NWMLS Form 35R to give notices required by this Addendum. 28

**ATTENTION BUYER:** If Buyer fails to give timely notice, then this inspection contingency shall be 29
deemed waived and Seller shall not be obligated to make any repairs or modifications. Buyer shall not 30
provide the inspection report, or portions of the report, to Seller, unless Seller requests otherwise or as 31
required by paragraph 1.b. 32

**b. Additional Inspections.** If an inspector so recommends, Buyer may obtain further evaluation of any item 33
by a specialist at Buyer's option and expense if, on or before the end of the Initial Inspection Period, 34
Buyer provides Seller a copy of the inspector's recommendation and notice that Buyer will seek additional 35
inspections. If Buyer gives timely notice of additional inspections, Buyer shall have _____ (5 days if 36
not filled in) after giving the notice to obtain the additional inspection(s) by a specialist. 37

**c. Buyer's Requests for Repairs or Modifications.** If Buyer requests repairs or modifications under 38
paragraph 1.a. or 1.b., the parties shall negotiate as set forth in this paragraph. Buyer's initial request and 39
Seller's response made in accordance with the following procedures are irrevocable for the time period 40
provided. 41

**(i) Seller's Response to Request for Repairs or Modifications.** Seller shall have _____ days (3 42
days if not filled in) after receipt of Buyer's request for repairs or modifications to give notice that Seller 43
(a) agrees to the repairs or modifications proposed by Buyer; (b) agrees to some of the repairs or 44
modifications proposed by Buyer; (c) rejects all repairs or modifications proposed by Buyer; or (d) 45
offers different or additional repairs or modifications. If Seller agrees to the terms of Buyer's request for 46
repairs or modifications, this contingency shall be satisfied and Buyer's Reply shall not be necessary. If 47

| _aₜG_ 05/21/2020 | _SL_ 05/21/2020 | _εℬₐₛ_ 05/19/2020 | |
|---|---|---|---|
| Buyer's Initials   Date | Buyer's Initials   Date | Seller's Initials   Date | Seller's Initials   Date |

Authentisign ID: 0C44A9D5-BAAF-4AC3-95E7-760BE675AC1F

Form 35
Inspection Addendum
Rev. 7/19
Page 2 of 2

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## INSPECTION ADDENDUM TO PURCHASE AND SALE AGREEMENT
*Continued*

Seller does not agree to all of Buyer's repairs or modifications, Buyer shall have an opportunity to 48
reply, as follows: 49

(ii) **Buyer's Reply.** If Seller does not agree to all of the repairs or modifications proposed by Buyer, Buyer 50
shall have _____ days (3 days if not filled in) from either the day Buyer receives Seller's response 51
or, if Seller fails to timely respond, the day Seller's response period ends, whichever is earlier, to (a) 52
accept the Seller's response at which time this contingency shall be satisfied; (b) agree with the Seller 53
on other remedies; or (c) disapprove the inspection and terminate the Agreement, in which event, the 54
Earnest Money shall be refunded to Buyer. 55

**ATTENTION BUYER:** These time periods for negotiating repairs or modifications shall not repeat. The 56
parties must either reach a written agreement or Buyer must terminate this Agreement by the Buyer's 57
Reply deadline set forth in paragraph 1.c.ii. Buyer's inaction during Buyer's reply period shall result in 58
waiver of this inspection condition, in which case Seller shall not be obligated to make any repairs or 59
modifications whatsoever AND THIS CONTINGENCY SHALL BE DEEMED WAIVED. 60

