Bountiful Law, PLLC
4620 200th Street SW, Ste D
Lynnwood, WA 98036
Telephone: (425) 775-9700
Facsimile: (425) 645-8088

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re: | Chapter 11 |
| V.S. INVESTMENT ASSOC., LLC, | NO. **20-11541** |
| | DECLARATION OF VALENTIN STELMAKH IN SUPPORT OF MOTION FOR ORDER APPROVING SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS |
| Debtor(s). | |

I, Valentin Stelmakh, declare:

1.    I am a member of V.S. Investment Assoc., LLC, a Washington limited liability company.  I am over the age of 18 years and am competent to testify herein. I am authorized to make this declaration, and do so from my own personal knowledge in support for the Motion for Order Approving Sale of Real Property Free and Clear of Liens filed by V.S. Investment Assoc., LLC ("V.S. Investment") in the above-captioned chapter 11 proceedings.

2.    V.S. Investment owns real property commonly known as 2465 S College Street, Seattle, WA 98144.  This property is one of a four-unit real estate development project completed by the Debtor on or around January 2020.

Declaration

3. All four units of the project are encumbered by the following liens in order of priority:

| Creditor | Recording Date | Approx Amount Due |
|---|---|---|
| BRMK Lending, LLC | 4/21/2016 | $4,236,395.95 |
| Paul Greben | 1/16/2020 | $ 598,500.00 |
| | 1/21/2020 amended | |
| Ecocline Exc. & Utilities LLC | 1/30/2020 | $ 137,205.00 |

The amount listed for BRMK Lending, LLC is based on the creditor's proof of claim filed in this case. V.S. Investment disagrees with this amount and intends to object to the proof of claim.

4. On October 23, 2019, I received an offer from Andrew Lew and Lin Lin to purchase the subject property for $625,000.00. (*See* ECF No 27-2, Declaration of Stuart Heath, Exhibit D). At that time, I believed the offer was lower than market value. However, I accepted this offer on behalf of V.S. Investment after being pressured by representatives of BRMK Lending, LLC who ensured me it would accept a lesser amount in full satisfaction of its lien.

5. Shortly after accepting offer, representatives of BRMK Lending, LLC told me it needed to put V.S. Investments Assoc. LLC into a receivership so it could cancel the real estate contract. A receiver was eventually appointed in King County Superior Court Case No. 20-20-01947-2 SEA.

6. On May 15, 2020, on behalf of V.S. Investment, the receiver entered into a real estate purchase and sale agreement for the subject property with Ahmet and Stephanie Gurbuz. (*See* ECF No. 27, Declaration of Stewart Heath). The offer accepted by the receiver was $625,000.

7. V.S. Investment filed this case May 29, 2020 primarily to stop the receiver from selling assets of the company for less than market value.

Declaration

Bountiful Law, PLLC
4620 200th St. SW, Ste D
Lynnwood, WA 98036
(425)775-9700; Fax (425)633-2465

8.     On June 30, 2020, V.S. Investment engaged the services of Shawn Perry as real estate agent for the bankruptcy estate. This court approved the application to appoint Shawn on July 2, 2020. Shawn listed the property for sale the same day.

9.     On August 23, 2020, I received an offer to purchase for $749,950.00 from Charlene McBride. A true and correct copy of said agreement is attached to this declaration as Exhibit A and incorporated herein by reference. This is $124,950 more than any previous offer received. I believe Mrs. McBride's offer to be the best offer for the property.

10.    V.S. Investment is seeking authority to sell said property free and clear of liens, and to pay first position Deed of Trust of BRMK Lending, LLC, remaining proceeds after all costs of closing, including real estate commissions, taxes, United States Trustee fees and other closing costs.

I certify under penalty of perjury according to the laws of the United States of America the foregoing is true and correct to the best of my knowledge.

Dated this 25th day of August, 2020

By: /s/ Valentin Stelmakh
Valentin Stelmakh, Member
V.S. Investment Assoc., LLC

Declaration

Bountiful Law, PLLC
4620 200th St. SW, Ste D
Lynnwood, WA 98036
(425)775-9700; Fax (425)633-2465

# EXHIBIT A

Authentisign ID: 606C5574-51AF-4B29-9C71-DB5D06182210

Form 21
Residential Purchase & Sale Agreement
Rev. 7/19
Page 1 of 5

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## RESIDENTIAL REAL ESTATE PURCHASE AND SALE AGREEMENT
### SPECIFIC TERMS

1. **Date:** August 23, 2020     **MLS No.:** 1619471     **Offer Expiration Date:** 8/24/2020

2. **Buyer:** Charlene McBride

   _Buyer_ _____ _Buyer_

3. **Seller:** ~~Stelmakhr~~ VS Investment Associates, LLC     _VS_ 08/24/2020     _VS_ 08/24/2020     _CM_

   _Seller_ _____ _Seller_     08/24/2020

4. **Property:** Legal Description attached as Exhibit A.  Tax Parcel No(s).: 1594600091 ____ ____ ____

   2465     S College Street     Seattle     King     WA     98144
   _Address_     _City_     _County_     _State_     _Zip_

5. **Included Items:** ☑ stove/range; ☑ refrigerator; ☐ washer; ☐ dryer; ☑ dishwasher; ☐ hot tub; ☐ fireplace insert;
   ☐ wood stove; ☐ satellite dish; ☐ security system; ☐ attached television(s); ☐ attached speaker(s); ☑ microwave;
   ☐ generator; ☑ other Garbage Disposal

6. **Purchase Price:** $ 749,950.00     **Seven Hundred Forty-Nine Thousand Nine Hundred Fifty**     Dollars

7. **Earnest Money:** $ 10,000.00     ☐ Check; ☐ Note; ☑ Other check or wire     (held by ☐ Selling Firm; ☑ Closing Agent)

8. **Default:** (check only one) ☑ Forfeiture of Earnest Money; ☐ Seller's Election of Remedies

9. **Title Insurance Company:** First American Title     _VS_ 08/24/2020     _VS_ 08/24/2020

10. **Closing Agent:** First American Escrow     ~~Lory Mitchell~~ Michael Santucci     _CM_
    _Company_     _Individual (optional)_     08/24/2020

11. **Closing Date:** 9/29/2020     ; **Possession Date:** ☑ on Closing; ☐ Other

12. **Services of Closing Agent for Payment of Utilities:** ☑ Requested (attach NWMLS Form 22K); ☐ Waived

13. **Charges/Assessments Levied Before but Due After Closing:** ☐ assumed by Buyer; ☑ prepaid in full by Seller at Closing

14. **Seller Citizenship (FIRPTA):** Seller ☐ is; ☒ is not a foreign person for purposes of U.S. income taxation

15. **Agency Disclosure:** Selling Broker represents: ☑ Buyer; ☐ Seller; ☐ both parties; ☐ neither party
    Listing Broker represents: ☑ Seller; ☐ both parties

16. **Addenda:** 22A(Financing)     22D(Optional Clauses)     22K(Utilities)     22T(Title Contingency)
    35(Inspection)

FIRPTA

_Charlene McBride_ (Authentisign)     08/23/2020
Buyer's Signature     Date

_Valentin Stelmakh_ (Authentisign)     08/24/2020
Seller's Signature     Date

_Victoria Stelmakh_     08/24/2020
Seller's Signature     Date

Buyer's Signature     Date

Buyer's Address

City, State, Zip
512-903-0180
Phone No.     Fax No.
charline.mcbride@gmail.com
Buyer's E-mail Address

The Preview Group     3336
Selling Firm     MLS Office No.
Patty Funnell     100567
Selling Broker (Print)     MLS LAG No.
(425) 488-6000     (425) 238-2198     (425) 487-1710
Firm Phone No.     Broker Phone No.     Firm Fax No.
bothell@previewgroupnw.com
Selling Firm Document E-mail Address
patty.funnell@gmail.com
Selling Broker's E-mail Address
116863     24296
Selling Broker DOL License No.     Selling Firm DOL License No.

Seller's Address

City, State, Zip
(206) 458-8201
Phone No.     Fax No.

Seller's E-mail Address

Windermere RE North, Inc.     7370
Listing Firm     MLS Office No.
Shawn Perry     41437
Listing Broker (Print)     MLS LAG No.
(425) 776-1119     (425) 772-6172     (425) 776-5680
Firm Phone No.     Broker Phone No.     Firm Fax No.
lynnwoodcontracts@windermere.com
Listing Firm Document E-mail Address
shawnperry@windermere.com
Listing Broker's E-mail Address
76461     3415
Listing Broker DOL License No.     Listing Firm DOL License No.

AuthentiSign ID: 606C5574-51AF-4B29-9C71-DB5D06182210

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## RESIDENTIAL REAL ESTATE PURCHASE AND SALE AGREEMENT
### GENERAL TERMS
*Continued*

**a. Purchase Price.** Buyer shall pay to Seller the Purchase Price, including the Earnest Money, in cash at Closing, unless 1
otherwise specified in this Agreement. Buyer represents that Buyer has sufficient funds to close this sale in accordance 2
with this Agreement and is not relying on any contingent source of funds, including funds from loans, the sale of other 3
property, gifts, retirement, or future earnings, except to the extent otherwise specified in this Agreement. The parties 4
shall use caution when wiring funds to avoid potential wire fraud. Before wiring funds, the party wiring funds shall take 5
steps to confirm any wire instructions via an independently verified phone number and other appropriate measures. 6

**b. Earnest Money.** Buyer shall deliver the Earnest Money within 2 days after mutual acceptance to Selling Broker or to 7
Closing Agent. If Buyer delivers the Earnest Money to Selling Broker, Selling Broker will deposit any check to be held by 8
Selling Firm, or deliver any Earnest Money to be held by Closing Agent, within 3 days of receipt or mutual acceptance, 9
whichever occurs later. If the Earnest Money is held by Selling Firm and is over $10,000.00 it shall be deposited into an 10
interest bearing trust account in Selling Firm's name provided that Buyer completes an IRS Form W-9. Interest, if any, 11
after deduction of bank charges and fees, will be paid to Buyer. Buyer shall reimburse Selling Firm for bank charges 12
and fees in excess of the interest earned, if any. If the Earnest Money held by Selling Firm is over $10,000.00 Buyer 13
has the option to require Selling Firm to deposit the Earnest Money into the Housing Trust Fund Account, with the 14
interest paid to the State Treasurer, if both Seller and Buyer so agree in writing. If the Buyer does not complete an IRS 15
Form W-9 before Selling Firm must deposit the Earnest Money or the Earnest Money is $10,000.00 or less, the Earnest 16
Money shall be deposited into the Housing Trust Fund Account. Selling Firm may transfer the Earnest Money to Closing 17
Agent at Closing. If all or part of the Earnest Money is to be refunded to Buyer and any such costs remain unpaid, the 18
Selling Firm or Closing Agent may deduct and pay them therefrom. The parties instruct Closing Agent to provide written 19
verification of receipt of the Earnest Money and notice of dishonor of any check to the parties and Brokers at the 20
addresses and/or fax numbers provided herein. 21

Upon termination of this Agreement, a party or the Closing Agent may deliver a form authorizing the release of Earnest 22
Money to the other party or the parties. The party(s) shall execute such form and deliver the same to the Closing Agent. 23
If either party fails to execute the release form, a party may make a written demand to the Closing Agent for the Earnest 24
Money. Pursuant to RCW 64.04, Closing Agent shall deliver notice of the demand to the other party within 15 days. If 25
the other party does not object to the demand within 20 days of Closing Agent's notice, Closing Agent shall disburse the 26
Earnest Money to the party making the demand within 10 days of the expiration of the 20 day period. If Closing Agent 27
timely receives an objection or an inconsistent demand from the other party, Closing Agent shall commence an 28
interpleader action within 60 days of such objection or inconsistent demand, unless the parties provide subsequent 29
consistent instructions to Closing Agent to disburse the earnest money or refrain from commencing an interpleader 30
action for a specified period of time. Pursuant to RCW 4.28.080, the parties consent to service of the summons and 31
complaint for an interpleader action by first class mail, postage prepaid at the party's usual mailing address or the 32
address identified in this Agreement. If the Closing Agent complies with the preceding process, each party shall be 33
deemed to have released Closing Agent from any and all claims or liability related to the disbursal of the Earnest 34
Money. If either party fails to authorize the release of the Earnest Money to the other party when required to do so 35
under this Agreement, that party shall be in breach of this Agreement. For the purposes of this section, the term Closing 36
Agent includes a Selling Firm holding the Earnest Money. The parties authorize the party commencing an interpleader 37
action to deduct up to $500.00 for the costs thereof. 38