d. **Repairs.** If Seller agrees to make the repairs proposed by Buyer, then repairs shall be accomplished at 61
Seller's expense in a commercially reasonable manner and in accordance with all applicable laws no 62
fewer than _____ days (3 days if not filled in) prior to the Closing Date. In the case of hazardous 63
materials, "repair" means removal or treatment (including but not limited to removal or, at Seller's option, 64
decommissioning of any oil storage tanks) of the hazardous material at Seller's expense as 65
recommended by and under the direction of a professional selected by Seller. Seller's repairs are subject 66
to re-inspection and approval, prior to Closing, by the inspector who recommended the repair, if Buyer 67
elects to order and pay for such re-inspection. If Buyer agrees to pay for any repairs prior to Closing, the 68
parties are advised to seek the counsel of an attorney to review the terms of that agreement. 69

e. **Oil Storage Tanks.** Any inspection regarding oil storage tanks or contamination from such tanks shall be 70
limited solely to determining the presence or non-presence of oil storage tanks on the Property, unless 71
otherwise agreed in writing by Buyer and Seller. 72

f. **On-site Sewage Disposal Systems Advisory:** Buyer is advised that on-site sewage disposal systems, 73
including "septic systems," are subject to strict governmental regulation and occasional malfunction and 74
even failure. Buyer is advised to consider conducting an inspection of any on-site sewage system in 75
addition to the inspection of the Property provided by this Form 35 by including an appropriate on-site 76
sewage disposal inspection contingency such as NWMLS Form 22S (Septic Addendum). 77

2. ☐ **NEIGHBORHOOD REVIEW CONTINGENCY:** Buyer's inspection includes Buyer's subjective satisfaction that 78
the conditions of the neighborhood in which the Property is located are consistent with Buyer's intended 79
use of the Property (the "Neighborhood Review"). The Neighborhood Review may include Buyer's investigation 80
of the schools, proximity to bus lines, availability of shopping, traffic patterns, noise, parking and investigation of 81
other neighborhood, environmental and safety conditions the Buyer may determine to be relevant in deciding to 82
purchase the Property. If Buyer does not give notice of disapproval of the Neighborhood Review within 83
_____ (3 days if not filled in) of mutual acceptance of the Agreement, then this Neighborhood Review 84
condition shall conclusively be deemed satisfied (waived). If Buyer gives a timely notice of disapproval, then 85
this Agreement shall terminate and the Earnest Money shall be refunded to Buyer. 86

3. ☐ **PREINSPECTION CONDUCTED.** Buyer, prior to mutual acceptance of this Agreement, conducted a 87
building, hazardous substances, building and zoning code, pest or soils/stability inspection of the Property, 88
and closing of this Agreement is not conditioned on the results of such inspections. Buyer elects to buy the 89
Property in its present condition and acknowledges that the decision to purchase the property was based on 90
Buyer's prior inspection and that Buyer has not relied on representations by Seller, Listing Broker or Selling 91
Broker. 92

4. ☑ **WAIVER OF INSPECTION.** Buyer has been advised to obtain a building, hazardous substances, building 93
and zoning code, pest or soils/stability inspection, and to condition the closing of this Agreement on the 94
results of such inspections, but Buyer elects to waive the right and buy the Property in its present condition. 95
Buyer acknowledges that the decision to waive Buyer's inspection options was based on Buyer's personal 96
inspection and Buyer has not relied on representations by Seller, Listing Broker or Selling Broker. 97



| *aʃç* 05/21/2020 | *SL* 05/21/2020 | *ɛʙɑs* 05/19/2020 | |
|---|---|---|---|
| Buyer's Initials    Date | Buyer's Initials    Date | Seller's Initials    Date | Seller's Initials    Date |

Authentisign ID: 0C44A9D5-BAAF-4AC3-B5E7-760BE675AC1F

Form 22A
Financing Addendum
Rev. 7/19
Page 1 of 3

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**FINANCING ADDENDUM TO
PURCHASE & SALE AGREEMENT**

The following is part of the Purchase and Sale Agreement dated ___ May 15, 2020 _____ 1

between ___ Ahmet Tayfun Gurbuz _____ Stephanie Lehwald Gurbuz _____ ("Buyer") 2
              *Buyer*                               *Buyer*

and VS Investment Assoc, by and through Elliott Bay Asset Solutions, LLC, as Court Appointed Receiver _____ ("Seller") 3
      *Seller*                                        *Seller*

concerning 2469    S College St            Seattle        WA  98144     (the "Property"). 4
       *Address*                               *City*           *State*   *Zip*