**c. Included Items.** Any of the following items, including items identified in Specific Term No. 5 if the corresponding box is 39
checked, located in or on the Property are included in the sale: built-in appliances; wall-to-wall carpeting; curtains, 40
drapes and all other window treatments; window and door screens; awnings; storm doors and windows; installed 41
television antennas; ventilating, air conditioning and heating fixtures; trash compactor; fireplace doors, gas logs and gas 42
log lighters; irrigation fixtures; electric garage door openers; water heaters; installed electrical fixtures; lighting fixtures; 43
shrubs, plants and trees planted in the ground; and other fixtures; and all associated operating remote controls. Unless 44
otherwise agreed, if any of the above items are leased or encumbered, Seller shall acquire clear title before Closing. 45

**d. Condition of Title.** Unless otherwise specified in this Agreement, title to the Property shall be marketable at Closing. 46
The following shall not cause the title to be unmarketable: rights, reservations, covenants, conditions and restrictions, 47
presently of record and general to the area; easements and encroachments, not materially affecting the value of or 48
unduly interfering with Buyer's reasonable use of the Property; and reserved oil and/or mining rights. Seller shall not 49
convey or reserve any oil and/or mineral rights after mutual acceptance without Buyer's written consent. Monetary 50
encumbrances or liens not assumed by Buyer, shall be paid or discharged by Seller on or before Closing. Title shall be 51
conveyed by a Statutory Warranty Deed. If this Agreement is for conveyance of a buyer's interest in a Real Estate 52
Contract, the Statutory Warranty Deed shall include a buyer's assignment of the contract sufficient to convey after 53
acquired title. 54

**e. Title Insurance.** Seller authorizes Buyer's lender or Closing Agent, at Seller's expense, to apply for the then-current 55
ALTA form of Homeowner's Policy of Title Insurance for One-to-Four Family Residence, from the Title Insurance 56
Company. If Seller previously received a preliminary commitment from a Title Insurance Company that Buyer declines 57
to use, Buyer shall pay any cancellation fees owing to the original Title Insurance Company. Otherwise, the party 58
applying for title insurance shall pay any title cancellation fee, in the event such a fee is assessed. If the Title Insurance 59

| *cm* 08/23/2020 | | | *VS* 08/24/2020 | | *VS* 08/24/2020 | |
|---|---|---|---|---|---|---|
| Buyer's Initials | Date | | Seller's Initials | Date | Seller's Initials | Date |

Authentisign ID: 606C5574-51AF-4B29-9C71-DB5D06182210

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## RESIDENTIAL REAL ESTATE PURCHASE AND SALE AGREEMENT
### GENERAL TERMS
*Continued*

Company selected by the parties will not issue a Homeowner's Policy for the Property, the parties agree that the Title 60
Insurance Company shall instead issue the then-current ALTA standard form Owner's Policy, together with 61
homeowner's additional protection and inflation protection endorsements, if available. The Title Insurance Company 62
shall send a copy of the preliminary commitment to Seller, Listing Broker, Buyer and Selling Broker. The preliminary 63
commitment, and the title policy to be issued, shall contain no exceptions other than the General Exclusions and 64
Exceptions in the Policy and Special Exceptions consistent with the Condition of Title herein provided. If title cannot be 65
made so insurable prior to the Closing Date, then as Buyer's sole and exclusive remedy, the Earnest Money shall, 66
unless Buyer elects to waive such defects or encumbrances, be refunded to the Buyer, less any unpaid costs described 67
in this Agreement, and this Agreement shall thereupon be terminated. Buyer shall have no right to specific performance 68
or damages as a consequence of Seller's inability to provide insurable title. 69

f.  **Closing and Possession.** This sale shall be closed by the Closing Agent on the Closing Date. If the Closing Date falls 70
on a Saturday, Sunday, legal holiday as defined in RCW 1.16.050, or day when the county recording office is closed, 71
the Closing Agent shall close the transaction on the next day that is not a Saturday, Sunday, legal holiday, or day when 72
the county recording office is closed. "Closing" means the date on which all documents are recorded and the sale 73
proceeds are available to Seller. Seller shall deliver keys and garage door remotes to Buyer on the Closing Date or on 74
the Possession Date, whichever occurs first. Buyer shall be entitled to possession at 9:00 p.m. on the Possession Date. 75
Seller shall maintain the Property in its present condition, normal wear and tear excepted, until the Buyer is provided 76
possession. Seller shall either repair or replace any system or appliance (including, but not limited to plumbing, heat, 77
electrical, and all Included Items) that becomes inoperative or malfunctions prior to Closing with a system or appliance 78
of at least equal quality. Buyer reserves the right to walk through the Property within 5 days of Closing to verify that 79
Seller has maintained the Property and systems/appliances as required by this paragraph. Seller shall not enter into or 80
modify existing leases or rental agreements, service contracts, or other agreements affecting the Property which have 81
terms extending beyond Closing without first obtaining Buyer's consent, which shall not be unreasonably withheld. If 82
possession transfers at a time other than Closing, the parties shall execute NWMLS Form 65A (Rental 83
Agreement/Occupancy Prior to Closing) or NWMLS Form 65B (Rental Agreement/Seller Occupancy After Closing) (or 84
alternative rental agreements) and are advised of the need to contact their respective insurance companies to assure 85
appropriate hazard and liability insurance policies are in place, as applicable. 86

RCW 19.27.530 requires the seller of any owner-occupied single-family residence to equip the residence with a carbon 87
monoxide alarm(s) in accordance with the state building code before a buyer or any other person may legally occupy 88
the residence following the sale. RCW 43.44.110 requires the seller of a dwelling unit, that does not have at least one 89
smoke detection device, to provide at least one smoke detection device in the unit before the buyer or any other person 90
occupies the unit following a sale. The parties acknowledge that the Brokers are not responsible for ensuring that Seller 91
complies with RCW 19.27.530 or RCW 43.44.110. Buyer and Seller shall hold the Brokers and their Firms harmless 92
from any claim resulting from Seller's failure to install a carbon monoxide alarm(s) or smoke detector(s) in the Property. 93

g.  **Section 1031 Like-Kind Exchange.** If either Buyer or Seller intends for this transaction to be a part of a Section 1031 94
like-kind exchange, then the other party shall cooperate in the completion of the like-kind exchange so long as the 95
cooperating party incurs no additional liability in doing so, and so long as any expenses (including attorneys' fees and 96
costs) incurred by the cooperating party that are related only to the exchange are paid or reimbursed to the cooperating 97
party at or prior to Closing. Notwithstanding the Assignment paragraph of this Agreement, any party completing a 98
Section 1031 like-kind exchange may assign this Agreement to its qualified intermediary or any entity set up for the 99
purposes of completing a reverse exchange. 100

h.  **Closing Costs and Prorations and Charges and Assessments.** Seller and Buyer shall each pay one-half of the 101
escrow fee unless otherwise required by applicable FHA or VA regulations. Taxes for the current year, rent, interest, 102
and lienable homeowner's association dues shall be prorated as of Closing. Buyer shall pay Buyer's loan costs, 103
including credit report, appraisal charge and lender's title insurance, unless provided otherwise in this Agreement. If any 104
payments are delinquent on encumbrances which will remain after Closing, Closing Agent is instructed to pay such 105
delinquencies at Closing from money due, or to be paid by, Seller. Buyer shall pay for remaining fuel in the fuel tank if, 106
prior to Closing, Seller obtains a written statement from the supplier as to the quantity and current price and provides 107
such statement to the Closing Agent. Seller shall pay all utility charges, including unbilled charges. Unless waived in 108
Specific Term No. 12, Seller and Buyer request the services of Closing Agent in disbursing funds necessary to satisfy 109
unpaid utility charges in accordance with RCW 60.80 and Seller shall provide the names and addresses of all utilities 110
providing service to the Property and having lien rights (attach NWMLS Form 22K Identification of Utilities or 111
equivalent). 112

Buyer is advised to verify the existence and amount of any local improvement district, capacity or impact charges or 113
other assessments that may be charged against the Property before or after Closing. Seller will pay such charges that 114
are or become due on or before Closing. Charges levied before Closing, but becoming due after Closing shall be paid 115
as agreed in Specific Term No. 13. 116

| *Cm* 08/23/2020 | | | *VS* 08/24/2020 | | *VS* 08/24/2020 | |
|---|---|---|---|---|---|---|
| Buyer's Initials | Date | Buyer's Initials | Date | Seller's Initials | Date | Seller's Initials | Date |

Authentisign ID: 606C5574-51AF-4B29-9C71-DB5D06182210

Form 21
Residential Purchase & Sale Agreement
Rev. 7/19
Page 4 of 5

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## RESIDENTIAL REAL ESTATE PURCHASE AND SALE AGREEMENT
### GENERAL TERMS
*Continued*

**i.** **Sale Information.** Listing Broker and Selling Broker are authorized to report this Agreement (including price and all terms) to the Multiple Listing Service that published it and to its members, financing institutions, appraisers, and anyone else related to this sale. Buyer and Seller expressly authorize all Closing Agents, appraisers, title insurance companies, and others related to this Sale, to furnish the Listing Broker and/or Selling Broker, on request, any and all information and copies of documents concerning this sale. 117 118 119 120 121

**j.** **Seller Citizenship and FIRPTA.** Seller warrants that the identification of Seller's citizenship status for purposes of U.S. income taxation in Specific Term No. 14 is correct. Seller shall execute a certification (NWMLS Form 22E or equivalent) under the Foreign Investment in Real Property Tax Act ("FIRPTA") at Closing and provide the certification to the Closing Agent. If Seller is a foreign person for purposes of U.S. income taxation, and this transaction is not otherwise exempt from FIRPTA, Closing Agent is instructed to withhold and pay the required amount to the Internal Revenue Service. 122 123 124 125 126

**k.** **Notices and Delivery of Documents.** Any notice related to this Agreement (including revocations of offers or counteroffers) must be in writing. Notices to Seller must be signed by at least one Buyer and shall be deemed delivered only when the notice is received by Seller, by Listing Broker, or at the licensed office of Listing Broker. Notices to Buyer must be signed by at least one Seller and shall be deemed delivered only when the notice is received by Buyer, by Selling Broker, or at the licensed office of Selling Broker. Documents related to this Agreement, such as NWMLS Form 17, Information on Lead-Based Paint and Lead-Based Paint Hazards, Public Offering Statement or Resale Certificate, and all other documents shall be delivered pursuant to this paragraph. Buyer and Seller must keep Selling Broker and Listing Broker advised of their whereabouts in order to receive prompt notification of receipt of a notice. 127 128 129 130 131 132 133 134

Facsimile transmission of any notice or document shall constitute delivery. E-mail transmission of any notice or document (or a direct link to such notice or document) shall constitute delivery when: (i) the e-mail is sent to both Selling Broker and Selling Firm or both Listing Broker and Listing Firm at the e-mail addresses specified on page one of this Agreement; or (ii) Selling Broker or Listing Broker provide written acknowledgment of receipt of the e-mail (an automatic e-mail reply does not constitute written acknowledgment). At the request of either party, or the Closing Agent, the parties will confirm facsimile or e-mail transmitted signatures by signing an original document. 135 136 137 138 139 140

**l.** **Computation of Time.** Unless otherwise specified in this Agreement, any period of time measured in days and stated in this Agreement shall start on the day following the event commencing the period and shall expire at 9:00 p.m. of the last calendar day of the specified period of time. Except for the Possession Date, if the last day is a Saturday, Sunday or legal holiday as defined in RCW 1.16.050, the specified period of time shall expire on the next day that is not a Saturday, Sunday or legal holiday. Any specified period of 5 days or less, except for any time period relating to the Possession Date, shall not include Saturdays, Sundays or legal holidays. If the parties agree that an event will occur on a specific calendar date, the event shall occur on that date, except for the Closing Date, which, if it falls on a Saturday, Sunday, legal holiday as defined in RCW 1.16.050, or day when the county recording office is closed, shall occur on the next day that is not a Saturday, Sunday, legal holiday, or day when the county recording office is closed. If the parties agree upon and attach a legal description after this Agreement is signed by the offeree and delivered to the offeror, then for the purposes of computing time, mutual acceptance shall be deemed to be on the date of delivery of an accepted offer or counteroffer to the offeror, rather than on the date the legal description is attached. Time is of the essence of this Agreement. 141 142 143 144 145 146 147 148 149 150 151 152

**m.** **Integration and Electronic Signatures.** This Agreement constitutes the entire understanding between the parties and supersedes all prior or contemporaneous understandings and representations. No modification of this Agreement shall be effective unless agreed in writing and signed by Buyer and Seller. The parties acknowledge that a signature in electronic form has the same legal effect and validity as a handwritten signature. 153 154 155 156

**n.** **Assignment.** Buyer may not assign this Agreement, or Buyer's rights hereunder, without Seller's prior written consent, unless the parties indicate that assignment is permitted by the addition of "and/or assigns" on the line identifying the Buyer on the first page of this Agreement. 157 158 159

**o.** **Default.** In the event Buyer fails, without legal excuse, to complete the purchase of the Property, then the following provision, as identified in Specific Term No. 8, shall apply: 160 161