**1. LOAN APPLICATION/WAIVER OF CONTINGENCY.**                                             5

     a. **Loan Application.** This Agreement is contingent on Buyer obtaining the following type of loan or loans to 6
        purchase the Property (the "Loan(s)"): ☑ Conventional First; ☐ Conventional Second; ☐ Bridge; ☐ VA; ☐ FHA; 7
        ☐ USDA; ☐ Home Equity Line of Credit; ☐ Other _____ 8
        (the "Financing Contingency"). Buyer shall pay ☐ $ _____; or ☑ __30__ % of the Purchase 9
        Price down, in addition to the Loans. Buyer shall make application for the Loans to pay the balance of the 10
        Purchase Price and pay the application fee, if required, for the subject Property within _____ days (5 11
        days if not filled in) after mutual acceptance of this Agreement. For the purposes of this Addendum, 12
        "application" means the submission of Buyer's financial information for the purposes of obtaining an extension 13
        of credit including Buyer's name, income, social security number (if required), the Property address, purchase 14
        price, and the loan amount. 15

     b. **Waiver of Contingency.** If Buyer (i) fails to make application for financing for the Property within 16
        the agreed time; (ii) changes the type of loan at any time without Seller's prior written consent; or (iii) changes 17
        the lender without Seller's prior written consent after the agreed upon time to apply for financing expires, then 18
        the Financing Contingency shall be deemed waived. Buyer's waiver of the Financing Contingency under this 19
        Paragraph 1(b) also constitutes waiver of Paragraph 7 (Appraisal Less Than Sales Price). For purposes of 20
        this Addendum, "lender" means either the party to whom the application was submitted or the party funding 21
        the loan. 22

**2. LOAN INFORMATION.**                                 23

     a. **Seller's Request for Loan Information.** At any time _____ days (10 days if not filled in) after mutual 24
        acceptance, Seller may give, once, a notice requesting information related to the status of Buyer's loan 25
        application ("Request for Loan Information"). NWMLS Form 22AL may be used for this notice. 26

     b. **Buyer's Loan Information Notice.** Within _____ days (3 days if not filled in) of receiving Seller's Request 27
        for Loan Information, Buyer shall give notice of the status of Buyer's loan application ("Loan Information 28
        Notice"). Buyer's notice shall be on NWMLS Form 22AP and shall include the date of application, the name 29
        of lender, a list of the information that Buyer has provided to lender, and a warranty that Buyer has provided 30
        all information requested by lender. 31

     c. **Failure to Provide Loan Information Notice.** If Buyer fails to timely give to Seller a completed Loan 32
        Information Notice, Seller may give the Right to Terminate Notice described in Paragraph 3 (Seller's Right to 33
        Terminate) at any time after the date that the Loan Information Notice is due. 34

**3. SELLER'S RIGHT TO TERMINATE.**                                 35

     a. **Right to Terminate Notice.** At any time _____ days (30 days if not filled in) after mutual acceptance, 36
        Seller may give notice that Seller may terminate the Agreement at any time 3 days after delivery of that notice 37
        (the "Right to Terminate Notice"). NWMLS Form 22AR may be used for this notice. 38

     b. **Termination Notice.** If Buyer has not previously waived the Financing Contingency, Seller may give notice of 39
        termination of this Agreement (the "Termination Notice") any time following 3 days after delivery of the Right 40
        to Terminate Notice. If Seller gives the Termination Notice before Buyer has waived the Financing 41
        Contingency, this Agreement is terminated and the Earnest Money shall be refunded to Buyer. NWMLS Form 42
        22AR shall be used for this notice. If not waived, the Financing Contingency shall survive the Closing Date. 43

     c. **Appraisal Less Than Sales Price.** Buyer's waiver of the Financing Contingency under this Paragraph 3 ☐ will; 44
        or ☐ will not (will, if not filled in) constitute waiver of Paragraph 7 (Appraisal Less Than Sales Price). 45