    **i.** **Forfeiture of Earnest Money.** That portion of the Earnest Money that does not exceed five percent (5%) of the Purchase Price shall be forfeited to the Seller as the sole and exclusive remedy available to Seller for such failure. 162 163

    **ii.** **Seller's Election of Remedies.** Seller may, at Seller's option, (a) keep the Earnest Money as liquidated damages as the sole and exclusive remedy available to Seller for such failure, (b) bring suit against Buyer for Seller's actual damages, (c) bring suit to specifically enforce this Agreement and recover any incidental damages, or (d) pursue any other rights or remedies available at law or equity. 164 165 166 167

**p.** **Professional Advice and Attorneys' Fees.** Buyer and Seller are advised to seek the counsel of an attorney and a certified public accountant to review the terms of this Agreement. Buyer and Seller shall pay their own fees incurred for such review. However, if Buyer or Seller institutes suit against the other concerning this Agreement, or if the party holding the Earnest Money commences an interpleader action, the prevailing party is entitled to reasonable attorneys' fees and expenses. 168 169 170 171 172

| *Cm* 08/23/2020 | _____ | *VS* 08/24/2020 | *VS* 08/24/2020 |
|---|---|---|---|
| Buyer's Initials   Date | Buyer's Initials   Date | Seller's Initials   Date | Seller's Initials   Date |

Authentisign ID: 606C5574-51AF-4B29-9C71-DB5D06182210

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## RESIDENTIAL REAL ESTATE PURCHASE AND SALE AGREEMENT
### GENERAL TERMS
*Continued*

**q.** **Offer.** This offer must be accepted by 9:00 p.m. on the Offer Expiration Date, unless sooner withdrawn. Acceptance 173
shall not be effective until a signed copy is received by the other party, by the other party's broker, or at the licensed 174
office of the other party's broker pursuant to General Term k. If this offer is not so accepted, it shall lapse and any 175
Earnest Money shall be refunded to Buyer. 176

**r.** **Counteroffer.** Any change in the terms presented in an offer or counteroffer, other than the insertion of or change to 177
Seller's name and Seller's warranty of citizenship status, shall be considered a counteroffer. If a party makes a 178
counteroffer, then the other party shall have until 9:00 p.m. on the counteroffer expiration date to accept that 179
counteroffer, unless sooner withdrawn. Acceptance shall not be effective until a signed copy is received by the other 180
party, the other party's broker, or at the licensed office of the other party's broker pursuant to General Term k. If the 181
counteroffer is not so accepted, it shall lapse and any Earnest Money shall be refunded to Buyer. 182

**s.** **Offer and Counteroffer Expiration Date.** If no expiration date is specified for an offer/counteroffer, the 183
offer/counteroffer shall expire 2 days after the offer/counteroffer is delivered by the party making the offer/counteroffer, 184
unless sooner withdrawn. 185

**t.** **Agency Disclosure.** Selling Firm, Selling Firm's Designated Broker, Selling Broker's Branch Manager (if any) and 186
Selling Broker's Managing Broker (if any) represent the same party that Selling Broker represents. Listing Firm, Listing 187
Firm's Designated Broker, Listing Broker's Branch Manager (if any), and Listing Broker's Managing Broker (if any) 188
represent the same party that the Listing Broker represents. If Selling Broker and Listing Broker are different persons 189
affiliated with the same Firm, then both Buyer and Seller confirm their consent to Designated Broker, Branch Manager 190
(if any), and Managing Broker (if any) representing both parties as dual agents. If Selling Broker and Listing Broker are 191
the same person representing both parties then both Buyer and Seller confirm their consent to that person and his/her 192
Designated Broker, Branch Manager (if any), and Managing Broker (if any) representing both parties as dual agents. All 193
parties acknowledge receipt of the pamphlet entitled "The Law of Real Estate Agency." 194

**u.** **Commission.** Seller and Buyer shall pay a commission in accordance with any listing or commission agreement to 195
which they are a party. The Listing Firm's commission shall be apportioned between Listing Firm and Selling Firm as 196
specified in the listing. Seller and Buyer hereby consent to Listing Firm or Selling Firm receiving compensation from 197
more than one party. Seller and Buyer hereby assign to Listing Firm and Selling Firm, as applicable, a portion of their 198
funds in escrow equal to such commission(s) and irrevocably instruct the Closing Agent to disburse the commission(s) 199
directly to the Firm(s). In any action by Listing or Selling Firm to enforce this paragraph, the prevailing party is entitled to 200
court costs and reasonable attorneys' fees. Seller and Buyer agree that the Firms are intended third party beneficiaries 201
under this Agreement. 202

**v.** **Cancellation Rights/Lead-Based Paint.** If a residential dwelling was built on the Property prior to 1978, and Buyer 203
receives a Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards (NWMLS Form 22J) after 204
mutual acceptance, Buyer may rescind this Agreement at any time up to 3 days thereafter. 205

**w.** **Information Verification Period.** Buyer shall have 10 days after mutual acceptance to verify all information provided 206
from Seller or Listing Firm related to the Property. This contingency shall be deemed satisfied unless Buyer gives notice 207
identifying the materially inaccurate information within 10 days of mutual acceptance. If Buyer gives timely notice under 208
this section, then this Agreement shall terminate and the Earnest Money shall be refunded to Buyer. 209

**x.** **Property Condition Disclaimer.** Buyer and Seller agree, that except as provided in this Agreement, all representations 210
and information regarding the Property and the transaction are solely from the Seller or Buyer, and not from any Broker. 211
The parties acknowledge that the Brokers are not responsible for assuring that the parties perform their obligations 212
under this Agreement and that none of the Brokers has agreed to independently investigate or confirm any matter 213
related to this transaction except as stated in this Agreement, or in a separate writing signed by such Broker. In 214
addition, Brokers do not guarantee the value, quality or condition of the Property and some properties may contain 215
building materials, including siding, roofing, ceiling, insulation, electrical, and plumbing, that have been the subject of 216
lawsuits and/or governmental inquiry because of possible defects or health hazards. Some properties may have other 217
defects arising after construction, such as drainage, leakage, pest, rot and mold problems. Brokers do not have the 218
expertise to identify or assess defective products, materials, or conditions. Buyer is urged to use due diligence to 219
inspect the Property to Buyer's satisfaction and to retain inspectors qualified to identify the presence of defective 220
materials and evaluate the condition of the Property as there may be defects that may only be revealed by careful 221
inspection. Buyer is advised to investigate whether there is a sufficient water supply to meet Buyer's needs. Buyer is 222
advised to investigate the cost of insurance for the Property, including, but not limited to homeowner's, flood, 223
earthquake, landslide, and other available coverage. Buyer acknowledges that local ordinances may restrict short term 224
rentals of the Property. Buyer and Seller acknowledge that home protection plans may be available which may provide 225
additional protection and benefit to Buyer and Seller. Brokers may assist the parties with locating and selecting third 226
party service providers, such as inspectors or contractors, but Brokers cannot guarantee or be responsible for the 227
services provided by those third parties. The parties shall exercise their own judgment and due diligence regarding 228
third-party service providers. 229

| *em* 08/23/2020 | | *vs* 08/24/2020 | | *vs* 08/24/2020 | |
|---|---|---|---|---|---|
| Buyer's Initials | Date | Seller's Initials | Date | Seller's Initials | Date |

Authentisign ID: 606C5574-51AF-4B29-9C71-DB5D06182210

Form 22A
Financing Addendum
Rev. 7/19
Page 1 of 3

**FINANCING ADDENDUM TO
PURCHASE & SALE AGREEMENT**

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

The following is part of the Purchase and Sale Agreement dated ___August 23, 2020___    1

between   **Charlene McBride** _____ ("Buyer")   2
    Buyer           Buyer

and   ~~Stolmakh~~ VS Investment Associates, LLC _____ ("Seller")   3
    Seller         Seller

concerning **2465**   **S College Street**   **Seattle**   **WA**   **98144** (the "Property").   4
    Address         City         State    Zip

**1. LOAN APPLICATION/WAIVER OF CONTINGENCY.**   5

  **a. Loan Application.** This Agreement is contingent on Buyer obtaining the following type of loan or loans to   6
purchase the Property (the "Loan(s)"): ☑ Conventional First; ☐ Conventional Second; ☐ Bridge; ☐ VA; ☐ FHA;   7
☐ USDA; ☐ Home Equity Line of Credit; ☐ Other _____   8
(the "Financing Contingency"). Buyer shall pay ☐ $ _____; or ☑ __25__ % of the Purchase   9
Price down, in addition to the Loans. Buyer shall make application for the Loans to pay the balance of the   10
Purchase Price and pay the application fee, if required, for the subject Property within ___3___ days (5   11
days if not filled in) after mutual acceptance of this Agreement. For the purposes of this Addendum,   12
"application" means the submission of Buyer's financial information for the purposes of obtaining an extension   13
of credit including Buyer's name, income, social security number (if required), the Property address, purchase   14
price, and the loan amount.   15

  **b. Waiver of Financing Contingency.** If Buyer (i) fails to make application for financing for the Property within   16
the agreed time; (ii) changes the type of loan at any time without Seller's prior written consent; or (iii) changes   17
the lender without Seller's prior written consent after the agreed upon time to apply for financing expires, then   18
the Financing Contingency shall be deemed waived. Buyer's waiver of the Financing Contingency under this   19
Paragraph 1(b) also constitutes waiver of Paragraph 7 (Appraisal Less Than Sales Price). For purposes of   20
this Addendum, "lender" means either the party to whom the application was submitted or the party funding   21
the loan.   22

**2. LOAN INFORMATION.**   23

  **a. Seller's Request for Loan Information.** At any time ___5___ days (10 days if not filled in) after mutual   24
acceptance, Seller may give, once, a notice requesting information related to the status of Buyer's loan   25
application ("Request for Loan Information"). NWMLS Form 22AL may be used for this notice.   26

  **b. Buyer's Loan Information Notice.** Within ___2___ days (3 days if not filled in) of receiving Seller's Request   27
for Loan Information, Buyer shall give notice of the status of Buyer's loan application ("Loan Information   28
Notice"). Buyer's notice shall be on NWMLS Form 22AP and shall include the date of application, the name   29
of lender, a list of the information that Buyer has provided to lender, and a warranty that Buyer has provided   30
all information requested by lender.   31

  **c. Failure to Provide Loan Information Notice.** If Buyer fails to timely give to Seller a completed Loan   32
Information Notice, Seller may give the Right to Terminate Notice described in Paragraph 3 (Seller's Right to   33
Terminate) at any time after the date that the Loan Information Notice is due.   34

**3. SELLER'S RIGHT TO TERMINATE.**   35

  **a. Right to Terminate Notice.** At any time ___60___ days (30 days if not filled in) after mutual acceptance,   36
Seller may give notice that Seller may terminate the Agreement at any time 3 days after delivery of that notice   37
(the "Right to Terminate Notice"). NWMLS Form 22AR may be used for this notice.   38

  **b. Termination Notice.** If Buyer has not previously waived the Financing Contingency, Seller may give notice of   39
termination of this Agreement (the "Termination Notice") any time following 3 days after delivery of the Right   40
to Terminate Notice. If Seller gives the Termination Notice before Buyer has waived the Financing   41
Contingency, this Agreement is terminated and the Earnest Money shall be refunded to Buyer. NWMLS Form   42
22AR shall be used for this notice. If not waived, the Financing Contingency shall survive the Closing Date.   43

  **c. Appraisal Less Than Sales Price.** Buyer's waiver of the Financing Contingency under this Paragraph 3 ☐ will;   44
or ☐ will not (will, if not filled in) constitute waiver of Paragraph 7 (Appraisal Less Than Sales Price).   45

_____ 08/23/2020    _____    _____ 08/24/2020    _____ 08/24/2020
Buyer's Initials   Date    Buyer's Initials   Date    Seller's Initials   Date    Seller's Initials   Date

Authentisign ID: 606C5574-51AF-4B29-9C71-DB5D06182210

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**FINANCING ADDENDUM TO
PURCHASE & SALE AGREEMENT** [*vs*] 08/24/2020 [*vs*] 08/24/2020
*Continued* 08/24/2020

4. **LOAN COST PROVISIONS.** Seller shall pay up to ☑ $~~11,000.00~~ $6,000 ; or ☐ _____ % of the Purchase 46
Price ($0.00 if not filled in), which shall be applied to Buyer's Loan(s) and settlement costs, including prepaids, loan 47
discount, loan fee, interest buy down, financing, closing or other costs allowed by lender. That amount shall include 48
the following costs that lender is prohibited from collecting from Buyer: (a) up to $300.00 for Buyer's Loan(s) and 49
settlement costs for FHA/USDA/VA loans; and (b) unless agreed otherwise below, Buyer's share of the escrow fee 50
for a VA loan. Seller shall pay the costs for (a) and (b), even if the amount agreed upon in this Paragraph 4 is 51
insufficient to pay for those costs. If checked, ☐ Buyer shall pay Buyer's share of the escrow fee for the VA loan 52
(note that VA regulations prohibit Buyer from paying loan and settlement costs exceeding one percent of the amount 53
of the loan). 54