*ATG* 05/21/2020      *SL* 05/21/2020      *ebas* 05/19/2020

Buyer's Initials   Date    Buyer's Initials   Date    Seller's Initials   Date    Seller's Initials   Date

Authentisign ID: 0C44A9D5-BAAF-4AC3-95E7-760BE675AC1F

Form 22A
Financing Addendum
Rev. 7/19
Page 2 of 3

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**FINANCING ADDENDUM TO
PURCHASE & SALE AGREEMENT**
*Continued*

**4. LOAN COST PROVISIONS.** Seller shall pay up to ☐ $ _____; or ☐ _____ % of the Purchase 46
Price ($0.00 if not filled in), which shall be applied to Buyer's Loan(s) and settlement costs, including prepaids, loan 47
discount, loan fee, interest buy down, financing, closing or other costs allowed by lender. That amount shall include 48
the following costs that lender is prohibited from collecting from Buyer: (a) up to $300.00 for Buyer's Loan(s) and 49
settlement costs for FHA/USDA/VA loans; and (b) unless agreed otherwise below, Buyer's share of the escrow fee 50
for a VA loan. Seller shall pay the costs for (a) and (b), even if the amount agreed upon in this Paragraph 4 is 51
insufficient to pay for those costs. If checked, ☐ Buyer shall pay Buyer's share of the escrow fee for the VA loan 52
(note that VA regulations prohibit Buyer from paying loan and settlement costs exceeding one percent of the amount 53
of the loan). 54

**5. EARNEST MONEY.** If Buyer has not waived the Financing Contingency, and is unable to obtain financing by 55
Closing after a good faith effort then, on Buyer's notice, this Agreement shall terminate. The Earnest Money shall 56
be refunded to Buyer after lender confirms in writing (a) the date Buyer's loan application for the Property was 57
made, including a copy of the loan estimate that was provided to Buyer; (b) that Buyer possessed sufficient funds 58
to close (e.g. down payment, closing costs, etc.); and (c) the reasons Buyer was unable to obtain financing by 59
Closing. If Seller terminates this Agreement, the Earnest Money shall be refunded without need for such 60
confirmation. 61

**6. INSPECTION.** Seller shall permit inspections required by lender, including but not limited to structural, pest, 62
heating, plumbing, roof, electrical, septic, and well inspections. Seller is not obligated to pay for such inspections 63
unless otherwise agreed. 64

**7. APPRAISAL LESS THAN SALE PRICE.** 65
  **a. Notice of Low Appraisal.** If lender's appraised value of the Property is less than the Purchase Price, Buyer 66
  may, within 3 days after receipt of a copy of lender's appraisal, give notice of low appraisal, which shall 67
  include a copy of lender's appraisal. NWMLS Form 22AN may be used for the notices in this Paragraph 7. 68
  **b. Seller's Response.** Seller shall, within 10 days after Buyer's notice of low appraisal, give notice of: 69
    **(i)** A reappraisal or reconsideration of value, at Seller's expense, by the same appraiser or another appraiser 70
    acceptable to lender, in an amount not less than the Purchase Price. Buyer shall promptly seek lender's 71
    approval of such reappraisal or reconsideration of value. The parties are advised that lender may elect 72
    not to accept a reappraisal or reconsideration of value; 73
    **(ii)** Seller's consent to reduce the Purchase Price to an amount not more than the amount specified in the 74
    appraisal or reappraisal by the same appraiser, or an appraisal by another appraiser acceptable to 75
    lender, whichever is higher. (This provision is not applicable if this Agreement is conditioned on FHA, VA, 76
    or USDA financing. FHA, VA, and USDA financing does not permit the Buyer to be obligated to buy if the 77
    Seller reduces the Purchase Price to the appraised value. Buyer, however, has the option to buy at the 78
    reduced price.); 79
    **(iii)** Seller's proposal to reduce the Purchase Price to an amount more than the amount specified in the 80
    appraisal and for Buyer to pay the necessary additional funds (the amount the reduced Purchase Price 81
    exceeds the appraised value) to close the sale; or 82
    **(iv)** Seller's rejection of Buyer's notice of low appraisal. 83