5. **EARNEST MONEY.** If Buyer has not waived the Financing Contingency, and is unable to obtain financing by 55
Closing after a good faith effort then, on Buyer's notice, this Agreement shall terminate. The Earnest Money shall 56
be refunded to Buyer after lender confirms in writing (a) the date Buyer's loan application for the Property was 57
made, including a copy of the loan estimate that was provided to Buyer; (b) that Buyer possessed sufficient funds 58
to close (e.g. down payment, closing costs, etc.); and (c) the reasons Buyer was unable to obtain financing by 59
Closing. If Seller terminates this Agreement, the Earnest Money shall be refunded without need for such 60
confirmation. 61

6. **INSPECTION.** Seller shall permit inspections required by lender, including but not limited to structural, pest, 62
heating, plumbing, roof, electrical, septic, and well inspections. Seller is not obligated to pay for such inspections 63
unless otherwise agreed. 64

7. **APPRAISAL LESS THAN SALE PRICE.** 65
   a. **Notice of Low Appraisal.** If lender's appraised value of the Property is less than the Purchase Price, Buyer 66
   may, within 3 days after receipt of a copy of lender's appraisal, give notice of low appraisal, which shall 67
   include a copy of lender's appraisal. NWMLS Form 22AN may be used for the notices in this Paragraph 7. 68
   b. **Seller's Response.** Seller shall, within 10 days after Buyer's notice of low appraisal, give notice of: 69
      (i) A reappraisal or reconsideration of value, at Seller's expense, by the same appraiser or another appraiser 70
      acceptable to lender, in an amount not less than the Purchase Price. Buyer shall promptly seek lender's 71
      approval of such reappraisal or reconsideration of value. The parties are advised that lender may elect 72
      not to accept a reappraisal or reconsideration of value; 73
      (ii) Seller's consent to reduce the Purchase Price to an amount not more than the amount specified in the 74
      appraisal or reappraisal by the same appraiser, or an appraisal by another appraiser acceptable to 75
      lender, whichever is higher. (This provision is not applicable if this Agreement is conditioned on FHA, VA, 76
      or USDA financing. FHA, VA, and USDA financing does not permit the Buyer to be obligated to buy if the 77
      Seller reduces the Purchase Price to the appraised value. Buyer, however, has the option to buy at the 78
      reduced price.); 79
      (iii) Seller's proposal to reduce the Purchase Price to an amount more than the amount specified in the 80
      appraisal and for Buyer to pay the necessary additional funds (the amount the reduced Purchase Price 81
      exceeds the appraised value) to close the sale; or 82
      (iv) Seller's rejection of Buyer's notice of low appraisal. 83

      If Seller timely delivers notice of (i) reappraisal or reconsideration of value; or (ii) consent to reduce the 84
      Purchase Price to an amount not more than the amount specified in the appraisal (except for FHA, VA, or 85
      USDA financing), and lender accepts Seller's response, then Buyer shall be bound by Seller's response. 86

   c. **Buyer's Reply.** 87
      (i) Buyer shall have 3 days from either Seller's notice of rejection of low appraisal or, if Seller fails to respond, 88
      the day Seller's response period ends, whichever is earlier, to (a) waive the Financing Contingency; or (b) 89
      terminate the Agreement, in which event the Earnest Money shall be refunded to Buyer. 90
      (ii) If Seller proposes to reduce the Purchase Price to an amount more than the appraised value, Buyer shall 91
      have 3 days to (a) accept and represent that Buyer has sufficient funds to close the sale in accordance with 92
      this provision; or (b) terminate the Agreement, in which event the Earnest Money shall be refunded to Buyer. 93

| [*Cm*] 08/23/2020 | _____ | [*vs*] 08/24/2020 | [*vs*] 08/24/2020 |
|---|---|---|---|
| Buyer's Initials    Date | Buyer's Initials    Date | Seller's Initials    Date | Seller's Initials    Date |

Authentisign ID: 606C5574-51AF-4B29-9C71-DB5D06182210

Form 22A
Financing Addendum
Rev. 7/19
Page 3 of 3

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**FINANCING ADDENDUM TO
PURCHASE & SALE AGREEMENT**
*Continued*

(iii) If Seller consents to reduce the Purchase Price to an amount not more than the appraised value for FHA, VA, or USDA financing, Buyer shall have 3 days to (a) give notice that Buyer will buy at the reduced price; or (b) terminate the Agreement, in which event the Earnest Money shall be refunded to Buyer. 94 95 96

Buyer's inaction during this reply period shall result in termination of the Agreement and return of the Earnest Money to Buyer. The Closing Date shall be extended as necessary to accommodate the foregoing times for notices. 97 98 99

8. **FHA/VA/USDA - Appraisal Certificate.** If this Agreement is contingent on Buyer obtaining FHA, VA, or USDA financing, notwithstanding any other provisions of this Agreement, Buyer is not obligated to complete the purchase of the Property unless Buyer has been given in accordance with HUD/FHA, VA, or USDA requirements a written statement by FHA, VA, USDA or a Direct Endorsement lender, setting forth the appraised value of the Property (excluding closing costs). Seller and Buyer shall execute a document setting forth the prior provision, or similar provision, known as the FHA, VA, or USDA amendatory clause, as required by lender. Buyer shall pay the costs of any appraisal. If the appraised value of the Property is less than the Purchase Price, Paragraph 7 above shall apply. 100-107

**Purpose of Appraisal.** The appraised valuation is arrived at only to determine the maximum mortgage FHA, VA, or USDA will insure. FHA, VA, or USDA do not warrant the value or the condition of the Property. Buyer agrees to satisfy himself/herself that the price and condition of the Property are acceptable. 108 109 110

9. **EXTENSION OF CLOSING.** If, through no fault of Buyer, lender is required by 12 CFR 1026 to give corrected disclosures to Buyer due to (a) a change in the Annual Percentage Rate ("APR") of Buyer's Loan(s) by .125% or more for a fixed rate loan or .250% or more for an adjustable rate loan; (b) a change in the loan product; or (c) the addition of a prepayment penalty, then upon notice from Buyer, the Closing Date shall be extended for up to 4 days to accommodate the requirements of Regulation Z of the Truth in Lending Act. This paragraph shall survive Buyer's waiver of this Financing Contingency. 111-116

*Cm* 08/23/2020 — Buyer's Initials Date | *VS* 08/24/2020 — Seller's Initials Date | *VS* 08/24/2020 — Seller's Initials Date

Authentisign ID: 606C5574-51AF-4B29-9C71-DB5D06182210

Form 22D
Optional Clauses Addendum
Rev. 7/19
Page 1 of 2

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## OPTIONAL CLAUSES ADDENDUM TO PURCHASE & SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated ___August 23, 2020___    1

between     **Charlene McBride** _____ ("Buyer")   2
         Buyer                  Buyer

and     ~~Stelmakh~~ VS Investment Associates, LLC   [VS] 08/24/2020 _____ ("Seller")   3
     Seller                   Seller     [VS] 08/24/2020

concerning **2465    S College Street**     **Seattle**     **WA**   **98144** _____ (the "Property").   4
            Address              City         State   Zip

**CHECK IF INCLUDED:**   5

1. ☑ **Square Footage/Lot Size/Encroachments.** The Listing Broker and Selling Broker make no representations   6
concerning: (a) the lot size or the accuracy of any information provided by the Seller; (b) the square footage of   7
any improvements on the Property; (c) whether there are any encroachments (fences, rockeries, buildings) on   8
the Property, or by the Property on adjacent properties. Buyer is advised to verify lot size, square footage and   9
encroachments to Buyer's own satisfaction.   10

2. **Title Insurance.** The Title Insurance clause in the Agreement provides Seller is to provide the then-current ALTA   11
form of Homeowner's Policy of Title Insurance. The parties have the option to provide less coverage by selecting   12
a Standard Owner's Policy or more coverage by selecting an Extended Coverage Policy:   13

     ❑ **Standard Owner's Coverage.** Seller authorizes Buyer's lender or Closing Agent, at Seller's expense, to   14
     apply for the then-current ALTA form of Owner's Policy of Title Insurance, together with homeowner's   15
     additional protection and inflation protection endorsements, if available at no additional cost, rather than   16
     the Homeowner's Policy of Title Insurance.   17

     ❑ **Extended Coverage.** Seller authorizes Buyer's lender or Closing Agent, at Seller's expense to apply for   18
     an ALTA or comparable Extended Coverage Policy of Title Insurance, rather than the Homeowner's   19
     Policy of Title Insurance. Buyer shall pay the increased costs associated with the Extended Coverage   20
     Policy, including the excess premium over that charged for Homeowner's Policy of Title Insurance and   21
     the cost of any survey required by the title insurer.   22

3. ☑ **Seller Cleaning.** Seller shall clean the interiors of any structures and remove all trash, debris and rubbish   23
from the Property prior to Buyer taking possession.   24

4. ☑ **Personal Property.** Unless otherwise agreed, Seller shall remove all personal property from the Property   25
not later than the Possession Date. Any personal property remaining on the Property thereafter shall become   26
the property of Buyer, and may be retained or disposed of as Buyer determines.   27

5. ☑ **Utilities.** To the best of Seller's knowledge, Seller represents that the Property is connected to a:   28
☑ public water main; ☑ public sewer main; ❑ septic tank; ❑ well (specify type) _____ ;   29
❑ irrigation water (specify provider) _____ ; ☑ natural gas; ☑ telephone;   30
☑ cable; ☑ electricity; ❑ other _____ .   31

6. ☑ **Insulation - New Construction.** If this is new construction, Federal Trade Commission Regulations require   32
the following to be filled in. If insulation has not yet been selected, FTC regulations require Seller to furnish   33
Buyer the information below in writing as soon as available:   34

WALL INSULATION: TYPE: _____ THICKNESS: _____ R-VALUE: _____   35

CEILING INSULATION: TYPE: _____ THICKNESS: _____ R-VALUE: _____   36

OTHER INSULATION DATA: _____   37

7. ❑ **Leased Property Review Period and Assumption.** Buyer acknowledges that Seller leases the following   38
items of personal property that are included with the sale: ❑ propane tank; ❑ security system; ❑ satellite   39
dish and operating equipment; ❑ other _____ .   40

[cm] 08/23/2020      _____      [VS] 08/24/2020      [VS] 08/24/2020

Buyer's Initials    Date      Buyer's Initials    Date      Seller's Initials    Date      Seller's Initials    Date

Authentisign ID: 606C5574-51AF-4B29-9C71-DB5D06182210

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**OPTIONAL CLAUSES ADDENDUM TO
PURCHASE & SALE AGREEMENT**
*Continued*

Seller shall provide Buyer a copy of the lease for the selected items within _____ days (5 days if not filled 41
in) of mutual acceptance. If Buyer, in Buyer's sole discretion, does not give notice of disapproval within 42
_____ days (5 days if not filled in) of receipt of the lease(s) or the date that the lease(s) are due, whichever 43
is earlier, then this lease review period shall conclusively be deemed satisfied (waived) and at Closing, Buyer 44
shall assume the lease(s) for the selected item(s) and hold Seller harmless from and against any further 45
obligation, liability, or claim arising from the lease(s), if the lease(s) can be assumed. If Buyer gives timely 46
notice of disapproval, then this Agreement shall terminate and the Earnest Money shall be refunded to Buyer. 47

8. ☐ **Homeowners' Association Review Period.** If the Property is subject to a homeowners' association or any 48
other association, then Seller shall, at Seller's expense, provide Buyer a copy of the following documents (if 49
available from the Association) within _____ days (10 days if not filled in) of mutual acceptance: 50

   a. Association rules and regulations, including, but not limited to architectural guidelines; 51
   b. Association bylaws and covenants, conditions, and restrictions (CC&Rs); 52
   c. Association meeting minutes from the prior two (2) years; 53
   d. Association Board of Directors meeting minutes from the prior six (6) months; and 54
   e. Association financial statements from the prior two (2) years and current operating budget. 55

If Buyer, in Buyer's sole discretion, does not give notice of disapproval within _____ days (5 days if not 56
filled in) of receipt of the above documents or the date that the above documents are due, whichever is 57
earlier, then this homeowners' association review period shall conclusively be deemed satisfied (waived). If 58
Buyer gives timely notice of disapproval, then this Agreement shall terminate and the Earnest Money shall be 59
refunded to Buyer. 60

9. ☐ **Homeowners' Association Transfer Fee.** If there is a transfer fee imposed by the homeowners' association 61
or any other association (e.g. a "move-in" or "move-out" fee), the fee shall be paid by the party as provided for 62
in the association documents. If the association documents do not provide which party pays the fee, the fee 63
shall be paid by ☐ Buyer; ☐ Seller (Seller if not filled in). 64