  If Seller timely delivers notice of (i) reappraisal or reconsideration of value; or (ii) consent to reduce the 84
  Purchase Price to an amount not more than the amount specified in the appraisal (except for FHA, VA, or 85
  USDA financing), and lender accepts Seller's response, then Buyer shall be bound by Seller's response. 86

  **c. Buyer's Reply.** 87
    **(i)** Buyer shall have 3 days from either Seller's notice of rejection of low appraisal or, if Seller fails to respond, 88
    the day Seller's response period ends, whichever is earlier, to (a) waive the Financing Contingency; or (b) 89
    terminate the Agreement, in which event the Earnest Money shall be refunded to Buyer. 90
    **(ii)** If Seller proposes to reduce the Purchase Price to an amount more than the appraised value, Buyer shall 91
    have 3 days to (a) accept and represent that Buyer has sufficient funds to close the sale in accordance with 92
    this provision; or (b) terminate the Agreement, in which event the Earnest Money shall be refunded to Buyer. 93

| *asg* 05/21/2020 | *SL* 05/21/2020 | *ebas* 05/19/2020 | |
|---|---|---|---|
| Buyer's Initials Date | Buyer's Initials Date | Seller's Initials Date | Seller's Initials Date |

Authentisign ID: 0C44A9D5-BAAF-4AC3-95E7-760BE675AC1F

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

### FINANCING ADDENDUM TO
### PURCHASE & SALE AGREEMENT
*Continued*

**(iii)** If Seller consents to reduce the Purchase Price to an amount not more than the appraised value for FHA, 94
VA, or USDA financing, Buyer shall have 3 days to (a) give notice that Buyer will buy at the reduced price; 95
or (b) terminate the Agreement, in which event the Earnest Money shall be refunded to Buyer. 96

Buyer's inaction during this reply period shall result in termination of the Agreement and return of the Earnest 97
Money to Buyer. The Closing Date shall be extended as necessary to accommodate the foregoing times for 98
notices. 99

8. **FHA/VA/USDA – Appraisal Certificate.** If this Agreement is contingent on Buyer obtaining FHA, VA, or USDA 100
financing, notwithstanding any other provisions of this Agreement, Buyer is not obligated to complete the 101
purchase of the Property unless Buyer has been given in accordance with HUD/FHA, VA, or USDA requirements 102
a written statement by FHA, VA, USDA or a Direct Endorsement lender, setting forth the appraised value of the 103
Property (excluding closing costs). Seller and Buyer shall execute a document setting forth the prior provision, or 104
similar provision, known as the FHA, VA, or USDA amendatory clause, as required by lender. Buyer shall pay 105
the costs of any appraisal. If the appraised value of the Property is less than the Purchase Price, Paragraph 7 106
above shall apply. 107

**Purpose of Appraisal.** The appraised valuation is arrived at only to determine the maximum mortgage FHA, VA, 108
or USDA will insure. FHA, VA, or USDA do not warrant the value or the condition of the Property. Buyer agrees 109
to satisfy himself/herself that the price and condition of the Property are acceptable. 110