10. ☐ **Excluded Item(s).** The following item(s), that would otherwise be included in the sale of the Property, is 65
excluded from the sale ("Excluded Item(s)"). Seller shall repair any damage to the Property caused by the 66
removal of the Excluded Item(s). Excluded Item(s): 67

68
69

11. ☑ **Home Warranty.** Buyer and Seller acknowledge that home warranty plans are available which may provide 70
additional protection and benefits to Buyer and Seller. Buyer shall order a one-year home warranty as follows: 71

   a. Home warranty provider: __Fidelity Ntional Home Warranty_____ 72
   b. Seller shall pay up to $_____ ($0.00 if not filled in) of the cost for the home warranty, together 73
      with any included options, and Buyer shall pay any balance. 74
   c. Options to be included: _____ 75
   _____ (none, if not filled in). 76
      08/24/2020
   d. Other: __Buyer agent to purchase, policy not to exceed $280.00._____ 77

12. ☒ **Other.** 78
   1. The sale of this property is subject to Bankruptcy Court Approval 79
   2. The Seller is "VS Investment Associates, LLC" 80
81

[vs] 08/24/2020 [cm]
[vs] 08/24/2020 [cm]
08/24/2020

82
83
84
85

[cm] 08/23/2020     [vs] 08/24/2020     [vs] 08/24/2020
Buyer's Initials  Date     Buyer's Initials  Date     Seller's Initials  Date     Seller's Initials  Date

Authentisign ID: 606C5574-51AF-4B29-9C71-DB5D06182210

Form 22E
FIRPTA Certification
Rev. 7/19
Page 1 of 1

**FIRPTA CERTIFICATION**

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

The Foreign Investment in Real Property Tax Act ("FIRPTA"), 26 U.S.C. 1445, provides that a buyer of a U.S. real   1
property interest must withhold tax if Seller is a foreign person, unless one of the exceptions in the Act applies. The   2
following will inform Buyer and Closing Agent whether tax withholding is required.   3

Note: The above law applies to foreign corporations, partnerships, trusts, estates and other foreign entities, as well   4
as to foreign individuals. If Seller is a corporation, partnership, trust, estate or other entity, the terms "I" and "my" as   5
used below means the corporation or other entity. A "real property interest" includes full or part ownership of land   6
and/or improvements thereon; leaseholds; options to acquire any of the foregoing; and an interest in foreign   7
corporations, partnerships, trusts or other entities holding U.S. real estate.   8

**SELLER CERTIFICATION.** Seller hereby certifies the following:   9

**PROPERTY.** I am the Seller of real property ☑ at:   10

| 2465 | S College Street | | Seattle | | WA | 98144 |
|------|------------------|--|---------|--|-----|-------|
| | Address | | City | | State | Zip |

or ☐ (if no street address) legally described on the attached.   12

**CITIZENSHIP STATUS.** I ☐ AM ☒ AM NOT a non-resident alien (or a foreign corporation, foreign partnership,   13
foreign trust, foreign estate or other foreign business entity) for purposes of U.S. income taxation.   14

**TAXPAYER I.D. NUMBER.**   15
My U.S. taxpayer identification number (e.g. social security number) is _____ .   16
(Tax I.D. number to be provided by Seller at Closing)

**ADDRESS.**   17
My home address is_____   18

| | Address | | City | | State | Zip |
|--|---------|--|------|--|-----|-----|

Under penalties of perjury, I declare that I have examined this Certification and to the best of my knowledge and belief   19
it is true, correct and complete. I understand that this Certification may be disclosed to the Internal Revenue Service   20
("IRS") and that any false statement I have made here could be punished by fine, imprisonment, or both.   21

| *Valentin Stelmakh* 08/24/2020 | *Victoria Stelmakh* 08/24/2020 |
|--------------------------------|--------------------------------|
| Seller 08/24/2020 5:58:47 PM PDT          Date | Seller 08/24/2020 5:56:35 PM PDT          Date |   22

**BUYER CERTIFICATION** (Only applicable if Seller is a non-resident alien).   23

If Seller is a non-resident alien, and has not obtained a release from the IRS, then Closing Agent must withhold   24
15% of the amount realized from the sale and pay it to the IRS, unless Buyer certifies that the selected   25
statement below is correct:   26

☐ **Amount Realized ($300,000 or less) and Family Residence = No Tax.** (a) I certify that the total price that I   27
am to pay for the property, including liabilities assumed and all other consideration to Seller, does not   28
exceed $300,000; and (b) I certify that I or a member of my family* have definite plans to reside on the   29
property for at least 50% of the time that the property is used by any person during each of the first two   30
twelve month periods following the date of this sale. If Buyer certifies these statements, there is no tax.   31

☐ **Amount Realized (more than $300,000, but not exceeding $1,000,000) and Family Residence = 10% Tax.**   32
(a) I certify that the total price that I am to pay for the property, including liabilities assumed and all other   33
consideration to Seller, exceeds $300,000, but does not exceed $1,000,000; and (b) I certify that I or a   34
member of my family* have definite plans to reside on the property for at least 50% of the time that the   35
property is used by any person during each of the first two twelve month periods following the date of this   36
sale. If Buyer certifies these statements, then Closing Agent must withhold 10% of the amount realized from   37
the sale and pay it to the IRS.   38

* (Defined in 11 U.S.C. 267(c)(4). It includes brothers, sisters, spouse, ancestors and lineal descendants).   39

Under penalties of perjury, I declare that I have examined this Certification and to the best of my knowledge and   40
belief both statements are true, correct and complete. I understand that this Certification may be disclosed to the   41
IRS and that any false statement I have made here could be punished by fine, imprisonment, or both.   42

   43

| _____ | _____ |
|-----------------------------|-----------------------------|
| Buyer                    Date | Buyer                    Date |

Authentisign ID: 606C5574-51AF-4B29-9C71-DB5D06182210

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

Form 22K
Identification of Utilities Addendum
Rev. 7/19
Page 1 of 1

**IDENTIFICATION OF UTILITIES
ADDENDUM TO PURCHASE AND SALE AGREEMENT**

The following is part of the Purchase and Sale Agreement dated **August 23, 2020**    1

between   **Charlene McBride**      08/24/2020    08/24/2020 ("Buyer")   2
Buyer        Buyer

and   ~~Stelmakh~~ VS Investment Associates, LLC    08/24/2020     ("Seller")   3
Seller        Seller

concerning **2465**   **S College Street**    **Seattle**    **WA**   **98144**   (the "Property").   4
Address       City     State   Zip

Pursuant to RCW 60.80, Buyer and Seller request the Closing Agent to administer the disbursement of closing funds   5
necessary to satisfy unpaid utility charges, if any, affecting the Property. The names and addresses of all utilities   6
providing service to the Property and having lien rights are as follows:   7

**WATER DISTRICT:**    8

Name    e-mail or website (optional)   9
Address    10
City, State, Zip    Fax. No. (optional)   11

**SEWER DISTRICT:**

Name    e-mail or website (optional)   12
Address    13
City, State, Zip    Fax. No. (optional)   14

**IRRIGATION DISTRICT:**

Name    e-mail or website (optional)   15
Address    16
City, State, Zip    Fax. No. (optional)   17

**GARBAGE:**

Name    e-mail or website (optional)   18
Address    19
City, State, Zip    Fax. No. (optional)   20

**ELECTRICITY:**

Name    e-mail or website (optional)   21
Address    22
City, State, Zip    Fax. No. (optional)   23

**GAS:**

Name    e-mail or website (optional)   24
Address    25
City, State, Zip    Fax. No. (optional)   26

**SPECIAL DISTRICT(S):**
(local improvement districts or
utility local improvement districts)

Name    e-mail or website (optional)   27
Address    28
City, State, Zip    Fax. No. (optional)

If the above information has not been filled in at the time of mutual acceptance of this Agreement, then (1)   29
within   **5**   days (5 if not filled in) of mutual acceptance of this Agreement, Seller shall provide the Listing   30
Broker or Selling Broker with the names and addresses of all utility providers having lien rights affecting the Property   31
and (2) Buyer and Seller authorize Listing Broker or Selling Broker to insert into this Addendum the names and   32
addresses of the utility providers identified by Seller.   33

Nothing in this Addendum shall be construed to diminish or alter the Seller's obligation to pay all utility charges   34
(including unbilled charges). Buyer understands that the Listing Broker and Selling Broker are not responsible for, or   35
to insure payment of, Seller's utility charges.   36

*CM* 08/23/2020     *VS* 08/24/2020     *VS* 08/24/2020

Buyer's Initials   Date    Buyer's Initials   Date    Seller's Initials   Date    Seller's Initials   Date

Authentisign ID: 606C5574-51AF-4B29-9C71-DB5D06182210

Form 22T
Title Contingency Addendum
Rev. 7/15
Page 1 of 1

©Copyright 2015
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## TITLE CONTINGENCY ADDENDUM TO
## PURCHASE & SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated __August 23, 2020__ 1

between ___Charlene McBride___ ("Buyer") 2
Buyer                           Buyer

and ___Stelmathu VS Investment Associates, LLC___ [vs] 08/24/2020 [cm] 08/24/2020 ("Seller") 3
Seller                           Seller

concerning 2465  S College Street      Seattle  [vs] 08/24/2020 WA 98144 (the "Property"). 4
Address                           City                    State  Zip

1. **Title Contingency.** This Agreement is subject to Buyer's review of a preliminary commitment for title insurance, 5
together with any easements, covenants, conditions and restrictions of record. Buyer shall have ___5___ 6
days (5 days if not filled in) from ☑ the date of Buyer's receipt of the preliminary commitment for title insurance; 7
or ☐ mutual acceptance (from the date of Buyer's receipt, if neither box checked) to give notice of Buyer's 8
disapproval of exceptions contained in the preliminary commitment. 9

Seller shall have ___3___ days (5 days if not filled in) after Buyer's notice of disapproval to give Buyer 10
notice that Seller will clear all disapproved exceptions. Seller shall have until the Closing Date to clear all 11
disapproved exceptions. 12

If Seller does not give timely notice that Seller will clear all disapproved exceptions, Buyer may terminate this 13
Agreement within 3 days after the deadline for Seller's notice. In the event Buyer elects to terminate the 14
Agreement, the Earnest Money shall be returned to Buyer. If Buyer does not timely terminate the Agreement, 15
Buyer shall be deemed to have waived all objections to title, which Seller did not agree to clear. 16

2. **Supplemental Title Reports.** If supplemental title reports disclose new exception(s) to the title commitment, 17
then the above time periods and procedures for notice, correction, and termination for those new exceptions 18
shall apply to the date of Buyer's receipt of the supplemental title report. The Closing date shall be extended as 19
necessary to accommodate the foregoing times for notices. 20

3. **Marketable Title.** This Addendum does not relieve Seller of the obligation to provide marketable title at Closing 21
as provided for in the Agreement. 22

[cm] 08/23/2020     _____     [vs] 08/24/2020     [vs] 08/24/2020
Buyer's Initials  Date    Buyer's Initials  Date    Seller's Initials  Date    Seller's Initials  Date

Authentisign ID: 606C5574-51AF-4B29-9C71-DB5D06182210

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

### INSPECTION ADDENDUM TO PURCHASE AND SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated ___August 23, 2020___    1

between    **Charlene McBride**    ("Buyer")    2
<br>Buyer      Buyer

and    ~~Steinaker~~ VS Investment Associates, LLC    [$\mathcal{VS}$] 08/24/2020   [$\mathcal{Cm}$] 08/24/2020    ("Seller")    3
<br>Seller      Seller [$\mathcal{VS}$] 08/24/2020

concerning 2465   S College Street    Seattle    WA   98144    (the "Property").    4
<br>Address      City      State   Zip

**1.** ☑ **a. INSPECTION CONTINGENCY.** This Agreement is conditioned on Buyer's subjective satisfaction with 5
inspections of the Property and the improvements on the Property. Buyer's inspections may include, at 6
Buyer's option and without limitation, the structural, mechanical and general condition of the 7
improvements to the Property, compliance with building and zoning codes, an inspection of the Property 8
for hazardous materials, a pest inspection, and a soils/stability inspection. The inspection must be 9
performed by Buyer or a person licensed (or exempt from licensing) under Chapter 18.280 RCW. 10

**Sewer Inspection.** Buyer's inspection of the Property ☑ may; ☐ may not (may, if not checked) include 11
an inspection of the sewer system, which may include a sewer line video inspection and assessment and 12
may require the inspector to remove toilets or other fixtures to access the sewer line. 13

**Buyer's Obligations.** All inspections are to be (a) ordered by Buyer, (b) performed by inspectors of 14
Buyer's choice, and (c) completed at Buyer's expense. Buyer shall not alter the Property or any 15
improvements on the Property without first obtaining Seller's permission. Buyer is solely responsible for 16
interviewing and selecting all inspectors. Buyer shall restore the Property and all improvements on the 17
Property to the same condition they were in prior to the inspection. Buyer shall be responsible for all 18
damages resulting from any inspection of the Property performed on Buyer's behalf. 19