9. **EXTENSION OF CLOSING.** If, through no fault of Buyer, lender is required by 12 CFR 1026 to give corrected 111
disclosures to Buyer due to (a) a change in the Annual Percentage Rate ("APR") of Buyer's Loan(s) by .125% or 112
more for a fixed rate loan or .250% or more for an adjustable rate loan; (b) a change in the loan product; or (c) the 113
addition of a prepayment penalty, then upon notice from Buyer, the Closing Date shall be extended for up to 4 days 114
to accommodate the requirements of Regulation Z of the Truth in Lending Act. This paragraph shall survive Buyer's 115
waiver of this Financing Contingency. 116

| *asg* | 05/21/2020 | *SL* | 05/21/2020 | *esas* | 05/19/2020 | | |
|---|---|---|---|---|---|---|---|
| Buyer's Initials | Date | Buyer's Initials | Date | Seller's Initials | Date | Seller's Initials | Date |

Authentisign ID: 0C44A9D5-BAAF-4AC3-95E7-760BE675AC1F

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**OPTIONAL CLAUSES ADDENDUM TO
PURCHASE & SALE AGREEMENT**

The following is part of the Purchase and Sale Agreement dated ___**May 15, 2020**_____ 1

between ___**Ahmet Tayfun Gurbuz**_____ **Stephanie Lehwald Gurbuz**_____ ("Buyer") 2
         Buyer                              Buyer

and ___VS Investment Assoc, by and through Elliott Bay Asset Solutions, LLC, as Court Appointed Receiver_____("Seller") 3
         Seller                              Seller

concerning 2469  S College St         **Seattle**        **WA**  **98144**  (the "Property"). 4
          Address                   City              State    Zip

**CHECK IF INCLUDED:** 5

1. ☐  **Square Footage/Lot Size/Encroachments.** The Listing Broker and Selling Broker make no representations 6
    concerning: (a) the lot size or the accuracy of any information provided by the Seller; (b) the square footage of 7
    any improvements on the Property; (c) whether there are any encroachments (fences, rockeries, buildings) on 8
    the Property, or by the Property on adjacent properties. Buyer is advised to verify lot size, square footage and 9
    encroachments to Buyer's own satisfaction. 10

2.  **Title Insurance.** The Title Insurance clause in the Agreement provides Seller is to provide the then-current ALTA 11
    form of Homeowner's Policy of Title Insurance. The parties have the option to provide less coverage by selecting 12
    a Standard Owner's Policy or more coverage by selecting an Extended Coverage Policy: 13

    ☐  **Standard Owner's Coverage.** Seller authorizes Buyer's lender or Closing Agent, at Seller's expense, to 14
        apply for the then-current ALTA form of Owner's Policy of Title Insurance, together with homeowner's 15
        additional protection and inflation protection endorsements, if available at no additional cost, rather than 16
        the Homeowner's Policy of Title Insurance. 17

    ☐  **Extended Coverage.** Seller authorizes Buyer's lender or Closing Agent, at Seller's expense to apply for 18
        an ALTA or comparable Extended Coverage Policy of Title Insurance, rather than the Homeowner's 19
        Policy of Title Insurance. Buyer shall pay the increased costs associated with the Extended Coverage 20
        Policy, including the excess premium over that charged for Homeowner's Policy of Title Insurance and 21
        the cost of any survey required by the title insurer. 22

3. ☐  **Seller Cleaning.** Seller shall clean the interiors of any structures and remove all trash, debris and rubbish 23
    from the Property prior to Buyer taking possession. 24

4. ☐  **Personal Property.** Unless otherwise agreed, Seller shall remove all personal property from the Property 25
    not later than the Possession Date. Any personal property remaining on the Property thereafter shall become 26
    the property of Buyer, and may be retained or disposed of as Buyer determines. 27

5. ☐  **Utilities.** To the best of Seller's knowledge, Seller represents that the Property is connected to a: 28
    ☐ public water main; ☐ public sewer main; ☐ septic tank; ☐ well (specify type) _____; 29
    ☐ irrigation water (specify provider) _____; ☐ natural gas; ☐ telephone; 30
    ☐ cable; ☐ electricity; ☐ other _____. 31