**BUYER'S NOTICE.** This inspection contingency SHALL CONCLUSIVELY BE DEEMED WAIVED unless 20
within ___5___ days (10 days if not filled in) after mutual acceptance of this Agreement (the "Initial 21
Inspection Period"), Buyer gives notice (1) approving the inspection and waiving this contingency; (2) 22
disapproving the inspection and terminating the Agreement; (3) that Buyer will conduct additional 23
inspections; or (4) proposing repairs to the property or modifications to the Agreement. If Buyer disapproves 24
the inspection and terminates the Agreement, the Earnest Money shall be refunded to Buyer. If Buyer 25
proposes repairs to the property or modifications to the Agreement, including adjustments to the purchase 26
price or credits for repairs to be performed after Closing, the parties shall negotiate as set forth in paragraph 27
1.c, below. The parties may use NWMLS Form 35R to give notices required by this Addendum. 28

**ATTENTION BUYER:** If Buyer fails to give timely notice, then this inspection contingency shall be 29
deemed waived and Seller shall not be obligated to make any repairs or modifications. Buyer shall not 30
provide the inspection report, or portions of the report, to Seller, unless Seller requests otherwise or as 31
required by paragraph 1.b. 32

**b. Additional Inspections.** If an inspector so recommends, Buyer may obtain further evaluation of any item 33
by a specialist at Buyer's option and expense if, on or before the end of the Initial Inspection Period, 34
Buyer provides Seller a copy of the inspector's recommendation and notice that Buyer will seek additional 35
inspections. If Buyer gives timely notice of additional inspections, Buyer shall have ___3___ (5 days if 36
not filled in) after giving the notice to obtain the additional inspection(s) by a specialist. 37

**c. Buyer's Requests for Repairs or Modifications.** If Buyer requests repairs or modifications under 38
paragraph 1.a. or 1.b., the parties shall negotiate as set forth in this paragraph. Buyer's initial request and 39
Seller's response made in accordance with the following procedures are irrevocable for the time period 40
provided. 41

**(i) Seller's Response to Request for Repairs or Modifications.** Seller shall have ___2___ days (3 42
days if not filled in) after receipt of Buyer's request for repairs or modifications to give notice that Seller 43
(a) agrees to the repairs or modifications proposed by Buyer; (b) agrees to some of the repairs or 44
modifications proposed by Buyer; (c) rejects all repairs or modifications proposed by Buyer; or (d) 45
offers different or additional repairs or modifications. If Seller agrees to the terms of Buyer's request for 46
repairs or modifications, this contingency shall be satisfied and Buyer's Reply shall not be necessary. If 47

[$\mathcal{Cm}$] 08/23/2020           [$\mathcal{VS}$] 08/24/2020      [$\mathcal{VS}$] 08/24/2020
<br>Buyer's Initials   Date    Buyer's Initials   Date    Seller's Initials   Date    Seller's Initials   Date

Authentisign ID: 606C5574-51AF-4B29-9C71-DB5D06182210

Form 35
Inspection Addendum
Rev. 7/19
Page 2 of 2

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## INSPECTION ADDENDUM TO PURCHASE AND SALE AGREEMENT
*Continued*

Seller does not agree to all of Buyer's repairs or modifications, Buyer shall have an opportunity to reply, as follows: 48 49

(ii) **Buyer's Reply.** If Seller does not agree to all of the repairs or modifications proposed by Buyer, Buyer shall have ___2___ days (3 days if not filled in) from either the day Seller receives Seller's response or, if Seller fails to timely respond, the day Seller's response period ends, whichever is earlier, to (a) accept the Seller's response at which time this contingency shall be satisfied; (b) agree with the Seller on other remedies; or (c) disapprove the inspection and terminate the Agreement, in which event, the Earnest Money shall be refunded to Buyer. 50 51 52 53 54 55

**ATTENTION BUYER:** These time periods for negotiating repairs or modifications shall not repeat. The parties must either reach a written agreement or Buyer must terminate this Agreement by the Buyer's Reply deadline set forth in paragraph 1.c.ii. Buyer's inaction during Buyer's reply period shall result in waiver of this inspection condition, in which case Seller shall not be obligated to make any repairs or modifications whatsoever AND THIS CONTINGENCY SHALL BE DEEMED WAIVED. 56 57 58 59 60

d. **Repairs.** If Seller agrees to make the repairs proposed by Buyer, then repairs shall be accomplished at Seller's expense in a commercially reasonable manner and in accordance with all applicable laws no fewer than ___3___ days (3 days if not filled in) prior to the Closing Date. In the case of hazardous materials, "repair" means removal or treatment (including but not limited to removal or, at Seller's option, decommissioning of any oil storage tanks) of the hazardous material at Seller's expense as recommended by and under the direction of a professional selected by Seller. Seller's repairs are subject to re-inspection and approval, prior to Closing, by the inspector who recommended the repair, if Buyer elects to order and pay for such re-inspection. If Buyer agrees to pay for any repairs prior to Closing, the parties are advised to seek the counsel of an attorney to review the terms of that agreement. 61 62 63 64 65 66 67 68 69

e. **Oil Storage Tanks.** Any inspection regarding oil storage tanks or contamination from such tanks shall be limited solely to determining the presence or non-presence of oil storage tanks on the Property, unless otherwise agreed in writing by Buyer and Seller. 70 71 72

f. **On-site Sewage Disposal Systems Advisory:** Buyer is advised that on-site sewage disposal systems, including "septic systems," are subject to strict governmental regulation and occasional malfunction and even failure. Buyer is advised to consider conducting an inspection of any on-site sewage system in addition to the inspection of the Property provided by this Form 35 by including an appropriate on-site sewage disposal inspection contingency such as NWMLS Form 22S (Septic Addendum). 73 74 75 76 77

2. ☐ **NEIGHBORHOOD REVIEW CONTINGENCY:** Buyer's inspection includes Buyer's subjective satisfaction that the conditions of the neighborhood in which the Property is located are consistent with the Buyer's intended use of the Property (the "Neighborhood Review"). The Neighborhood Review may include Buyer's investigation of the schools, proximity to bus lines, availability of shopping, traffic patterns, noise, parking and investigation of other neighborhood, environmental and safety conditions the Buyer may determine to be relevant in deciding to purchase the Property. If Buyer does not give notice of disapproval of the Neighborhood Review within _____ (3 days if not filled in) of mutual acceptance of the Agreement, then this Neighborhood Review condition shall conclusively be deemed satisfied (waived). If Buyer gives a timely notice of disapproval, then this Agreement shall terminate and the Earnest Money shall be refunded to Buyer. 78 79 80 81 82 83 84 85 86

3. ☐ **PREINSPECTION CONDUCTED.** Buyer, prior to mutual acceptance of this Agreement, conducted a building, hazardous substances, building and zoning code, pest or soils/stability inspection of the Property, and closing of this Agreement is not conditioned on the results of such inspections. Buyer elects to buy the Property in its present condition and acknowledges that the decision to purchase the property was based on Buyer's prior inspection and that Buyer has not relied on representations by Seller, Listing Broker or Selling Broker. 87 88 89 90 91 92

4. ☐ **WAIVER OF INSPECTION.** Buyer has been advised to obtain a building, hazardous substances, building and zoning code, pest or soils/stability inspection, and to condition the closing of this Agreement on the results of such inspections, but Buyer elects to waive the right and buy the Property in its present condition. Buyer acknowledges that the decision to waive Buyer's inspection options was based on Buyer's personal inspection and Buyer has not relied on representations by Seller, Listing Broker or Selling Broker. 93 94 95 96 97



| *Cm* 08/23/2020 | | *VS* 08/24/2020 | | *VS* 08/24/2020 |
|---|---|---|---|---|
| Buyer's Initials Date | Buyer's Initials Date | Seller's Initials Date | | Seller's Initials Date |



Real estate buyers and sellers are targets for wire fraud and many have lost hundreds of thousands of dollars because they failed to take **two simple steps**:

 Obtain the phone number of your real estate broker and your escrow agent at your first meeting;

 Call the known phone number to speak directly with your broker or escrow officer to confirm wire instructions PRIOR to wiring.

| Patty Funnell | 425-238-2198 |
|---|---|
| Broker's Name | Broker's Phone |
| Michael Santucci | |
| Lory Mitchell | 425-245-1138 |
| Escrow Officer's Name | Escrow Officer's Phone |

My real estate broker or escrow officer reviewed this pamphlet with me.



Authentisign

*Charlene McBride*                                    08/23/2020

**Sign**                                                      **Date**
08/23/2020 3:16:44 PM PDT

  
Washington REALTORS        **LICENSING**
WASHINGTON STATE DEPARTMENT OF

Northwest Multiple Listing Service®     WASHINGTON STATE DEPARTMENT OF FINANCIAL INSTITUTIONS     OFFICE of the INSURANCE COMMISSIONER

# CALL BEFORE YOU WIRE

## Beware of the following scam:

1. An email account is hacked (this could be broker's, escrow's, or consumer's email).

2. Hacker monitors the account, waiting for the time when consumer must wire funds. Broker, escrow, and consumer have no knowledge they are being monitored.

3. Hacker, impersonating broker or escrow, instructs consumer to wire funds immediately. The wire instructions are for an account controlled by hacker. These instructions often create a sense of urgency and often explain that the broker or escrow officer cannot be reached by phone so any follow-up must be by email. When consumer replies to this email, consumer's email is diverted to hacker.

4. Consumer wires the funds which are stolen by hacker with no recourse for consumer.

Authentisign
*Valentin Stelmakh*        08/24/2020
8/24/2020 5:59:02 PM PDT

Authentisign
*Victoria Stelmakh*        08/24/2020

**Never wire funds without first calling the known phone number for broker or escrow and confirming the wire instructions. Do not rely upon e-mail communications.**

Authentisign ID: 606C5574-51AF-4B29-9C71-DB5D06182210

 **First American**

Exhibit A

ISSUED BY
**First American Title Insurance Company**

File No: 4209-3501107

File No.: 4209-3501107

V.S. INVESTMENT ASSOC. LLC, A WASHINGTON LIMITED LIABILITY COMPANY

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF KING, STATE OF WA, AND IS DESCRIBED AS FOLLOWS:

PARCEL A:

PARCEL B OF CITY OF SEATTLE SHORT SUBDIVISION NO. 3026706-LU, RECORDED JUNE 27, 2019 UNDER RECORDING NUMBER 20190627900001, RECORDS OF KING COUNTY, WASHINGTON.

PARCEL B:

A NON EXCLUSIVE EASEMENT FOR INGRESS, EGRESS AND PEDESTRIAN ACCESS AS DELINEATED ON CITY OF SEATTLE SHORT SUBDIVISION NO. 3026706-LU, RECORDED JUNE 27, 2019 UNDER RECORDING NUMBER 20190627900001, RECORDS OF KING COUNTY, WASHINGTON.