6. ☐  **Insulation - New Construction.** If this is new construction, Federal Trade Commission Regulations require 32
    the following to be filled in. If insulation has not yet been selected, FTC regulations require Seller to furnish 33
    Buyer the information below in writing as soon as available: 34

    WALL INSULATION: TYPE: _____ THICKNESS: _____ R-VALUE: _____ 35

    CEILING INSULATION: TYPE: _____ THICKNESS: _____ R-VALUE: _____ 36

    OTHER INSULATION DATA: _____ 37

7. ☐  **Leased Property Review Period and Assumption.** Buyer acknowledges that Seller leases the following 38
    items of personal property that are included with the sale: ☐ propane tank; ☐ security system; ☐ satellite 39
    dish and operating equipment; ☐ other _____. 40

| *asg* 05/21/2020 | *SL* 05/21/2020 | *EBAS* 05/19/2020 | |
|---|---|---|---|
| Buyer's Initials   Date | Buyer's Initials   Date | Seller's Initials   Date | Seller's Initials   Date |

Authentisign ID: 0C44A9D5-BAAF-4AC3-95E7-760BE675AC1F

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## OPTIONAL CLAUSES ADDENDUM TO
## PURCHASE & SALE AGREEMENT
*Continued*

Seller shall provide Buyer a copy of the lease for the selected items within _____ days (5 days if not filled 41
in) of mutual acceptance. If Buyer, in Buyer's sole discretion, does not give notice of disapproval within 42
_____ days (5 days if not filled in) of receipt of the lease(s) or the date that the lease(s) are due, whichever 43
is earlier, then this lease review period shall conclusively be deemed satisfied (waived) and at Closing, Buyer 44
shall assume the lease(s) for the selected item(s) and hold Seller harmless from and against any further 45
obligation, liability, or claim arising from the lease(s), if the lease(s) can be assumed. If Buyer gives timely 46
notice of disapproval, then this Agreement shall terminate and the Earnest Money shall be refunded to Buyer. 47

8. ☐ **Homeowners' Association Review Period.** If the Property is subject to a homeowners' association or any 48
other association, then Seller shall, at Seller's expense, provide Buyer a copy of the following documents (if 49
available from the Association) within _____ days (10 days if not filled in) of mutual acceptance: 50

    a. Association rules and regulations, including, but not limited to architectural guidelines; 51
    b. Association bylaws and covenants, conditions, and restrictions (CC&Rs); 52
    c. Association meeting minutes from the prior two (2) years; 53
    d. Association Board of Directors meeting minutes from the prior six (6) months; and 54
    e. Association financial statements from the prior two (2) years and current operating budget. 55

If Buyer, in Buyer's sole discretion, does not give notice of disapproval within _____ days (5 days if not 56
filled in) of receipt of the above documents or the date that the above documents are due, whichever is 57
earlier, then this homeowners' association review period shall conclusively be deemed satisfied (waived). If 58
Buyer gives timely notice of disapproval, then this Agreement shall terminate and the Earnest Money shall be 59
refunded to Buyer. 60

9. ☐ **Homeowners' Association Transfer Fee.** If there is a transfer fee imposed by the homeowners' association 61
or any other association (e.g. a "move-in" or "move-out" fee), the fee shall be paid by the party as provided for 62
in the association documents. If the association documents do not provide which party pays the fee, the fee 63
shall be paid by ☐ Buyer; ☐ Seller (Seller if not filled in). 64

10. ☐ **Excluded Item(s).** The following item(s), that would otherwise be included in the sale of the Property, is 65
excluded from the sale ("Excluded Item(s)"). Seller shall repair any damage to the Property caused by the 66
removal of the Excluded Item(s). Excluded Item(s): 67