159460009107

2465 South College Street
Seattle, Washington 98144

$[em]$ 08/23/2020

$[vs]$ 08/24/2020

$[vs]$ 08/24/2020

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by First American Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; Schedule B, Part II-Exceptions.*

**Copyright 2006-2016 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

| Form 50003700WA (8-23-18) | Page 13 of 13 | ALTA Commitment for Title Insurance (8-1-16) Washington |
|---|---|---|

Authentisign ID: 606C5574-51AF-4B29-9C71-DB5D06182210

Form 17
Seller Disclosure Statement
Rev. 7/15
Page 1 of 6

**SELLER DISCLOSURE STATEMENT
IMPROVED PROPERTY**

©Copyright 2015
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

SELLER: _V·S Investment Assoc LLC_ _____ 1
<u>Seller</u>           <u>Seller</u>

To be used in transfers of improved residential real property, including residential dwellings up to four units, new construction, 2
condominiums not subject to a public offering statement, certain timeshares, and manufactured and mobile homes. See RCW 3
Chapter 64.06 for further information. 4

**INSTRUCTIONS TO THE SELLER** 5
Please complete the following form. Do not leave any spaces blank. If the question clearly does not apply to the property check 6
"NA." If the answer is "yes" to any asterisked (*) item(s), please explain on attached sheets. Please refer to the line number(s) of 7
the question(s) when you provide your explanation(s). For your protection you must date and initial each page of this disclosure 8
statement and each attachment. Delivery of the disclosure statement must occur not later than five (5) business days, unless 9
otherwise agreed, after mutual acceptance of a written purchase and sale agreement between Buyer and Seller. 10

NOTICE TO THE BUYER [_vs_] 08/24/2020    [_vs_] 08/24/2020 11

THE FOLLOWING DISCLOSURES ARE MADE BY THE SELLER ABOUT THE CONDITION OF THE PROPERTY LOCATED AT 12
[_2407 S College St_   2465 S College St    ], CITY _Seattle_ , 13
08/24/20 STATE _WA_ , ZIP _98144_ , COUNTY _King_ ("THE PROPERTY") OR AS 14
LEGALLY DESCRIBED ON THE ATTACHED EXHIBIT A. 15

SELLER MAKES THE FOLLOWING DISCLOSURES OF EXISTING MATERIAL FACTS OR MATERIAL DEFECTS TO BUYER BASED 16
ON SELLER'S ACTUAL KNOWLEDGE OF THE PROPERTY AT THE TIME SELLER COMPLETES THIS DISCLOSURE 17
STATEMENT. UNLESS YOU AND SELLER OTHERWISE AGREE IN WRITING, YOU HAVE THREE (3) BUSINESS DAYS FROM 18
THE DAY SELLER OR SELLER'S AGENT DELIVERS THIS DISCLOSURE STATEMENT TO YOU TO RESCIND THE AGREEMENT 19
BY DELIVERING A SEPARATELY SIGNED WRITTEN STATEMENT OF RESCISSION TO SELLER OR SELLER'S AGENT. IF THE 20
SELLER DOES NOT GIVE YOU A COMPLETED DISCLOSURE STATEMENT, THEN YOU MAY WAIVE THE RIGHT TO RESCIND 21
PRIOR TO OR AFTER THE TIME YOU ENTER INTO A PURCHASE AND SALE AGREEMENT. 22

THE FOLLOWING ARE DISCLOSURES MADE BY SELLER AND ARE NOT THE REPRESENTATIONS OF ANY REAL ESTATE 23
LICENSEE OR OTHER PARTY. THIS INFORMATION IS FOR DISCLOSURE ONLY AND IS NOT INTENDED TO BE A PART OF 24
ANY WRITTEN AGREEMENT BETWEEN BUYER AND SELLER. 25

FOR A MORE COMPREHENSIVE EXAMINATION OF THE SPECIFIC CONDITION OF THIS PROPERTY YOU ARE ADVISED 26
TO OBTAIN AND PAY FOR THE SERVICES OF QUALIFIED EXPERTS TO INSPECT THE PROPERTY, WHICH MAY INCLUDE, 27
WITHOUT LIMITATION, ARCHITECTS, ENGINEERS, LAND SURVEYORS, PLUMBERS, ELECTRICIANS, ROOFERS, 28
BUILDING INSPECTORS, ON-SITE WASTEWATER TREATMENT INSPECTORS, OR STRUCTURAL PEST INSPECTORS. THE 29
PROSPECTIVE BUYER AND SELLER MAY WISH TO OBTAIN PROFESSIONAL ADVICE OR INSPECTIONS OF THE 30
PROPERTY OR TO PROVIDE APPROPRIATE PROVISIONS IN A CONTRACT BETWEEN THEM WITH RESPECT TO ANY 31
ADVICE, INSPECTION, DEFECTS OR WARRANTIES. 32

SELLER ☐ IS/ ☒ IS NOT OCCUPYING THE PROPERTY. 33

**I. SELLER'S DISCLOSURES:** 34
*If you answer "Yes" to a question with an asterisk (*), please explain your answer and attach documents, if available and not 35
otherwise publicly recorded. If necessary, use an attached sheet. 36

| | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|
| **1. TITLE** | | | | | 38 |
| A. Do you have legal authority to sell the property? If no, please explain. | ☒ | ☐ | ☐ | ☐ | 39 |
| *B. Is title to the property subject to any of the following? | | | | | 40 |
|   (1) First right of refusal | ☐ | ☒ | ☐ | ☐ | 41 |
|   (2) Option | ☐ | ☒ | ☐ | ☐ | 42 |
|   (3) Lease or rental agreement | ☐ | ☒ | ☐ | ☐ | 43 |
|   (4) Life estate? | ☐ | ☒ | ☐ | ☐ | 44 |
| *C. Are there any encroachments, boundary agreements, or boundary disputes? | ☐ | ☒ | ☒ | ☐ | 45 |
| *D. Is there a private road or easement agreement for access to the property? | ☐ | ☒ | ☐ | ☐ | 46 |
| *E. Are there any rights-of-way, easements, or access limitations that may affect the Buyer's use of the property? | ☐ | ☒ | ☒ | ☐ | 47 / 48 |
| *F. Are there any written agreements for joint maintenance of an easement or right-of-way? | ☐ | ☒ | ☐ | ☐ | 49 |
| *G. Is there any study, survey project, or notice that would adversely affect the property? | ☐ | ☐ | ☒ | ☐ | 50 |
| *H. Are there any pending or existing assessments against the property? | ☐ | ☒ | ☒ | ☐ | 51 |

_V·S_    05/20/19      _VS_    05/20/19
SELLER'S INITIALS   Date     SELLER'S INITIALS   Date

Authentisign ID: 606C5574-51AF-4B29-9C71-DB5D06182210

**SELLER DISCLOSURE STATEMENT**
**IMPROVED PROPERTY**
*(Continued)*

©Copyright 2015
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

| | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|
| | | | | | 52 |
| *I. Are there any zoning violations, nonconforming uses, or any unusual restrictions on the property that would affect future construction or remodeling? | ☐ | ☑ | ☐ | ☐ | 53 54 55 |
| *J. Is there a boundary survey for the property? | ☑ | ☐ | ☐ | ☐ | 56 |
| *K. Are there any covenants, conditions, or restrictions recorded against the property? | ☐ | ☐ | ☑ | ☐ | 57 |

PLEASE NOTE: Covenants, conditions, and restrictions which purport to forbid or restrict the
conveyance, encumbrance, occupancy, or lease of real property to individuals based on race,
creed, color, sex, national origin, familial status, or disability are void, unenforceable, and
illegal. RCW 49.60.224.

58
59
60
61

**2. WATER**   62

**A. Household Water**   63

(1) The source of water for the property is:  ☑ Private or publicly owned water system   64
  ☐ Private well serving only the subject property   *☐ Other water system   65

| | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|
| *If shared, are there any written agreements? | ☐ | ☑ | ☐ | ☐ | 66 |
| *(2) Is there an easement (recorded or unrecorded) for access to and/or maintenance of the water source? | ☐ | ☐ | ☑ | ☐ | 67 68 |
| *(3) Are there any problems or repairs needed? | ☐ | ☑ | ☐ | ☐ | 69 |
| (4) During your ownership, has the source provided an adequate year-round supply of potable water? | ☑ | ☑ | ☐ | | 70 |

If no, please explain: _new building_   71

| | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|
| *(5) Are there any water treatment systems for the property? | ☐ | ☑ | ☐ | | 72 |

If yes, are they: ☐ Leased ☐ Owned   73

| | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|
| *(6) Are there any water rights for the property associated with its domestic water supply, such as a water right permit, certificate, or claim? | ☐ | ☐ | ☑ | ☐ | 74 75 |
| (a) If yes, has the water right permit, certificate, or claim been assigned, transferred, or changed? | ☐ | ☐ | ☐ | ☐ | 76 |
| *(b) If yes, has all or any portion of the water right not been used for five or more successive years? | ☐ | ☐ | ☐ | ☐ | 77 |
| *(7) Are there any defects in the operation of the water system (e.g. pipes, tank, pump, etc.)? | ☑ | ☐ | ☐ | | 78 |

**B. Irrigation Water**   79

| | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|
| (1) Are there any irrigation water rights for the property, such as a water right permit, certificate, or claim? | ☐ | ☐ | ☐ | ☐ | 80 81 |
| *(a) If yes, has all or any portion of the water right not been used for five or more successive years? | ☐ | ☐ | ☐ | ☐ | 82 83 |
| *(b) If so, is the certificate available? (If yes, please attach a copy.) | ☐ | ☐ | ☐ | ☐ | 84 |
| *(c) If so, has the water right permit, certificate, or claim been assigned, transferred, or changed? | ☐ | ☐ | ☐ | ☐ | 85 |
| *(2) Does the property receive irrigation water from a ditch company, irrigation district, or other entity? | ☐ | ☐ | ☐ | ☐ | 86 |

If so, please identify the entity that supplies water to the property:

87
88

_____

**C. Outdoor Sprinkler System**   89

| | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|
| (1) Is there an outdoor sprinkler system for the property? | ☐ | ☑ | ☐ | ☐ | 90 |
| *(2) If yes, are there any defects in the system? | ☐ | ☐ | ☐ | ☐ | 91 |
| *(3) If yes, is the sprinkler system connected to irrigation water? | ☐ | ☐ | ☐ | ☐ | 92 |

**3. SEWER/ON-SITE SEWAGE SYSTEM**   93

A. The property is served by:   94
  ☑ Public sewer system ☐ On-site sewage system (including pipes, tanks, drainfields, and all other component parts)   95
  ☐ Other disposal system   96
  Please describe:_____   97

V·S   05/20/19      V·S   05/20/19
**SELLER'S INITIALS**   Date      **SELLER'S INITIALS**   Date

Authentisign ID: 606C5574-51AF-4B29-9C71-DB5D06182210

Form 17
Seller Disclosure Statement
Rev. 7/15
Page 3 of 6

**SELLER DISCLOSURE STATEMENT**
**IMPROVED PROPERTY**
*(Continued)*

©Copyright 2015
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

| | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|
| B. If public sewer system service is available to the property, is the house connected to the sewer main? | ☑ | ☐ | ☐ | ☐ | 98 99 100 |
| If no, please explain: | | | | | 101 |
| *C. Is the property subject to any sewage system fees or charges in addition to those covered in your regularly billed sewer or on-site sewage system maintenance service? | ☐ | ☑ | ☐ | ☐ | 102 103 |
| D. If the property is connected to an on-site sewage system: | | | | | 104 |
| *(1) Was a permit issued for its construction, and was it approved by the local health department or district following its construction? | ☐ | ☐ | ☐ | ☑ | 105 106 |
| (2) When was it last pumped? _____ | | | | | 107 |
| *(3) Are there any defects in the operation of the on-site sewage system? | ☐ | ☐ | ☐ | ☐ | 108 |
| (4) When was it last inspected? _____ | | | ☐ | ☐ | 109 |
| By whom: _____ | | | | | 110 |
| (5) For how many bedrooms was the on-site sewage system approved? _____ bedrooms | | | ☐ | ☑ | 111 |
| E. Are all plumbing fixtures, including laundry drain, connected to the sewer/on-site sewage system? | ☐ | ☐ | ☐ | ☑ | 112 113 |
| If no, please explain: _____ | | | | | 114 |
| *F. Have there been any changes or repairs to the on-site sewage system? | ☐ | ☐ | ☐ | ☑ | 115 |
| G. Is the on-site sewage system, including the drainfield, located entirely within the boundaries of the property? | ☐ | ☐ | ☐ | ☑ | 116 117 |
| If no, please explain: _____ | | | | | 118 |
| *H. Does the on-site sewage system require monitoring and maintenance services more frequently than once a year? | ☐ | ☐ | ☐ | ☑ | 119 120 |

NOTICE: IF THIS RESIDENTIAL REAL PROPERTY DISCLOSURE IS BEING COMPLETED FOR FOR NEW CONSTRUCTION WHICH HAS NEVER BEEN OCCUPIED, SELLER IS NOT REQUIRED TO COMPLETE THE QUESTIONS LISTED IN ITEM 4 (STRUCTURAL) OR ITEM 5 (SYSTEMS AND FIXTURES).