68
69

11. ☐ **Home Warranty.** Buyer and Seller acknowledge that home warranty plans are available which may provide 70
additional protection and benefits to Buyer and Seller. Buyer shall order a one-year home warranty as follows: 71

    a. Home warranty provider: _____ 72
    b. Seller shall pay up to $_____ ($0.00 if not filled in) of the cost for the home warranty, together 73
       with any included options, and Buyer shall pay any balance. 74
    c. Options to be included: _____ 75
    _____ (none, if not filled in). 76
    d. Other:_____. 77

12. ☐ **Other.** 78

79
80
81
82
83
84
85

| _aJG_ 05/21/2020 | _SL_ 05/21/2020 | _EBaS_ 05/19/2020 | |
|---|---|---|---|
| Buyer's Initials    Date | Buyer's Initials    Date | Seller's Initials    Date | Seller's Initials    Date |

Authentisign ID: 0C44A9D5-BAAF-4AC3-95E7-760BE675AC1F

Form 22K
Identification of Utilities Addendum
Rev. 7/19
Page 1 of 1

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**IDENTIFICATION OF UTILITIES
ADDENDUM TO PURCHASE AND SALE AGREEMENT**

The following is part of the Purchase and Sale Agreement dated __May 15, 2020__   1

between   **Ahmet Tayfun Gurbuz**     **Stephanie Lehwald Gurbuz**   ("Buyer")   2
<br>      Buyer             Buyer

and   VS Investment Assoc, by and through Elliott Bay Asset Solutions, LLC, as Court Appointed Receiver   ("Seller")   3
<br>     Seller                                Seller

concerning 2469   S College St     Seattle     WA   98144   (the "Property").   4
<br>     Address                 City         State    Zip

Pursuant to RCW 60.80, Buyer and Seller request the Closing Agent to administer the disbursement of closing funds 5
necessary to satisfy unpaid utility charges, if any, affecting the Property. The names and addresses of all utilities 6
providing service to the Property and having lien rights are as follows: 7

WATER DISTRICT:    **Seattle Public Utilities**   8
Name     e-mail or website (optional)   9
Address   10

SEWER DISTRICT:   City, State, Zip    Fax. No. (optional)   11
Name    e-mail or website (optional)   12
**Seattle Public Utilities** Address
City, State, Zip    Fax. No. (optional)   13

IRRIGATION DISTRICT:   Name    e-mail or website (optional)   14
Address   15
City, State, Zip    Fax. No. (optional)   16

GARBAGE:   **Seattle Public Utilities**   17
Name    e-mail or website (optional)   18
Address   19
City, State, Zip    Fax. No. (optional)   

ELECTRICITY:   **Seattle City Light**   20
Name    e-mail or website (optional)   21
Address   22
City, State, Zip    Fax. No. (optional)   23

GAS:   Name    e-mail or website (optional)   24
**Puget Sound Energy** Address
City, State, Zip    Fax. No. (optional)   25

SPECIAL DISTRICT(S):   26
(local improvement districts or Name    e-mail or website (optional)   27
utility local improvement districts) Address   28
City, State, Zip    Fax. No. (optional)   

If the above information has not been filled in at the time of mutual acceptance of this Agreement, then (1) 29
within _____ days (5 if not filled in) of mutual acceptance of this Agreement, Seller shall provide the Listing 30
Broker or Selling Broker with the names and addresses of all utility providers having lien rights affecting the Property 31
and (2) Buyer and Seller authorize Listing Broker or Selling Broker to insert into this Addendum the names and 32
addresses of the utility providers identified by Seller. 33

Nothing in this Addendum shall be construed to diminish or alter the Seller's obligation to pay all utility charges 34
(including unbilled charges). Buyer understands that the Listing Broker and Selling Broker are not responsible for, or 35
to insure payment of, Seller's utility charges. 36

*asg* 05/21/2020    *SL* 05/21/2020    *EBAS* 05/19/2020
Buyer's Initials   Date    Buyer's Initials   Date    Seller's Initials   Date    Seller's Initials   Date