**4. STRUCTURAL**

| | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|
| *A. Has the roof leaked within the last 5 years? | ☐ | ☑ | ☐ | ☐ | 124 125 |
| *B. Has the basement flooded or leaked? | ☑ | ☐ | ☐ | ☐ | 126 |
| *C. Have there been any conversions, additions or remodeling? | ☑ | ☐ | ☐ | ☐ | 127 |
| *(1) If yes, were all building permits obtained? | ☐ | ☐ | ☐ | ☐ | 128 |
| *(2) If yes, were all final inspections obtained? | ☐ | ☐ | ☐ | ☐ | 129 |
| D. Do you know the age of the house? *New building construction* | ☐ | ☐ | ☐ | ☐ | 130 |
| If yes, year of original construction: _____ | | | | | 131 |
| *E. Has there been any settling, slippage, or sliding of the property or its improvements? | ☐ | ☑ | ☐ | ☐ | 132 |
| *F. Are there any defects with the following: (If yes, please check applicable items and explain) | ☑ | ☐ | ☐ | ☐ | 133 |

| ☐ Foundations | ☐ Decks | ☐ Exterior Walls | 134 |
|---|---|---|---|
| ☐ Chimneys | ☐ Interior Walls | ☐ Fire Alarms | 135 |
| ☐ Doors | ☐ Windows | ☐ Patio | 136 |
| ☐ Ceilings | ☐ Slab Floors | ☐ Driveways | 137 |
| ☐ Pools | ☐ Hot Tub | ☐ Sauna | 138 |
| ☐ Sidewalks | ☐ Outbuildings | ☐ Fireplaces | 139 |
| ☐ Garage Floors | ☐ Walkways | ☐ Siding | 140 |
| ☐ Wood Stoves | ☐ Elevators | ☐ Incline Elevators | 141 |
| ☐ Stairway Chair Lifts | ☐ Wheelchair Lifts | ☐ Other | |

| | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|
| *G. Was a structural pest or "whole house" inspection done? | ☐ | ☐ | ☐ | ☒ | 142 |
| If yes, when and by whom was the inspection completed? _____ | | | | | 143 144 |
| H. During your ownership, has the property had any wood destroying organism or pest infestation? | ☐ | ☐ | ☐ | ☒ | 145 |
| I. Is the attic insulated? | ☑ | ☐ | ☐ | ☒ | 146 |
| J. Is the basement insulated? | ☐ | ☐ | ☐ | ☐ | 147 |

*V·S* _05/20/19_     *V·S* _05/20/2019_
SELLER'S INITIALS    Date      SELLER'S INITIALS    Date

Authentisign ID: 606C5574-51AF-4B29-9C71-DB5D05182210

**SELLER DISCLOSURE STATEMENT**
**IMPROVED PROPERTY**

*(Continued)*

©Copyright 2015
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

| | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|

### 5. SYSTEMS AND FIXTURES | | | | | 148 | 149

*A. If any of the following systems or fixtures are included with the transfer, are there any defects? | | | | | 150

If yes, please explain: _____ | | | | | 151

- Electrical system, including wiring, switches, outlets, and service ........ ☐ ☑ ☐ ☐ | 152
- Plumbing system, including pipes, faucets, fixtures, and toilets ........ ☐ ☑ ☐ ☐ | 153
- Hot water tank ........ ☐ ☑ ☐ ☐ | 154
- Garbage disposal ........ *brand* ☐ ☑ ☐ ☐ | 155
- Appliances ........ *new* ☐ ☑ ☐ ☐ | 156
- Sump pump ........ *building* ☐ ☑ ☐ ☐ | 157
- Heating and cooling systems ........ ☐ ☑ ☐ ☐ | 158
- Security system: ☐ Owned ☐ Leased ........ ☐ ☑ ☐ ☐ | 159
- Other _____ ☐ ☑ ☐ ☐ | 160

*B. If any of the following fixtures or property is included with the transfer, are they leased? (If yes, please attach copy of lease.) | | | | | 161 162

- Security System: _____ ☐ ☑ ☐ | 163
- Tanks (type): _____ ☐ ☑ ☐ | 164
- Satellite dish: _____ ☐ ☑ ☐ | 165
- Other: _____ ☐ ☑ ☐ | 166

*C. Are any of the following kinds of wood burning appliances present at the property? | | | | | 167
- (1) Woodstove? ........ ☐ ☑ ☐ ☐ | 168
- (2) Fireplace insert? ........ ☐ ☑ ☑ ☐ | 169
- (3) Pellet stove? ........ ☑ ☑ ☐ ☐ | 170
- (4) Fireplace? ........ ☐ ☑ ☐ ☐ | 171

If yes, are all the (1) woodstoves or (2) fireplace inserts certified by the U.S. Environmental Protection Agency as clean burning appliances to improve air quality and public health? ........ ☐ ☐ ☐ ☐ | 172 173

D. Is the property located within a city, county, or district or within a department of natural resources fire protection zone that provides fire protection services? ........ ☑ ☐ ☐ ☐ | 174 175

E. Is the property equipped with carbon monoxide alarms? (Note: Pursuant to RCW 19.27.530, Seller must equip the residence with carbon monoxide alarms as required by the state building code.) ........ ☑ ☐ ☐ ☐ | 176 177

F. Is the property equipped with smoke alarms? ........ ☑ ☐ ☐ ☐ | 178

### 6. HOMEOWNERS' ASSOCIATION/COMMON INTERESTS | | | | | 179

A. Is there a Homeowners' Association? ........ ☑ ☐ ☐ ☐ | 180
Name of Association and contact information for an officer, director, employee, or other authorized agent, if any, who may provide the association's financial statements, minutes, bylaws, fining policy, and other information that is not publicly available: _____ | 181 182 183

B. Are there regular periodic assessments? ........ ☐ ☐ ☑ ☐ | 184
$_____ per ☐ month ☐ year | 185
☐ Other: _____ | 186

*C. Are there any pending special assessments? ........ ☐ ☐ ☐ ☐ | 187

*D. Are there any shared "common areas" or any joint maintenance agreements (facilities such as walls, fences, landscaping, pools, tennis courts, walkways, or other areas co-owned in undivided interest with others)? ........ ☐ ☐ ☐ ☐ | 188 189 190

### 7. ENVIRONMENTAL | | | | | 191

*A. Have there been any flooding, standing water, or drainage problems on the property that affect the property or access to the property? ........ ☐ ☑ ☐ ☐ | 192 193

*B. Does any part of the property contain fill dirt, waste, or other fill material? ........ ☐ ☑ ☐ ☐ | 194

*C. Is there any material damage to the property from fire, wind, floods, beach movements, earthquake, expansive soils, or landslides? ........ ☐ ☑ ☐ ☐ | 195 196

D. Are there any shorelines, wetlands, floodplains, or critical areas on the property? ........ ☐ ☑ ☐ ☐ | 197

*E. Are there any substances, materials, or products in or on the property that may be environmental concerns, such as asbestos, formaldehyde, radon gas, lead-based paint, fuel or chemical storage tanks, or contaminated soil or water? ........ ☐ ☑ ☐ ☐ | 198 199 200

*F. Has the property been used for commercial or industrial purposes? ........ ☐ ☑ ☐ ☐ | 201

V·S   05/20/19        V·S        05/20/2019
SELLER'S INITIALS   Date        SELLER'S INITIALS   Date

Authentisign ID: 606C5574-51AF-4B29-9C71-DB5D06182210

**SELLER DISCLOSURE STATEMENT
IMPROVED PROPERTY**
*(Continued)*

©Copyright 2015
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

| | YES | NO | DON'T KNOW | N/A |
|---|---|---|---|---|
| *G. Is there any soil or groundwater contamination? | ☐ | ☑ | ☐ | ☐ |
| *H. Are there transmission poles or other electrical utility equipment installed, maintained, or buried on the property that do not provide utility service to the structures on the property? | ☐ | ☑ | ☐ | ☐ |
| *I. Has the property been used as a legal or illegal dumping site? | ☐ | ☑ | ☐ | ☐ |
| *J. Has the property been used as an illegal drug manufacturing site? | ☐ | ☑ | ☐ | ☑ |
| *K. Are there any radio towers in the area that cause interference with cellular telephone reception? | ☐ | ☑ | ☑ | ☐ |

**8. LEAD BASED PAINT** (Applicable if the house was built before 1978).

A. Presence of lead-based paint and/or lead-based paint hazards (check one below):
☐ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain). _____
☐ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

B. Records and reports available to the Seller (check one below):
☐ Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).
_____
☐ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**9. MANUFACTURED AND MOBILE HOMES**

If the property includes a manufactured or mobile home,

| | YES | NO | DON'T KNOW | N/A |
|---|---|---|---|---|
| *A. Did you make any alterations to the home? | ☐ | ☑ | ☐ | ☐ |
| If yes, please describe the alterations: _____ | | | | |
| *B. Did any previous owner make any alterations to the home? | ☐ | ☑ | ☐ | ☐ |
| *C. If alterations were made, were permits or variances for these alterations obtained? | ☐ | ☐ | ☐ | ☑ |

**10. FULL DISCLOSURE BY SELLERS**

A. Other conditions or defects:
*Are there any other existing material defects affecting the property that a prospective buyer should know about? ☐ ☑ ☐ ☐

B. Verification
The foregoing answers and attached explanations (if any) are complete and correct to the best of Seller's knowledge and Seller has received a copy hereof. Seller agrees to defend, indemnify and hold real estate licensees harmless from and against any and all claims that the above information is inaccurate. Seller authorizes real estate licensees, if any, to deliver a copy of this disclosure statement to other real estate licensees and all prospective buyers of the property.

*V·S* _____ 05/20/2019 *V·S* _____ 05/20/2019
Seller    Date    Seller    Date

If the answer is "Yes" to any asterisked (*) items, please explain below (use additional sheets if necessary). Please refer to the line number(s) of the question(s).

Authentisign ID: 606C5574-51AF-4B29-9C71-DB5D06182210

**SELLER DISCLOSURE STATEMENT**
**IMPROVED PROPERTY**
*(Continued)*

©Copyright 2015
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## II. NOTICES TO THE BUYER

### 1. SEX OFFENDER REGISTRATION

INFORMATION REGARDING REGISTERED SEX OFFENDERS MAY BE OBTAINED FROM LOCAL LAW ENFORCEMENT AGENCIES. THIS NOTICE IS INTENDED ONLY TO INFORM YOU OF WHERE TO OBTAIN THIS INFORMATION AND IS NOT AN INDICATION OF THE PRESENCE OF REGISTERED SEX OFFENDERS.

### 2. PROXIMITY TO FARMING

THIS NOTICE IS TO INFORM YOU THAT THE REAL PROPERTY YOU ARE CONSIDERING FOR PURCHASE MAY LIE IN CLOSE PROXIMITY TO A FARM. THE OPERATION OF A FARM INVOLVES USUAL AND CUSTOMARY AGRICULTURAL PRACTICES, WHICH ARE PROTECTED UNDER RCW 7.48.305, THE WASHINGTON RIGHT TO FARM ACT.

## III. BUYER'S ACKNOWLEDGEMENT

### 1. BUYER HEREBY ACKNOWLEDGES THAT:

A. Buyer has a duty to pay diligent attention to any material defects that are known to Buyer or can be known to Buyer by utilizing diligent attention and observation.

B. The disclosures set forth in this statement and in any amendments to this statement are made only by the Seller and not by any real estate licensee or other party.

C. Buyer acknowledges that, pursuant to RCW 64.06.050(2), real estate licensees are not liable for inaccurate information provided by Seller, except to the extent that real estate licensees know of such inaccurate information.

D. This information is for disclosure only and is not intended to be a part of the written agreement between the Buyer and Seller.

E. Buyer (which term includes all persons signing the "Buyer's acceptance" portion of this disclosure statement below) has received a copy of this Disclosure Statement (including attachments, if any) bearing Seller's signature(s).

F. If the house was built prior to 1978, Buyer acknowledges receipt of the pamphlet *Protect Your Family From Lead in Your Home.*

DISCLOSURES CONTAINED IN THIS DISCLOSURE STATEMENT ARE PROVIDED BY SELLER BASED ON SELLER'S ACTUAL KNOWLEDGE OF THE PROPERTY AT THE TIME SELLER COMPLETES THIS DISCLOSURE. UNLESS BUYER AND SELLER OTHERWISE AGREE IN WRITING, BUYER SHALL HAVE THREE (3) BUSINESS DAYS FROM THE DAY SELLER OR SELLER'S AGENT DELIVERS THIS DISCLOSURE STATEMENT TO RESCIND THE AGREEMENT BY DELIVERING A SEPARATELY SIGNED WRITTEN STATEMENT OF RESCISSION TO SELLER OR SELLER'S AGENT. YOU MAY WAIVE THE RIGHT TO RESCIND PRIOR TO OR AFTER THE TIME YOU ENTER INTO A SALE AGREEMENT.

BUYER HEREBY ACKNOWLEDGES RECEIPT OF A COPY OF THIS DISCLOSURE STATEMENT AND ACKNOWLEDGES THAT THE DISCLOSURES MADE HEREIN ARE THOSE OF THE SELLER ONLY, AND NOT OF ANY REAL ESTATE LICENSEE OR OTHER PARTY.

Authentisign
08/23/2020
*Charlene McBride*
Buyer                  Date
8/23/2020 3:18:06 PM PDT

Buyer                  Date

### 2. BUYER'S WAIVER OF RIGHT TO REVOKE OFFER

Buyer has read and reviewed the Seller's responses to this Seller Disclosure Statement. Buyer approves this statement and waives Buyer's right to revoke Buyer's offer based on this disclosure.

Authentisign
08/23/2020
*Charlene McBride*
Buyer                  Date
8/23/2020 3:18:28 PM PDT

Buyer                  Date

### 3. BUYER'S WAIVER OF RIGHT TO RECEIVE COMPLETED SELLER DISCLOSURE STATEMENT

Buyer has been advised of Buyer's right to receive a completed Seller Disclosure Statement. Buyer waives that right. However, if the answer to any of the questions in the section entitled "Environmental" would be "yes," Buyer may not waive the receipt of the "Environmental" section of the Seller Disclosure Statement.

Buyer                  Date

Buyer                  Date

V·S   05/20/19          V·S   05/20/2019
SELLER'S INITIALS   Date          SELLER'S INITIALS   Date